## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS, and THE INSTITUTES, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ADAM POTTER, *et al.*, | ) ) |
| Defendants. | ) |

Civil Action No. 19-1600-CFC-SRF

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Presently before the court in this breach of contract case are a joint motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants PBIH, LLC ("PBIH") and Adam Potter ("Potter," together with PBIH, "Moving Defendants") (D.I. 51),[1] and a separate motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Business Insurance Holdings, Inc. ("BIH").[2]  (D.I. 65) For the following reasons, the court recommends GRANTING-IN-PART and DENYING-IN-

---

[1] Moving Defendants seek dismissal of the entire amended complaint as to PBIH.  (D.I. 51) However, Moving Defendants seek dismissal of only Counts III and IV as to Potter.  (*Id.*)  Count IV is a claim for declaratory relief only against Potter.  (D.I. 48 at ¶¶ 176–79; D.I. 51; D.I. 52) Accordingly, Counts I and II of the amended complaint survive and are unaffected by Potter's motion.  The briefing for the pending motion is as follows: Moving Defendants' opening brief (D.I. 52), Plaintiffs' answering brief (D.I. 54), and Moving Defendants' reply brief (D.I. 59).

[2] BIH seeks dismissal of all Counts against it in the amended complaint—Counts I, II, and III. (D.I. 65)  The briefing for the pending motion is as follows: Defendant's opening brief (D.I. 66), Plaintiffs' answering brief (D.I. 71), and Defendant's reply brief (D.I. 73).  Moving Defendants also filed a "Response" in support of BIH's motion.  (D.I. 70)

PART Moving Defendants' motion and GRANTING-IN-PART and DENYING-IN-PART BIH's motion.

## II.   BACKGROUND[3]

### a.  Procedural History

On August 28, 2019, plaintiffs The American Institute for Chartered Property Casualty Underwriters ("AICPCU") and The Institutes, LLC ("Institutes," together with AICPCU, "Plaintiffs") initiated this action by filing a complaint against defendants Potter and Business Insurance Holdings, LLC.  (D.I. 1)  On March 27, 2020, Plaintiffs filed an unopposed motion for leave to file an amended and supplemental complaint (the "amended complaint"), which the court so ordered.  (D.I. 46)  On the same date, Plaintiffs filed the amended complaint, which, *inter alia*, added BIH as a defendant in this case.  (D.I. 48)

### b.  The Parties

AICPCU is a Pennsylvania non-profit corporation with its principal place of business in Pennsylvania.  (D.I. 48 at ¶ 1)  Institutes is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.  (*Id.* at ¶ 2)  Both provide nationwide educational services on risk management and property-casualty insurance topics directed to insurance professionals and the general public.  (*Id.* at ¶ 8)

Potter is a citizen of and resides in Connecticut.  (*Id.* at ¶ 3)  PBIH is a Florida limited liability company with its principal place of business in Illinois, and Potter is its only member.  (*Id.* at ¶ 4)  BIH was formerly known as C&E MGMT and Planning, Inc. and is a Florida

---

[3] The facts in this section are based upon allegations in the amended complaint, which the court accepts as true for the purposes of the present motion to dismiss.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

corporation with its principal place of business in Illinois.  (*Id.* at ¶ 5)  The court refers to Potter, PBIH, and BIH collectively as "Defendants."  (*See* D.I. 48 at 1)

### c.  Facts

This action stems from the alleged breach of the non-compete and non-solicitation provisions ("restrictive covenants") of an Asset Purchase Agreement ("the APA").[4]  (*Id.* at ¶¶ 151–79)  On or about June 1, 2018, Plaintiffs entered into the APA with Claims Pages, LLC ("CP"), C&E MGMT and Planning, Inc. ("C&E"), CLM Group, Inc. ("CLM"), Potter, and Moxie HC, LLC ("Moxie").  (*Id.* at ¶ 9)  At the time, Moxie owned CP and CLM, and Potter owned C&E.[5]  (*Id.* at ¶ 10)  In addition, Potter owned PBIH, either directly or through C&E.  (*Id.* at ¶ 11)  On June 7, 2018, C&E changed its name to Business Insurance Holdings, Inc.[6]  (*Id.* at ¶ 12)

Pursuant to the APA, Plaintiffs paid Potter $17,329,098 at closing along with an additional $2,655,049 for substantially all of the assets of CP, C&E, and CLM.  (*Id.* at ¶ 14)  In relevant part, the APA contains the following non-compete and non-solicitation clauses:

(a) During the period beginning on the Closing Date and ending the fifth (5th) anniversary of the Closing Date (the "Non-Compete Period"), each Selling Party[7]

---

[4] The amended complaint incorporates the APA by reference.  (D.I. 48)  The APA has been separately filed with the court.  (D.I. 53, Ex. A; D.I. 67, Ex. 1)

[5] CP provided information as a reference source for insurance claims adjusters; C&E identified and secured conference and event locations, hotel contracts, and outside locations as a service; and CLM operated a national insurance claim and litigation management professional trade association.  (D.I. 48 at ¶¶ 15–17)

[6] Business Insurance Holdings, Inc. ("BIH"), formerly C&E, is a named defendant in this case.  (D.I. 48)

