# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS and THE INSTITUTES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM POTTER, PBIH, LLC and BUSINESS INSURANCE HOLDINGS, INC.,<br><br>Defendants. | C.A. No. 19-1600-CFC-SRF |

### DEFENDANT BUSINESS INSURANCE HOLDINGS, INC.'S OBJECTIONS TO THE FEBRUARY 8, 2021 REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

**OF COUNSEL:**

Christopher Oprison (admitted *pro hac vice*)
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: 305.423.8522
Facsimile: 305.675.6366
chris.oprison@dlapiper.com

DATED: February 22, 2021

**DLA PIPER LLP (US)**
Matthew P. Denn (DE Bar No. 2985)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341
matthew.denn@dlapiper.com

*Attorneys for Defendant Business Insurance Holdings, Inc.*

1

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STANDARD OF REVIEW ....................................................................................2

FACTS ....................................................................................................................3

I.       The Asset Purchase Agreement ("APA").........................................................3

II.      Potter's Control of all Selling Parties .............................................................4

III.    Potter's Permitted Activities Post-Sale ..........................................................4

IV.    Potter Sells BIH To A Third Party .................................................................7

OBJECTIONS TO REPORT AND RECOMMENDATION ..................................8

I.       The Magistrate Judge Erred As A Matter of Law In Finding that Factual Allegations in the Amended Complaint Precluded Dismissal of Count 1 Against BIH ..................................................................................................8

II.      The Magistrate Erred As A Matter of Law In Finding That Plaintiffs Alleged Damages With Sufficient Particularity To Withstand a Motion to Dismiss Count 1 Against BIH ...................................................................9

CONCLUSION.....................................................................................................11

i

Case 1:19-cv-01600-RGA-JLH   Document 128   Filed 02/22/21   Page 3 of 15 PageID #: 1126

## **TABLE OF AUTHORITIES**

**Page(s)**

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adam Potter v. Beacon Intercontinental Group*,
   Delaware Superior Court Civil Action No. N20C-01-221-AML-
   CCLD ..................................................................................................................... 3

*Chicago Bridge & Iron Co. NV v. Westinghouse Elec. Co., LLC*,
   166 A.3d 912 (Del. 2017) ....................................................................................... 8

*Damiani v. Gill*,
   No. 15-694-RGA, 2016 WL 1328098 .................................................................... 3

*Hydrogen Master Rights, Ltd. v. Weston*,
   228 F. Supp. 3d. 320 (D. Del. 2017) ................................................................. 9, 10

*Potter v. Beacon Intercontinental Group, Inc. et. al.*,
   Civil Case No. 1:20-cv-4599 (JGK) (United States District Court,
   SDNY) ..................................................................................................................... 7

*Universal Secure Registry, LLC v. Apple Inc.*,
   469 F. Supp. 3d. 231 (D. Del. 2020) ....................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................... *passim*

Defendant Business Insurance Holdings ("BIH") respectfully objects to the Magistrate Judge's Recommendation that the Court decline to dismiss Count I of Plaintiffs' Complaint with respect to BIH.[1]

## INTRODUCTION

As noted in the Magistrate Judge's Report and Recommendation ("Report"), this action stems from alleged violations of the non-compete and non-solicitation provisions of an Asset Purchase Agreement (APA) between the Plaintiffs and five parties: (i) Claims Pages, LLC, (ii) C&E MGMT and Planning, Inc., (iii) CLM Group, Inc., (iv) Adam Potter, and (v) Moxie HC, LLC. (Report at p. 3.) Subsequent to the transaction, C&E MGMT and Planning, Inc. changed its name to Business Insurance Holdings, Inc. *Id.* In August, 2019, Potter sold Business Insurance Holdings to Beacon Intercontinental Group, Inc. (*Id.* at 6.)[2]

BIH respectfully objects to the Report on two different grounds. First, the Magistrate Judge erred as a matter of law in concluding that the non-compete and non-solicitation provisions of the APA applied to BIH after its sale to Beacon

---

[1] The Magistrate Judge recommended that the Court dismiss the remaining counts of the Complaint with respect to BIH.

[2] Because facts alleged in the Complaint are assumed to be true by the Court on a motion under Fed. R. Civ. P. 12(b)(6), the Magistrate Judge took as correct the Plaintiffs' allegation that the sale occurred in August, 2019. As noted below, the sale document itself is dated September 3, 2019. This difference is immaterial for purposes of the legal arguments.