[7] The APA defines the term "Selling Parties" as "the Companies, Adam Potter and Moxie."  (D.I. 67, Ex. 1 at 46)  "[T]he Companies" are CP, C&E, and CLM.  (*Id.* at 1)  On or about June 7, 2018, C&E changed its name to BIH.  (D.I. 48 at ¶¶ 5, 9, 12)  In August 2019, Potter sold BIH to Beacon International Group, Inc. ("Beacon").  (*Id.* at ¶¶ 97–98)

covenants and agrees not to, and shall cause its Affiliates[8] not to, directly or indirectly, and anywhere in the United States, conduct, manage, operate, engage in or have an ownership interest in any business or enterprise engaged in any activities that are otherwise competitive with any of the Sellers' Businesses as conducted as of the Closing Date, except that during the Non-Compete Period any Selling Party, or any other party listed on Schedule 6.12, may undertake the activities set forth on Schedule 6.12 attached hereto (collectively, the "Permitted Activities").

(b) With the exception of Permitted Activities, during the Non-Compete Period, each Selling Party shall not, and shall cause its Affiliates not to, directly or indirectly, call-on, solicit or induce, or attempt to solicit or induce, any customer or other business relation of Buyer for the provision of products or services related to any of Sellers' Businesses or in any other manner that would otherwise interfere with the business relationship between Buyer and its customers and other business relations.

(D.I. 53, Ex. A at § 6.12(a)–(b)).  As of the closing date, the APA defines CLM's business to include "various products and services ranging from an annual conference to various other conferences offered throughout the year . . . not limited to any specific topics or segments within the claims and litigation management industries."[9]  (*Id.* at ¶ 22)  However, Schedule 6.12 of the APA defines the "Permitted Activities" carved out for PBIH within its business defined as follows:

[A] news and information source for executives concerned about risk and the impact on their business, including risk managers, insurers, brokers and other providers of insurance products and services. Business Insurance delivers in-depth analysis on new and emerging risks, case studies of successful programs, market intelligence on trends, and guidance on how to capitalize on opportunities and overcome challenges. Business Insurance covers core risk management and insurance areas such as property/casualty insurance, captive insurance and other alternative risk transfer vehicles, and enterprise risk management.

---

[8] The APA defines "Affiliate" to mean "with respect to any Person, any Person directly or indirectly controlling, controlled by, or under common control with, such other Person."  (D.I. 48 at ¶ 24; D.I. 67, Ex. 1 at 38)
[9] Since the close of the APA, Plaintiffs have used CLM only as a trade name.  (D.I. 48 at ¶ 18)

(*Id.* at ¶ 28)  Schedule 6.12 also expressly permits PBIH to conduct a limited number of events.[10]
(*Id.* at ¶¶ 29–30)

Before the parties entered into the APA in June of 2018, "Business Insurance"[11] did not

offer or promote conferences related to claims and litigation management.  (*Id.* at ¶ 42)  In July

2019, Plaintiffs learned that Defendants were promoting a Cannabis & Hemp Conference ("the

C&H Conference") and an Intellectual Property Conference ("the IP Conference" and, together

with the C&H Conference, "the BI Conferences"), both of which were scheduled to occur in

October 2019.  (*Id.* at ¶¶ 46–47)  Neither conference was listed as a "Permitted Activity" in

Schedule 6.12.  (*Id.* at ¶ 48)  The C&H Conference was described as a "new conference centered

on cannabis insurance and risk management" for insurance and cannabis industry professionals

"grappling with complex coverage and liability issues."  (*Id.* at ¶ 49)  When this lawsuit was

filed in August of 2019, approximately 200 individuals had registered to attend the C&H

Conference.  (*Id.* at ¶ 50)  The IP Conference was described as an exploration of "business

exposure" resulting from intellectual property that aims to educate insurance professionals about

"risk management and insurance strategies to protect intellectual property assets" and identify

"established and new insurance protections" available to insurance professionals.  (*Id.* at ¶ 51)

---

[10] Permitted events include: "(1) World Captive Forum, (2) U.S. Insurance Awards, (3) Break
Out Awards, (4) Innovation Awards, (5) Risk Management Roundtable: invitation only
roundtable meeting of senior-level risk managers to discuss hot topics), and (6) Women to Watch
(EMEA and USA)."  (D.I. 48 at ¶¶ 29–30)  However, Schedule 6.12 prohibits the "Selling
Parties" from engaging in the following activities: (1) "Work/create/develop/offer/promote
educational content related to claims and litigation management, unless in partnership with CLM
and CP;" (2) "Produce live delivery, such as events, networking, seminars, award programs, and
conferences targeted to claims and litigation management professionals;" (3) Undertake any
involvement with newsletters, publications, emails, communication, sponsorships, research
papers with cannot directly be targeted for claims and litigation professionals;" and (4) "Target
or create information that relates to the CP business."  (*Id.* at ¶ 32)
[11] "Business Insurance" is not a defined term or entity in the amended complaint.  (D.I. 48)

After learning of the BI Conferences, Plaintiffs sent a letter to Potter on July 29, 2019, in which Plaintiffs demanded cancellation and notified Potter that the BI Conferences constituted a breach of the APA.  (*Id.* at ¶ 53)  On August 12, 2019, Plaintiffs repeated their demand in a follow up letter to Potter.  (*Id.* at ¶ 55)  In response to both letters, Defendants refused to cancel the events.  (*Id.* at ¶¶ 54, 56)  Instead, Potter offered three concessions to alleviate Plaintiffs' concerns:

> (1) Defendants added a statement on the landing page for the C&H Conference, stating that "This Conference was not developed and is not intended for claims and litigation management professionals"; (2) Defendants modified one of the session titles for the C&H Conference to indicate that it does not address claims; and (3) Defendants would not knowingly allow any claims and litigation management professionals to attend the conference.