1

Intercontinental Group in August, 2019.³  The Magistrate Judge found that there were disputed facts with respect to whether the APA applied to BIH after August, 2019, and recommended for that reason that the Court deny BIH's Motion to Dismiss the Plaintiffs' breach of contract claim.  However, the plain language of the APA is sufficient to determine that those provisions did not apply to BIH after August, 2019, and Plaintiffs' breach of contract claims against BIH should therefore be dismissed.

Second, the Magistrate Judge erred in allowing Plaintiffs' contract claim to stand even though the Plaintiffs failed to allege damages in anything other than a conclusory fashion.

## STANDARD OF REVIEW

The Court reviews a Magistrate Judge's recommendations on a Rule 12(b)(6) motion to dismiss using a de novo standard.  *Universal Secure Registry, LLC v. Apple Inc.*, 469 F. Supp. 3d. 231, 232 (D. Del. 2020).

---

³ Although BIH has not objected to the Magistrate Judge's recommendation with respect to BIH's argument for dismissal of Count 1 on the independent grounds that BIH did not violate Section 6.12 even if it was required to comply with that Section, BIH will reassert this argument as a summary judgment motion if the case is not already dismissed.

2

## FACTS

The facts relied upon by BIH in this Objection are those alleged in Plaintiffs' Complaint, as well the plain language of the Asset Purchase Agreement ("APA") in dispute, and the plain language of the Stock Purchase Agreement ("SPA") under which defendant Adam Potter sold BIH on September 3, 2019.[4]

### I. The Asset Purchase Agreement ("APA").

The plain language of the APA, read as a whole, excludes BIH under its new ownership from the scope of the Non-Compete and Non-Solicitation Clauses that form the basis for the Plaintiff's breach of contract claim.

Both the Non-Compete and Non-Solicitation clauses are found in Section 6.12 of the APA. By their terms, they apply to "each Selling Party," and each Selling Party's "Affiliates." (APA at ¶ 6.12.) (D.I. 67)[5] "Selling Party" is a defined term in the APA, which means "the Companies, Adam Potter, and Moxie" (APA Appendix

---

[4] The APA is referenced in and the basis for the Complaint, and can therefore be considered on a Rule 12(b)(6) motion. The September 3, 2019 Stock Purchase Agreement ("SPA") (D.I. 67) is also referenced in the Complaint, and additionally is part of a set of public documents filed in *Adam Potter v. Beacon Intercontinental Group*, Delaware Superior Court Civil Action No. N20C-01-221-AML-CCLD. Therefore, it can be considered by this Court on a Rule 12(b)(6) motion. *Damiani v. Gill*, No. 15-694-RGA, 2016 WL 1328098, at * 1.

[5] As noted when it was originally filed, the copy of the Asset Purchase Agreement filed as an exhibit to BIH's Rule 12(b)(6) brief did not contain the schedules to the APA.

3

A ("Definitions")), and "the Companies" means Claims Pages LLC, C&E MGMT and Planning Inc., and CLM Group Inc. (*Id*. and APA Preamble.) "Affiliate" is also a defined term under the APA, meaning "with respect to any person, any person controlling, controlled by, or under common control with, such other person." (*Id*.)

An examination of the APA in its entirety reveals its purpose, and provides critical context for the language recited above. The APA makes clear that Potter directly controlled all of the Selling Parties prior to the transaction, and that he will personally remain active in areas that overlapped with the businesses that the Buyers were purchasing. For that reason, the APA seeks to regulate Potter's personal conduct, directly and through the entities he completely controlled.

## II. Potter's Control of all Selling Parties.

Prior to execution of the APA, Potter personally owned 100% of the issued and outstanding stock of C&E. (APA at p. 1.) Moxie HC, LLC was the owner of Claims Pages and CLM Group. *Id*. Potter is identified in the APA as the "Sole Member" of Moxie HC, LLC. (APA Signature Page.) Thus, Potter exercised complete control over all of the Selling Parties at the time of execution of the APA.

## III. Potter's Permitted Activities Post-Sale.

The APA contains extensive provisions describing the various ways in which Potter will continue to be personally and extensively involved in activities that overlap with Plaintiffs' activities with hotels and conference centers, even after the

4

transaction has occurred. The APA contains carefully written provisions regarding the use of Potter's International Air Transport Association number ("IATA Number") post-transaction. The IATA Number is used, according to the APA, to book hotels, conference centers, or other venues that require the utilization of a registered travel agent for commission purposes." (APA at ¶ 6.1(b).)