(*Id.* at ¶ 56)

In August 2019, Potter sold BIH to Beacon International Group, Inc. ("Beacon"),[12] which is owned and operated by Stephen Acunto, Sr., and Carole Acunto (collectively, "the Acuntos"). (*Id.* at ¶¶ 97–98)  A press release announcing the sale highlighted "Business Insurance's growing annual conference schedule."  (*Id.* at ¶ 105) (internal quotations and emphasis omitted)  After the sale, Potter remained active within BIH.  (*Id.* at ¶¶ 107, 110–16)

Potter's sister, Sydney Posner ("Posner"),[13] started The Claims Xchange, Inc. ("ClaimsX"), which directly competes with CLM.  (*Id.* at ¶¶ 123, 128)  Posner worked for CLM until she was terminated for misconduct on September 20, 2019.  (*Id.* at ¶ 134)  Before her termination, and with Potter's help, Posner began working to establish ClaimsX to compete with

---

[12] BIH avers that Beacon's proper name is Beacon Intercontinental Group, Inc.  (D.I. 66 at 1 n.2)
[13] Plaintiffs have initiated a separate lawsuit against Posner in the United States District Court of the Eastern District of Pennsylvania for her alleged misconduct, *The American Institute For Chartered Property Casualty Underwriters d/b/a The Institutes, et al. v. Sydney Posner, et al.*, Civil Action No. 2:19-cv-05369-NIQA.  (D.I. 48 at ¶ 137)

CLM.  (*Id.* at ¶¶ 135, 138)  ClaimsX "connects innovative and collaborative professionals who share a passion for advancing the claims industry."  (*Id.* at ¶ 124)  ClaimX's "membership includes claims professionals, risk professionals, corporate counsel, defense attorneys, and service providers."  (*Id.* at ¶ 125)  In addition, ClaimsX has become one of Business Insurance's strategic partners and has "scheduled events throughout 2020 and beyond" targeting the same professionals as CLM.  (*Id.* at ¶¶ 126, 129, 131–32)

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks

omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## IV.  DISCUSSION

### a.  PBIH

The court first addresses the motion to dismiss Plaintiffs' breach of contract, tortious interference, and unjust enrichment claims against PBIH.  PBIH advances several arguments as to why the court should dismiss Plaintiffs' claims against it.  (D.I. 52)  The court recommends that all counts should be dismissed as to PBIH because the Plaintiffs fail to plead any substantive claims against PBIH individually.  (D.I. 48 at ¶¶ 4, 11, 38)  Only three substantive allegations in the amended complaint mention PBIH individually.  (*Id.*)  None of those three[14] relate to any of the elements[15] required to plead claims of breach of contract, tortious interference, or unjust enrichment.  (*See id.*)

---

[14] The three allegations are: "Upon information and belief, Defendant PBIH is a Florida limited liability company with its principal place of business in Illinois, and its sole member is Defendant Potter."  (D.I. 48 at ¶ 4)  "At the time of the Purchase Agreement, upon information and belief, Defendant Potter owned all of the membership interests of Defendant PBIH either directly or through C&E."  (*Id.* at ¶ 11)  "At some point, Business Insurance Holdings, LLC changed its name to PBIH, LLC and/or PBIH, LLC is the successor-in-interest to Business Insurance Holdings, LLC. In either event, it is equally bound to the terms of the Non-Compete." (*Id.* at ¶ 38)

[15] The required elements for each of Plaintiffs' causes of action are discussed, *infra*.  *See* sections IV.b–d, *infra*.

In response, Plaintiffs argue that the amended complaint does not "simply group[] PBIH together with its co-defendants." (D.I. 54 at 11)  Instead, without citing a specific allegation, Plaintiffs generally assert that the amended complaint "specifically allege[s] each defendants' involvement." (*Id.* at 12)  Plaintiffs acknowledge that the amended complaint "frequently refer[s] to defendants collectively;" however, they argue such collective referral is "grounded in the allegations that they were acting together." (*Id.*)  Plaintiffs fail to direct the court to any factual allegation in the complaint plausibly stating that PBIH acted in concert with any co-defendant to satisfy any element of any claim in issue.  Nor did Plaintiffs cite any facially plausible factual allegation in the amended complaint indicating individual conduct by PBIH that would satisfy any element of the causes of action at issue.