The APA indicates that Potter will continue to retain the IATA Number as his "sole property" after the transaction, (APA at ¶ 6.1(c)), but sets forth a detailed system whereby Potter and the Plaintiffs will jointly use the IATA Number. Specifically, the "Selling Parties" (all of which, again, were completely controlled by Mr. Potter at the time of the APA) will pay Plaintiff AICPCU any Hotel Commissions earned and paid after the APA's Closing Date, but will keep 10% of those Commissions. (APA at ¶ 6.1(a).) Plaintiffs, in turn, will be entitled to use the IATA Number for booking hotels, conference centers, and other venues, but Potter and his selling parties will receive 10% of the Commissions earned from Plaintiffs' use of the IATA Number. (APA at ¶ 6.1(b).)

Outside of the provision discussing the use of the IATA Number by the "Selling Parties" post-transaction, the APA also contemplates that Potter will personally use the IATA Number "with other Persons and other business relationships other than with Buyer, and Buyer shall have no rights, and shall not be entitled to any commissions, with respect to such business relationships with such

5

other Persons or otherwise, it being understood that the IATA Number is the sole property of Adam Potter." (APA at ¶ 6.1(c).) In fact, the APA contemplates that Potter may even assign or transfer the IATA Number to another entity that he controls if that entity agrees to comply with the Commission-sharing provisions of the APA. (*Id.*)

The APA recognizes that it is Potter, not the Companies, that will be engaging in activities that are similar enough to the Sellers' business that they must be regulated by the APA. In connection with its confidentiality provisions, the APA states that "…Moxie and Adam Potter are permitted to use, solely in connection [with] the Permitted Activities, such know-how included in the Confidential Information that is currently used by the Selling Parties outside of the Sellers' Businesses." (APA at ¶ 6.11.) The confidentiality portion of the APA assumes that Potter and Moxie, not the other Selling Parties, will be undertaking any activities that involve the use of confidential information.

The APA also provides that Potter will continue to personally work with Plaintiffs for up to six months on specified projects. (APA ¶ 2.4(b)(ii).) It separately provides that Potter will provide up to 400 hours of paid "Transition Services" to the Plaintiffs. (*Id.* at ¶ 6.3.) Thus, although Section 6.12 of the APA refers to the Selling Parties, reading that Section in the context of the entire APA reveals that the use of the term "Selling Parties" at the time of signing was because the Selling Parties were

all controlled by Potter. There is no reason to believe, based on the plain language of the APA, that the Plaintiffs had any intent to restrict the activities of any Company once that company was no longer controlled by Potter.

### IV.     Potter Sells BIH To A Third Party.

On June 7, 2018, after the APA was executed, C&E changed its name to Business Insurance Holdings, Inc. (Am. Compl., ¶ 12.) (D.I. 48) Subsequently, on September 3, 2019, Defendant Potter sold BIH to its current owner, Beacon Intercontinental Group, through the SPA. (D.I. 67). In the SPA, Potter specifically provided his interpretation with respect to which people or entities were restricted by Section 6.12 of the APA: "The [Asset Purchase] Agreement contained a non-compete for Adam Potter personally, however Business Insurance is not part of the agreement." (SPA, Schedule 3.09.)[6]

---

[6] BIH has noted in litigation against Potter in the United States District Court for the Southern District of New York that Potter has acted contrary to this language by suggesting to the Plaintiffs in this case that they name BIH as a defendant. *Potter v. Beacon Intercontinental Group, Inc. et. al.*, Civil Case No. 1:20-cv-4599 (JGK) (United States District Court, SDNY). Nevertheless, it is an accurate description of the intent of the APA language.

7

## **OBJECTIONS TO REPORT AND RECOMMENDATION**

### I. The Magistrate Judge Erred As A Matter of Law In Finding that Factual Allegations in the Amended Complaint Precluded Dismissal of Count 1 Against BIH.

The Magistrate Judge rejected BIH's argument that, in the Court's words, "[BIH]'s obligations under the APA ceased fifteen months after the APA was executed when Potter relinquished control over BIH by selling it to Beacon via a Stock Purchase Agreement…." (Report at p. 11.) The Report's basis for rejecting BIH's argument was not the language of the APA, but rather the Report's conclusion that "BIH's argument is a factual dispute that ignores allegations in the amended complaint." (*Id.*) The Report specifically cited paragraphs 97 through 120 of the Amended Complaint, and the Amended Complaint's allegation that Potter "stayed involved with [BIH] and helped to build the business" after BIH was sold to Beacon." (*Id.*)

The Report's finding fails to apply the plain language of the APA, which was written to control the post-transaction activities of Potter and entities that *Potter* controlled—not entities with which he may have merely cooperated. Section 6.12 of the APA must be read in the context of the entire agreement. *Chicago Bridge & Iron Co. NV v. Westinghouse Elec. Co., LLC*, 166 A.3d 912, 913 (Del. 2017). "The basic business relationship between parties must be understood to give sensible life to any contract." *Id*. at 927.