Moreover, a complaint will not survive a Rule 12(b)(6) motion if it "combine[s] allegations against multiple defendants" in a manner that fails to provide each defendant with adequate notice of the basis for the underlying claims against them.  *See T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017); *Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, C.A. No. 18-073-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019).  Under the heading, "Preliminary Statement," the amended complaint identifies the various defendants in this case as follows: Plaintiffs "bring this action against Defendants Adam Potter ('Potter'), PBIH, LLC f/k/a Business Insurance Holdings, LLC ('PBIH'), and Business Insurance Holdings, Inc. ('BIH') (collectively, 'Defendants')." (D.I. 48 at 1)  Thereafter, the amended complaint frequently refers to "Business Insurance" without ever defining it. (*See, e.g.*, *id.* at ¶¶ 42, 45, 96)  Referring to an undefined "Business Insurance" is ambiguous in this case because the abbreviated names used to identify two co-defendants, BIH and PBIH, both include "Business Insurance." (D.I. 48 at 1)  The amended

complaint also refers to "Defendants" generally at various points without identifying which entity is responsible for the relevant conduct.  (*See, e.g.*, *id.* at ¶¶ 54, 59, 165, 168)  Because of the ambiguity resulting from the failure to define "Business Insurance" and the generalized group pleading of conduct by "Defendants," the amended complaint fails to provide notice to PBIH of the basis for the underlying claims against it.  *See T-Jat*, 2017 WL 896988, at *7; *Adverio*, 2019 WL 581618, at *6 ("[A]llegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard.").  Therefore, the court recommends granting PBIH's motion to dismiss Counts I, II, and III of the amended complaint against it.

### b.  Count I – Breach of Contract Against BIH

"To state a claim for breach of contract under Delaware law,[16] a plaintiff must allege facts sufficient to enable a defendant to plausibly infer: (1) the existence of a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff."  *Tendyne Holdings, Inc. v. Abbott Vascular, Inc.*, C.A. No. 18-1070-CFC, 2019 WL 2717857, at *2 (D. Del. Jun. 28, 2019) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

BIH advances several arguments as to why the court should dismiss Plaintiffs' breach of contract claim against it.  First, BIH argues that Plaintiffs' breach of contract claim against it should be dismissed because it is not a party or otherwise subject to the APA while it is under

---

[16] The APA contains a State of Delaware choice of law provision.  (D.I. 67, Ex. 1 at § 10.3)  BIH notes that the parties have cited Delaware law as governing the disputes in this litigation, but also highlights that Plaintiffs are located in Pennsylvania.  (D.I. 66 at 15 n.10)  However, choice of law disputes, if any exist in this case, are not ripe for decision by the court on this motion.

Beacon's ownership.[17]  (D.I. 66 at 3–6, 10)  C&E was a "Selling Party" subject to the restrictive covenants at issue.  (D.I. 67, Ex. 1 at § 6.12; D.I. 48 at ¶ 13)  After the APA was executed, C&E changed its name to BIH.  (D.I. 48 at ¶¶ 5, 9, 12)  BIH does not dispute that its name change did not extinguish its obligations under the APA's restrictive covenants.  (11/17/20 Tr. at 18:14–18)  Instead, BIH argues that its obligations under the APA ceased fifteen months after the APA was executed when Potter relinquished his control over BIH by selling it to Beacon via a Stock Purchase Agreement ("the SPA").  (*Id.* at 18:19–21:20)  However, BIH's argument is a factual dispute that ignores allegations in the amended complaint.  (*See* D.I. 48 at ¶¶ 97–120)  For example, the amended complaint alleges that Potter "stayed involved with [BIH] and helped to build the business" after BIH was sold to Beacon.  (D.I. 48 at ¶ 107)  BIH's reliance on disputed facts fails at this stage to warrant dismissal of all or a portion of Plaintiffs' breach of contract claims against it.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1991 WL 138431, at *2 (Del. Super. Ct. July 15, 1991) (quoting *Bankers Life & Cas. Co. v. Kirtley*, 338 F.2d 1006, 1013 (8th Cir. 1964) ("Neither a change in name of a corporation nor a change in its stock or stockholders ordinarily will affect its rights and obligations.").

BIH also argues that the amended complaint lacks factual allegations of breach and damages.  (D.I. 66 at 10–14)  With respect to breach, BIH argues that the C&H Conference complies with the APA because "the C&H Conference . . . excluded any 'claims and litigation management professionals.'"  (D.I. 66 at 12 (quoting D.I. 48 at ¶ 56))  BIH argues that it cured any violation of the non-compete by limiting the attendees, which impermissibly calls for the

---

[17] BIH also argues that it does not meet the APA's definition of "Affiliate."  (D.I. 66 at 3–6)  Plaintiffs concede in their answering brief that they "are not attempting to argue that BIH is an 'Affiliate' of Potter."  (D.I. 71 at 3)  Therefore, the court focuses its analysis on whether BIH is bound by the APA as a "Selling Party."  (*See* D.I. 66 at 4)

court to make a factual finding against Plaintiffs at the pleading stage. (*See id.* at 12–13)

Contrary to BIH's argument, the amended complaint contains plausible factual allegations

demonstrating that the C&H Conference targeted insurance professionals and addressed topics

"centered on cannabis insurance and risk management" in direct competition with CLM, a

"Seller's Business" under the APA. (D.I. 48 at ¶¶ 46–50) The amended complaint defines

CLM's pre-APA business as "provid[ing] educational conferences and other live delivery events,

for the benefit of its member community, which consists of corporate counsel, risk managers,

claims managers, litigation managers, adjusters, brokers, service providers, and defense counsel,

as well as other industry professionals." (*Id.* at ¶ 61) In addition, between 2014 and 2017, CLM

offered at least eight cannabis-related presentations. (*Id.* at ¶ 70) BIH also argues that the

amended complaint lacks any factual allegations indicating its involvement with ClaimsX. (D.I.