8

As described in detail above, and in BIH's Motion to Dismiss and Reply in support thereof which are incorporated by reference herein, a reading of the entire APA demonstrates that it was designed to restrict Potter's business actions, either directly or through entities that he controlled. The APA repeatedly refers to the Sellers and to Potter interchangeably, reflecting the reality at the time the APA was signed that the Sellers were fully owned by Potter and that he operated through them. When BIH was no longer controlled by Potter, it was no longer an entity whose activities were restricted by the APA.

The Magistrate Judge's Recommendation, allowing any personal involvement by Potter in an entity he longer controlled to bind that entity, even under new ownership, to the same contract terms applicable to entities actually controlled by Potter, is contrary to the plain language of the APA.

## II. The Magistrate Erred As A Matter of Law In Finding That Plaintiffs Alleged Damages With Sufficient Particularity To Withstand a Motion to Dismiss Count 1 Against BIH.

Plaintiffs purport to allege damages resulting from BIH's actions in two paragraphs of the Amended Complaint, to wit:

> 147.  As a direct result of Defendants' conduct in violation of the restrictive covenants, the Institutes face *future losses* of customers and sponsors, loss of good will, loss of revenues, and dilution and confusion in the marketplace.
>
> 148.  Further, The Institutes have incurred costs and retained counsel to investigate and remedy Defendants' conduct.

(Am. Compl., ¶¶ 147-148 (emphasis added).)

The Magistrate Judge's Report properly invokes *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d. 320, 333 (D. Del. 2017), which dismissed a Complaint under Rule 12(b)(6) because no part of the Complaint "allege[d] any facts plausibly showing damages to [the plaintiff]…." (Report at p. 13.)  However, the Report misapplies *Hydrogen Master Rights* by holding that the above-cited two paragraphs of the Complaint satisfy this standard.

Paragraph 147 of the Amended Complaint alleges no damages; it alleges only that the Institutes "face future losses," a statement that by its nature suggests that no damages have yet occurred, even though the Conference upon which the Amended Complaint was primarily based had occurred five months prior to the filing of the Amended Complaint.

Regarding Paragraph 148, interpreting retention of counsel to file a Complaint as satisfying the requirements of *Hydrogen Master Rights* would make it literally impossible for a defendant to prevail on a 12(b)(6) motion against any Complaint filed by an attorney paid for his or her services.  The case law requiring a showing

of damages in order to establish a breach of contract cannot reasonably be read to be satisfied by the filing of a Complaint.[7]

Delaware law requires that a plaintiff alleging a breach of contract set forth facts regarding damages that go beyond mere conclusory statements. The Plaintiffs have failed to meet this standard, and Count 1 of the Complaint should be dismissed under Rule 12(b)(6) for this reason.

## **CONCLUSION**

For the reasons stated above, BIH respectfully requests that the portion of the Report and Recommendation recommending denial of BIH's Motion to Dismiss Count 1 of the Amended Complaint be rejected, and that the Amended Complaint be dismissed in its entirety with prejudice with respect to BIH.

---

[7] The Report also references Paragraph 6.12(d) of the APA, (Report at 12-13), but this provision is designed to prevent a defendant from arguing against injunctive relief based on a plaintiff's failure to show harm. It is not meant to override the basic elements of a breach of contract claim.

11

| | |
|---|---|
| **OF COUNSEL:** | **DLA PIPER LLP (US)** |
| | */s/ Matthew P. Denn* |
| Christopher Oprison (admitted *pro hac vice*) | Matthew P. Denn (DE Bar No. 2985) |
| DLA PIPER LLP (US) | 1201 North Market Street, Suite 2100 |
| 200 South Biscayne Boulevard, Suite 2500 | Wilmington, DE 19801-1147 |
| Miami, Florida 33131 | Telephone: 302.468.5700 |
| Telephone: 305.423.8522 | Facsimile: 302.394.2341 |
| Facsimile: 305.675.6366 | matthew.denn@dlapiper.com |
| chris.oprison@dlapiper.com | |
| | *Attorneys for Defendant Business Insurance Holdings, Inc.* |
| DATED: February 22, 2021 | **Words: 2106** |