66 at 14) BIH's argument ignores factual allegations in the amended complaint, namely: BIH's

owners served as members of the ClaimsX board, and ClaimsX is "promoted by" and is a

"strategic partner" of Business Insurance. (D.I. 48 at ¶¶ 130–32) Accepting these plausible

factual allegations as true, the amended complaint states a breach of the APA.

  With respect to damages, BIH argues that the amended complaint lacks factual

allegations to state a breach of contract claim. (D.I. 66 at 13–14; D.I. 73 at 7–8) In response,

Plaintiffs argue (1) the APA permits Plaintiffs to seek injunction relief without alleging actual

damages;[18] and (2) Plaintiffs have sufficiently alleged that BIH caused them injury. (D.I. 71 at

12–15) The APA states in relevant part as follows:

---

[18] Plaintiffs cite several cases that, they argue, support such a contention: *Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104, at *20 (Del. Ch. June 20, 2019); *Brace Indus. Contracting, Inc. v. Peterson Enter., Inc.*, 2015 WL 5097240, at *2 (Del. Ch. Aug. 28, 2015); *TP Group–CI, Inc. v. Vetecnik*, C.A. No. 16-623-RGA, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016).

> Each Selling Party shall not contest that Buyer's remedies at law for any breach or threat of breach by any Selling Party or any of its affiliates of the provisions of this <u>Section 6.12</u> will be inadequate, and that Buyer shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this <u>Section 6.12</u>, without proving actual damages, and to enforce specifically such terms and provisions, in addition to any other remedy to which Buyer may be entitled at law or equity.

(D.I. 67, Ex. 1 at § 6.12(d))  The amended complaint seeks both injunctive and legal relief as a result of BIH's alleged breach of the APA.  (D.I. 48 at 38)  Plaintiffs' "need not allege an exact monetary figure in order to sufficiently plead that [they] suffered damages from the breach of contract."  *See Weyerhaeuser Co. v. Domtar Corp.*, C.A. No. 14-024-SLR, 61 F. Supp. 3d 445, 453 (D. Del. 2014) (citing *VLIW Tech.*, 840 A.2d at 613).  However, Plaintiffs must do more than state, in conclusory fashion, that they have been damaged.  *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (citing *Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 F. App'x 224, 231 (3d Cir. 2007)).

The amended complaint contains facially plausible allegations of Plaintiffs' damages resulting from BIH's alleged breach of the APA.  (D.I. 48 at ¶¶ 147–49)  For example, the amended complaint states that "[a]s a direct result of Defendants' conduct in violation of the restrictive covenants, [Plaintiffs] face future losses of customers and sponsors, loss of good will, loss of revenues, and dilution and confusion in the marketplace."  (*Id.* at ¶ 147)  The amended complaint also states that, as a result of BIH's alleged breach, Plaintiffs have been forced to retain counsel and incur costs to "investigate and remedy Defendants' conduct."  (*Id.* at ¶ 148)  BIH challenges these allegations only on the basis that they are "conclusory."  (D.I. 66 at 13–14)  However, considering the facially plausible breaches alleged with respect to the C&H Conference and BIH's involvement with ClaimsX, and the allegations that Plaintiffs sustained commercial losses as a result (D.I. 48 at ¶¶ 147–48), the amended complaint plausibly alleges

that Plaintiffs have suffered an injury connected to BIH's alleged breach of the APA.  *Cf.*

*Hydrogen Master Rights*, 228 F. Supp. 3d at 333 (dismissing a breach of contract claim based on

insufficient damages allegations where the plaintiff had merely alleged that "[it] ha[d] been

damaged").

      In sum, the court finds that the amended complaint contains sufficient plausible factual

allegations to state a breach of contract claim against BIH.  Therefore, the court recommends

denying BIH's motion to dismiss Count I of the amended complaint against it.

### c.   Count II – Tortious Interference Against BIH

      To plead a tortious interference claim, a plaintiff must allege "(1) the existence of a valid

business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part

of the interferer; (3) intentional interference which induces or causes a breach or termination of

the relationship or expectancy; and (4) resulting damages to the party whose relationship or

expectancy has been disrupted."  *See Truinject Corp. v. Nestle Skin Health, S.A.*, C.A. No. 19-

592-LPS-JLH, 2020 WL 70981, at *16 (D. Del. Jan. 7, 2020), *report and recommendation*

*adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020) (quoting *Enzo Life Sci., Inc. v. Digene*

*Corp.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003)).

      As a preliminary matter, the parties dispute the level of specificity required to

successfully plead tortious interference.  (D.I. 66 at 16; D.I. 71 at 15–17; D.I. 73 at 9–10)  As

Plaintiffs argue, they do "not need to identify the prospective business relationship with which

the defendant tortiously interfered" to survive a motion to dismiss. [19]  *See Dynamis Therapeutics,*

---

[19] BIH argues that the authorities Plaintiffs rely on for such a proposition, like *Corning Inc. v.*
*SRU Biosystems*, 292 F. Supp. 2d 583 (D. Del. 2003) and *Abbot Labs v. Teva Pharms. USA, Inc.*,
432 F. Supp. 2d 408 (D. Del. 2006), are unavailing because those cases predate *Twombly* and
*Iqbal*.  (D.I. 73 at 10 n.2)  However, the court does not rely on *Corning* or *Abbot Labs*; the court
relies on *Dynamis*, a post *Twombly/Iqbal* district court case.  *Dynamis*, 2010 WL 3834405, at *5

*Inc. v. Alberto-Culver Int'l Inc.*, C.A. No. 09-773-GMS, 2010 WL 3834405, at *5 (D. Del. Sept. 24, 2010) (citing *Enzo*, 295 F. Supp. 2d at 429–30).  Instead, Plaintiffs must allege factual allegations that plausibly "'establish some basis of a bona fide expectancy' of [their] relationship with a third party."  *See Truinject*, 2020 WL 70981, at *16 (quoting *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *7 (Del. Super. Ct. Nov. 2, 2015)).  Plaintiffs must also "allege that the third party 'was prepared to enter into a business relationship but was dissuaded from doing so by the defendant.'"  *Id.* (quoting *GWO Litig. Trust v. Sprint Sols., Inc.*, 2018 WL 5309477, at *12 (Del. Super. Ct. Oct. 25, 2018)).

BIH argues that the court should dismiss the tortious interference claim against it because the amended complaint fails to identify Plaintiffs' potential customers that BIH interfered with in holding the C&H Conference.[20]  (D.I. 66 at 14–17)  In response, Plaintiffs argue that they are not required to "identify any actual customers" to state a claim for tortious interference.  (D.I. 71 at 15–17)

_____

(citing *Enzo*, 295 F. Supp. 2d at 429–30)  BIH also erroneously argues that *Orthopaedic Associates of S. Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018), a Delaware Superior Court case applying a state law pleading standard to a tortious interference claim, articulates the pleading standard the court should apply here.  (D.I. 66 at 16; D.I. 73 at 9–10)  *Orthopaedic Associates* incorporated the holding of this district court in *Gunn*, a case in which the district court was stating the legal standard for tortious interference at the summary judgment stage, not the Rule 12(b)(6) stage.  *See Orthopaedic Associates*, 2018 WL 822020, at *2 (quoting *U.S. Nat'l Bank Ass'n v. Gunn*, C.A. No. 11-1155-RGA, 23 F. Supp. 3d 426, 436 (D. Del. 2014)) ("[A] plaintiff 'must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.'").  Therefore, the court does not apply the standard articulated in *Gunn* to the present motion to dismiss.  *See Enzo*, 295 F. Supp. 2d at 429–30 (noting that differences exist between the pleading standard and the summary judgment standard for tortious interference claims).

[20] BIH also argues that its involvement in the C&H Conference was justified for reasons already described; mainly, BIH rehashes its view that it has not breached the APA.  (D.I. 66 at 17)  For the reasons described in section IV.b., *supra*, BIH's argument fails.

No attempt has been made by Plaintiffs to plead the elements of a claim for tortious interference.  The amended complaint does not contain plausible factual allegations stating Plaintiffs' "basis of a bona fide expectancy" or that some third party "was prepared to enter into a business relationship but was dissuaded from doing so by [BIH]."  *See Truinject*, 2020 WL 70981, at \*16.  The amended complaint contains conclusory allegations that Plaintiffs "have a reasonable expectation that CLM's business relationships will continue and that they will continue to be the leading provider of educational services to their target market."  (D.I. 48 at ¶ 166)  The amended complaint concludes that "Defendants have knowingly and intentionally interfered with CLM's existing and prospective contractual and business relationship" based on "their attempt to offer conferences that directly compete with CLM's past, current, and future offerings."  (*Id.* at ¶ 167)  The amended complaint recites conclusions but lacks factual allegations of any actions by BIH to dissuade a potential customer from entering into a business relationship with Plaintiffs.  Therefore, the court recommends dismissing Count II of the amended complaint against BIH.  *See Truinject*, 2020 WL 70981, at \*17 (recommending dismissal of a tortious interference claim because "the Amended Complaint . . . fail[ed] to allege facts suggesting that the [defendants] dissuaded any third parties from doing business with [the plaintiff]").

### d.  Count III – Unjust Enrichment

"The elements of unjust enrichment under Delaware law are: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'"  *Well Thrive Ltd. v. Semileds Corp.*, C.A. No. 17-794-MN, 2020 WL 7490109, at \*9 (D. Del. Dec. 21, 2020) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).  "In evaluating a party's claim for an equitable

remedy based on unjust enrichment, however, 'courts inquire at the threshold as to whether a contract already governs the parties' relationship.'" *Id.* (quoting *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012)). "It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim." *Id.* (quoting *Vichi,*, 62 A.3d at 58)  However, if a contract does not govern the relationship between the parties, "under Federal Rule of Civil Procedure 8(e), a plaintiff is permitted to plead [unjust enrichment] in the alternative." *MIG Investments LLC v. Aetrex Worldwide, Inc.*, C.A. No. 11-039-LPS, 852 F. Supp. 2d 493, 513 (D. Del. 2012) (citing *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003)).

### i. Potter

Moving Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed because it impermissibly overlaps with Plaintiffs' breach of contract claim. (D.I. 52 at 17–20) In response, Plaintiffs argue the amended complaint properly alleges unjust enrichment in the alternative. (D.I. 54 at 14–18)

Plaintiffs unjust enrichment claim against Potter fails if the APA "governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009); *see also Moon Express, Inc. v. Intuitive Machs., LLC*, C.A. No. 16-344-LPS-CJB, 2017 WL 4217335, at *9 (D. Del. Sept. 22, 2017), *report and recommendation adopted,* 2017 WL 11554232 (D. Del. Oct. 30, 2017).  Plaintiffs argue that their unjust enrichment claim against Potter extends beyond the scope of the APA because it addresses conduct—misappropriation of trade secrets, for example—that the law deems unfair regardless of whether a contract exists between the parties. (D.I. 54 at 16–17)

17

Plaintiffs cite *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405 (Del. Ch. Dec. 22, 2010) to support this argument.  (*Id.*)  In *Narrowstep*, the court found that the plaintiff had pleaded enough plausible facts "to infer that the [contracts at issue] and other documents incorporated in them d[id] not comprehensively govern the relationship between the parties with respect to at least the exchange of equipment so as to preclude [the plaintiff] from pleading unjust enrichment as an alternative remedial theory."  *Id.* at *16.  Unlike *Narrowstep*, the amended complaint lacks facially plausible allegations that the APA did not "comprehensively govern the relationship" between Plaintiffs and Potter.  *See id.*

Plaintiffs argue that the amended complaint alleges that "Potter is assisting Sydney Posner[21] in the development of a competitive business that is using trade secret and highly confidential information misappropriated from Plaintiffs."  (D.I. 54 at 17)  However, Plaintiffs' factual, non-conclusory allegations of trade secret and confidential information misappropriation relate to only Posner, a non-party to this litigation.  (D.I. 48 at ¶¶ 136, 138–39)  The amended complaint lacks non-conclusory allegations that Potter misappropriated Plaintiffs' trade secrets or violated any extra-contractual legal obligation.  *Cf. Narrowstep*, 2010 WL 5422405, at *16–17 (finding the complaint alleged sufficient facts to state a claim for unjust enrichment where the plaintiff had alleged "misuse of its confidential information" in a fraud claim, which extended beyond the contract at issue).  Accordingly, the court recommends granting Moving Defendants' motion and dismissing Count III with respect to Potter. [22]  *See id.* (noting that "a right to plead

---

[21] Sydney Posner ("Posner") is Potter's sister.  (D.I. 48 at ¶ 128)

[22] In their reply brief, Moving Defendants also argue that the amended complaint lacks allegations that Potter was enriched by Posner's alleged misappropriations.  (D.I. 59 at 10)  Moving Defendants' argument on this point with respect to Potter could have been raised in their opening brief and is, therefore, inappropriately made for the first time in their reply brief and not considered by the court.  *Progressive Sterilization, LLC v. Turbett Surgical LLC*, C.A. No. 19-

alternative theories does not obviate the obligation to provide factual support for each theory")

(quoting *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL

264088, at *8 (Del. Ch. Feb. 3, 2009)).

### ii.  BIH

BIH argues, and the court agrees, that Plaintiffs' unjust enrichment claim against it

should be dismissed because the amended complaint lacks factual allegations of the elements

required to state such a claim.  (D.I. 66 at 17–21)  Plaintiffs argue that the "crux" of their claim is

"that it is fundamentally unfair to allow BIH to retain profits generated from its competition

against [P]laintiffs and involvement with ClaimsX, which competes with the businesses

Plaintiffs paid nearly $20 million to acquire, and with which BIH agreed not to compete."  (D.I.

71 at 20)  Plaintiffs cite several allegations in the complaint to support this contention.  (*See* D.I.

48 at ¶¶ 14, 37, 122–33, 136, 173–75)  However, none of those paragraphs in the amended

complaint, nor any other paragraph in the amended complaint, contains a plausible factual

allegation regarding an enrichment by BIH related to Plaintiffs' impoverishment beyond a

conclusory allegation that "Defendants have unfairly gained a competitive advantage over

Plaintiffs."  (*Id.* at ¶ 173)

Plaintiffs also argue their unjust enrichment claim should survive because the amended

complaint states that BIH unlawfully benefitted from Plaintiffs' trade secrets and confidential

information.  (D.I. 71 at 19–20)  Plaintiffs' argument fails, however, because no allegation in the

amended complaint states that BIH used Plaintiffs' trade secrets or confidential information to

unfairly compete.  (D.I. 48)  As already stated, the amended complaint alleges that Posner, a

---

627-CFC, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) (citing *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014)).

non-party to this litigation, and not BIH, "improperly accessed a copy of CLM's entire file-share database containing hundreds of files containing CLM's proprietary, confidential, and trade-secret information." (*Id.* at ¶ 136)  Therefore, the court recommends granting BIH's motion and dismissing Count III against it.

### e.   Count IV – Declaratory Relief Against Potter[23]

"A declaratory judgment is appropriate where it will: '(1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action.'" *Well Thrive*, 2020 WL 7490109, at *9 (D. Del. Dec. 21, 2020) (quoting *Delaware State Univ. Student Housing Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008).  "The real value of the judicial pronouncement . . . is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Id.* (quoting *Delaware State*, 556 F. Supp. 2d at 374) (emphasis omitted).  "A declaration interpreting contractual relationships when the relief sought could affect present behavior of the contracting parties is an appropriate claim for declaratory relief." *Id.* (citing *Delaware State*, 556 F. Supp. 2d at 374).

Moving Defendants argue that Count IV of the amended complaint should be dismissed because it impermissibly seeks a declaration regarding Potter's past conduct.  (D.I. 52 at 7–8, 20–21)  In response, Plaintiffs first argue that Count IV of the amended complaint seeks appropriate relief.  (D.I. 54 at 18–21)

---

[23] Count IV seeks declaratory relief against Potter only.  (D.I. 48 at ¶ 179)  Neither the amended complaint nor Plaintiffs' answering brief cites the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  (D.I. 48; D.I. 54)  The parties did not discuss the elements required to successfully state a claim for declaratory relief.  (D.I. 52; D.I. 54; D.I. 59)

Moving Defendants cite several authorities[24] supporting the proposition that a plaintiff may not request declaratory relief based solely on past conduct.  (D.I. 52 at 20–21)  Plaintiffs argue that the authorities Moving Defendants cite are not dispositive of the issue before the court because they addressed isolated incidents of alleged constitutional rights violations.  (D.I. 54 at 19)  Although some of the relevant authorities arose in the context of alleged constitutional rights violations, none limited their respective statements regarding the scope of permissible declaratory relief solely to constitutional rights issues.  *See O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004)); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citing *Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993); *In re Noble*, C.A. No. 18-111-RGA, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018); *see also Swain v. Wilmington Trust, N.A.*, C.A. No. 17-71-RGA, 2018 WL 934598, at *4 (D. Del. Feb. 16, 2018) (dismissing claim for declaratory relief after concluding that the plaintiffs lacked standing to pursue such relief because they "did not adequately allege 'a real and immediate threat of future injury'" and because "[s]peculation, by itself, is not sufficient"); *Benson v. Amguard Ins. Co.*, C.A. No. 16-196-LPS, 2017 WL 2672078, at *3 (D. Del. June 21, 2017) (quoting *Corliss*, 200 F. App'x at 84) ("[A] declaratory judgment is inappropriate when it is brought solely to adjudicate past conduct.") (internal quotations and alterations omitted).

The purpose of a declaratory judgment is "to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions."

---

[24] *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006); *In re Noble*, C.A. No. 18-111-RGA, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018) ("Asking a court to proclaim that one's rights were violated is not a proper basis for declaratory relief.").

*O'Callaghan*, 661 F. App'x at 182 (citing *Utah Animal Rights Coal.*, 371 F.3d at 1266); *Corliss*, 200 F. App'x at 84 (citing *Gruntal*, 837 F. Supp. at 89) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."); *see also In re Noble*, 2018 WL 2012903, at *2 ("Asking a court to proclaim that one's rights were violated is not a proper basis for declaratory relief."). Accordingly, Plaintiffs may not seek declaratory relief based on Potter's past conduct alone.  *See Benson*, 2017 WL 2672078, at *3 (quoting *Corliss*, 200 F. App'x at 84).  The amended complaint states the relevant scope of relief sought as follows:

> [Plaintiffs] seek a declaration that Defendant Potter has violated the terms of the Agreement and that they are entitled to an offset of the sums paid under the Agreement in an amount equal to the damages caused by Defendant Potter's conduct, which upon information and belief will be far in excess of $75,000.

(D.I. 48 at ¶ 179)  The amended complaint's prayer for relief seeks "[a] declaration that Defendant Potter has violated the terms of the [APA]."  (*Id.* at 38)  Plaintiffs argue that the amended complaint "seeks to prevent Defendants from unfairly competing *in the future*."  (D.I. 54 at 20) (emphasis in original).  The amended complaint states that "Defendants' actions reflect their blatant disregard for contractual and legal obligations and evinces intent to continue with these violations."  (D.I. 48 at ¶ 149)  Plaintiffs also note that the restrictive covenants in APA extend until June 2023.  *See Well Thrive*, 2020 WL 7490109, *9 (citing *Delaware State*, 556 F. Supp. 2d at 374) ("A declaration interpreting contractual relationships when the relief sought could affect present behavior of the contracting parties is an appropriate claim for declaratory relief.").  Construing the facially plausible allegations in the amended complaint in Plaintiffs' favor, the amended complaint contains sufficient allegations that Potter's allegedly breaching conduct "continues or is likely to continue in the future."  *See Benson*, 2017 WL 2672078, at *4. Therefore, the court recommends denying Potter's motion to dismiss Count IV of the amended complaint.

## V.    CONCLUSION

For the foregoing reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART Moving Defendants' motion to dismiss for failure to state a claim (D.I. 51) and GRANTING-IN-PART and DENYING-IN-PART BIH's motion to dismiss for failure to state a claim (D.I. 65) as follows:

1)  GRANTING Moving Defendants' motion and dismissing Counts I, II, and III of the amended complaint against PBIH without prejudice;

2)  DENYING BIH's motion with respect to Count I of the amended complaint;

3)  GRANTING BIH'S motion with respect to Counts II and III of the amended complaint without prejudice;

4)  GRANTING Moving Defendants' motion and dismissing Count III of the amended complaint against Potter without prejudice; and

5)  DENYING Moving Defendants' motion with respect Count IV of the amended complaint.

Following the expiration of the objections period and in the event the District Court adopts the recommendation to allow amendment, the court recommends that the District Court thereafter permit Plaintiffs ten (10) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

   The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: February 8, 2021

                                       Sherry R. Fallon
                                   United States Magistrate Judge