IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, | ) ) ) | Civil Action No. 1:19-cv-01600-RGA |
| | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| Adam Potter, PBIH, LLC and Business Insurance Holdings, Inc., | ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
ADAM POTTER'S MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT**

---

Seth Niederman (#4588)
**FOX ROTHSCHILD LLP**
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
T: (302) 622-4238
SNiederman@foxrothschild.com

**OF COUNSEL:**
Robert S. Tintner (*Admitted Pro Hac Vice*)
Nathan M. Buchter (*Admitted Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

Dated: February 11, 2022                    *Attorneys for Defendant Adam Potter*

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ... 1

SUMMARY OF ARGUMENT ............................................................................. 1

I.    POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT I). ...................................................... 1

II.   POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM (COUNT II). ............................................... 3

III.  POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' DECLARATORY RELIEF CLAIM (COUNT IV). .................................................. 3

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 3

STANDARD OF REVIEW .............................................................................. 4

ARGUMENT ..................................................................................................... 5

I.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: THE APA IS UNAMBIGUOUS AND SHOWS THE CANNABIS CONFERENCE DID NOT VIOLATE ITS TERMS AND CONDITIONS. ......................................................... 5

II.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: PLAINTIFFS HAVE SUFFERED NO DAMAGES BECAUSE OF POTTER OR THE CANNABIS CONFERENCE. ............................................................................. 10

III.  PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: PLAINTIFFS HAVE WAIVED MUCH OF THE RELIEF THEY SEEK. ................................. 12

IV.   PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM FAILS: NO EVIDENCE EXISTS SHOWING POTTER INTERFERED WITH PLAINTIFFS' BUSINESS RELATION OR THAT PLAINTIFFS SUFFERED ANY DAMAGES. ............................................. 14

V.    COUNT IV FAILS: IT IS LEGALLY IMPROPER, REDUNDANT OF THEIR BREACH OF CONTRACT CLAIM AND MOOT. .............................................. 16

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010)......................4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)......................................4

*Corliss v. O'Brien*, 200 Fed. App'x. 80 (3d Cir. 2006)......................................18

*Hickox v. Novosel*, 2021 WL 6197748 (M.D. Pa. Dec. 31, 2021) ......................4

*In re Noble*, 2018 WL 2012903 (D. Del. Apr. 30, 2018) ..................................18

*O'Callaghan v. Hon. X*, 661 F. App'x 179 (3d Cir. 2016)..................................18

*Paul v. Deloitte & Touche, LLP*, 974 A.2d 140 (Del. 2009)..............................12

*Sci. Telecommunications LLC v. ADTRAN, Inc.*, 2016 WL 4037004 (D. Del. July 25, 2016) ......................................................................................10

*Strassburger v. Earley*, 752 A.2d 557 (Del. Ch. 2000), *as revised* (Jan. 27, 2000) ...............................................................................................13

*Swain v. Wilmington Tr., N.A.*,, 2018 WL 934598 (D. Del. Feb. 16, 2018) ......19

*Truinject Corp. v. Nestle Skin Health, S.A.*, 2020 WL 70981 (D. Del Jan 7, 2020), *report and recommendation adopted*, 2020 WL 127096 (D. Del. Mar. 17, 2020) ...........................................................................................16

*Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624 (Del. 2003) .11

*U.S. Nat'l Bank Ass'n v Gunn*, 23 F. Supp. 3d 426 (D. Del. 2014) ..................17

*United Rentals, Inc. v. Ram Holdings, Inc.*, 937 A.2d 810 (Del. Chanc. 2007)...7

*Vitalo v. Cabot Corp.*, 399 F.3d 536 (3d Cir. 2005)............................................5

*VLIW Tech, LLC v. Hewlett Packard Co.*, 840 A.2d 606 (Del. 2003)................7

*XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 867640 (D. Del. Mar. 8, 2013), *aff'd* (Jan. 21, 2015).........................................................................5

**Rules**

Fed. R. Civ. P. 56.................................................................................................4

Defendant, Adam Potter ("Potter"), through counsel, submits this memorandum of law in support of his Motion for Summary Judgment as to all remaining claims or causes of action asserted, and relief sought, by Plaintiffs, The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC ("Plaintiffs"), against Potter in the Amended and Supplemental Complaint, D.I. 48 (the "Amended Complaint").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The pleadings and discovery are closed. The remaining causes of action asserted by Plaintiffs against Potter are: Breach of Contract (Count I); Tortious Interference (Count II); and Declaratory Relief (Count IV).

Plaintiffs' remaining claims against Potter are all ripe for summary judgment.

## SUMMARY OF ARGUMENT

**I.    POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT I).**

This action is based on a misguided case of buyer's remorse disguised behind untenable claims that lack any merit. Plaintiffs' breach of contract claim is a prime example, improperly seeking to recoup *millions* from Potter through contrived allegations that he violated certain restrictive covenants contained in the underlying Asset Purchase Agreement (the "APA"). This claim and its allegations pled in support have no merit.

Potter is admittedly no longer in the insurance industry, and has not been since September 3, 2019. The undisputed record shows that Potter's alleged conduct – involvement in the planning of one insurance conference that ultimately occurred in late-October 2019 – was entirely consistent with, and permissible under, the plain-language of the APA's restrictive covenants. Plaintiffs' own corporate officer, who led their acquisition team and even negotiated some of the very contractual language at-issue, offered testimony that flatly contradicts the twisted interpretation advanced by Plaintiffs in this case.

Potter's lack of any breach is sufficient by itself to warrant entry of summary judgment on this breach of contract claim. But, it is certainly not the only reason. Not only does the record unequivocally reflect that Potter committed no contractual violation, but there is also not one shred of competent evidence to establish (or even suggest) Plaintiffs have suffered contractual damages because of Potter's alleged conduct. Plaintiffs *admittedly* have not lost a single customer or sponsor, or revenue, because of Potter, and even withdrew their pursuit of such a claim months ago.

Additionally, the record shows – again indisputably – that Plaintiffs waived their right to pursue much of the relief they seek from Potter for his alleged breach of contract. The Amended Complaint is replete with allegations of purported irreparable harm. Plaintiffs knew about the underlying insurance conference well in advance of September 2019. In the summer of 2019, Plaintiffs even informed Potter

that they would exercise contractual rights available to them to stop the Cannabis Conference, and they threatened withholding deferred payments owed under the APA to prevent such alleged irremediable harm from occurring.  Yet, Plaintiffs took none of those steps.  Plaintiffs did not seek to restrain Potter or stop the Cannabis Conference.  Plaintiffs also made all payments due under the Asset Purchase Agreement.  Thus, Plaintiffs waived such relief.

## II.    POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM (COUNT II).

Like their breach of contract claim, Plaintiffs' tortious interference claim is fatally flawed on both causation and damages.  Plaintiffs cannot point to a single customer or business relation with which Potter allegedly interfered.  Similarly, Plaintiffs have suffered no damages to support this claim.  Again, Plaintiffs admittedly have not lost any customers or sponsors, or revenue, because of Potter's alleged conduct, thus, evidencing no damages.

## III.    POTTER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' DECLARATORY RELIEF CLAIM (COUNT IV).

Plaintiffs' final claim against Potter - seeking declaratory relief – is legally improper, redundant of their breach of contract claim, and now moot.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Potter incorporates by reference his accompanying Omnibus Statement of Undisputed Material Facts ("SUMF"), including defined terms set forth therein.

## **STANDARD OF REVIEW**

Summary judgment should be granted when the record, viewed most favorably to the non-moving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the initial burden of showing no genuine factual issues exist. *Celotex Corp.,* 477 U.S. at 323.  Once met, the non-moving party must identify specific record facts to contradict those offered by the moving party.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Bare assertions, conclusory allegations, or mere suspicious will not suffice.  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).  Nor will self-serving testimony.  *Hickox v. Novosel*, 2021 WL 6197748, at *2 (M.D. Pa. Dec. 31, 2021) (citing cases); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 867640, at *8 (D. Del. Mar. 8, 2013), *aff'd* (Jan. 21, 2015).

Instead, the non-moving party must present affirmative and admissible to defeat a properly supported summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Vitalo v. Cabot Corp.*, 399 F.3d 536, 542 (3d Cir. 2005).

## ARGUMENT

**I. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: THE APA IS UNAMBIGUOUS AND SHOWS THE CANNABIS CONFERENCE DID NOT VIOLATE ITS TERMS AND CONDITIONS.**

The ***sole and only basis*** for Plaintiffs' breach of contract claim against Potter is the Cannabis Conference, which Plaintiffs allege violate their restrictive covenant with Potter. *See* D.I. 48 (Amended Complaint), ¶¶ 42-75. While Plaintiffs half-heartedly allege (1) the IP Conference violated the Non-Compete, *id.* at ¶¶ 51, 85, 91; (2) that Potter is assisting Posner with claimsXchange in violation of the Non-Compete, *id.* at ¶¶ 121-43, and (3) that Potter, in violation of the Non-Compete, is continuing to assist BIH after he sold it to Beacon, the record evidence does not support any of these purported accusations. Instead, it is undisputed:

- The IP Conference never occurred. SUMF ¶ 34.

- Potter sold BIH effective September 1, 2019, resigned from BIH effective September 3, 2019, exited the insurance industry then, and has not returned. *Id.* at ¶¶ 66-67.

- After the sale, Potter had no official role at BIH, and took no action on BIH's behalf. *Id.* at ¶ 68.

- Potter had no involvement in the formation or operation of claimsXchange – all he did was make an introduction. *Id.* at ¶¶ 80-84.

- There is no evidence Potter solicited a single customer, sponsor, or business relation of Plaintiffs, or that Plaintiffs lost a single customer, sponsor, or business relation due to Potter. *Id.* at SUMF ¶¶ 44-46.

Thus, Potter's involvement in the planning of the Cannabis Conference is all that remains of Plaintiffs' purported breach of contract claim against Potter.[1]  That claim fails entirely because neither Potter's conduct, nor the Cannabis Conference itself, violates the plain text of the APA's restrictive covenants.  Plaintiffs have also suffered no damages because of Potter.

To state a breach of contract claim under Delaware law, a plaintiff must produce evidence showing:  (1) the existence of a contractual obligation; (2) a breach of that obligation by the defendant, and (3) resulting damage.  *VLIW Tech, LLC v. Hewlett Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Contract interpretation is for the Court and begins, and in this case ends, with the writing's plain language.  *See United Rentals, Inc. v. Ram Holdings, Inc.*, 937 A.2d 810 (Del. Chanc. 2007).  Notably, ambiguity does not exist merely because the parties disagree about a contract's terms.  *Id.* at 830.

The APA's restrictive covenant, when read with the exclusions contained on the face of the Permitted Activities, is unambiguous.[2]  The Non-Compete is expressly limited to activities competitive with "Sellers' Businesses as conducted as

---

[1] Potter was involved in planning the Cannabis Conference, but not the decision to proceed with it.  The Cannabis Conference occurred in late-October 2019, almost two months after Potter sold BIH.  SUMF ¶¶ 41, 77.

[2] Only Plaintiffs' tortured interpretation of the restrictive covenant could provide a meaning in which anyone could conclude that it prohibited the Cannabis Conference.

of the Closing Date." SUMF ¶ 17. The APA defines "Sellers' Businesses" as "CLM Business," "CP Business," and "C&E Business" and the "Closing Date" as June 1, 2018. SUMF ¶¶ 2, 17.

It is undisputed that CLM did not have any Cannabis-related product as of the Closing Date. *Id.* at ¶ 29. Indeed, Schedule A to the APA, which fully defined the "CLM Business" according to Plaintiffs, does not identify any Cannabis-related product or service CLM provided as of the Closing Date. *Id.* at ¶¶ 10-11, 14-15.

Thus, it is undisputed that the APA's plain-language states Potter (and BIH) were permitted to plan and present the Cannabis Conference because such a conference did not compete with Sellers' Businesses as of the Closing Date.

Even if CLM did have a Cannabis-related product (which Plaintiffs admit that CLM did not), the Cannabis Conference would ***still not violate*** the Non-Compete because it is one of the excluded "Permitted Activities." *Id.* at ¶ 18. Again, the plain text of the APA states that the Permitted Activities include the "business operations" of BIH, which included events. *Id.* at ¶ 19. What is more, the Cannabis Conference did not target claims and litigation management professionals, *id.* at ¶ 28, and Plaintiffs have proffered no evidence that any claims and/or litigation management professionals even attended the Cannabis Conference.

Importantly, Schedule 6.12 to the APA, which contains the Permitted Activities, is by no means an exclusive list of events, and it was never intended to

be one.  It contains *no* language limiting Business Insurances' business operations to certain products and services.  *Id.* at ¶ 20.  Katherine Horowitz, Plaintiffs' Chief Administrative Officer who negotiated the terms of the underlying transaction, including the scope of the Permitted Activities, *id.* at ¶¶ 4, 22, stated unequivocally during her deposition that the Permitted Activities were meant to illustrate a part of the Non-Compete, not be a catchall.  *Id.* at ¶ 21.  While Plaintiffs would like to expand the Non-Compete's scope beyond its clear text after the fact, and limit the Permitted Activities to those products and services enumerated there, they cannot do so. *See* D.I. 48 (Amended Complaint), ¶ 30.  The Non-Compete's language, coupled with the Permitted Activities in Schedule 6.12, demonstrates clearly: the Cannabis Conference did not compete and was not in violation of the Non-Compete.

That same reasoning provided above is fatal to Plaintiffs' breach of contract claim alleging Potter violated the Non-Solicit.  There is no record evidence that Potter solicited or induced, or attempted to solicit or induce, "any customer or other business relation of Buyer for the provision of products or services related to any of Sellers' Businesses."  SUMF ¶ 23.  CLM did not have any Cannabis-related product as of the Closing, nor a stand-alone conference on Cannabis as of May 2021 when Anne Blume, CLM's former chief executive officer, was deposed.  *Id.* at ¶¶ 29-30.  The Non-Solicit is also expressly inapplicable to Permitted Activities, such as the Cannabis Conference.  *Id.* at ¶¶ 23-24.

There is no record evidence that Potter engaged in conduct that "would otherwise interfere with the business relationship between Buyer and its customers or other business relations."  Declaration of Seth Niederman ("Niederman Decl."), Ex. 1 (APA), § 6.12(b), Potter-DE-000031 to -000032.  The only "business relationship" Plaintiffs even identified through discovery is a CLM sponsor, Wilson Elser (a law firm).  *Id.* at ¶ 49.  Plaintiffs have presented no evidence of interference with any relationship with Wilson Elser, which is still a CLM-member (along with its attorneys), still sponsors CLM events, and sits on CLM's cannabis advisory board.  *Id.* at ¶¶ 51, 53-54.  Notably, Blume conceded at her deposition that no one at Wilson Elser has communicated to her that Wilson Elser would no longer sponsor CLM-events because it sponsored the Cannabis Conference.  *Id.* at ¶ 50.  In fact, recently, someone from Wilson Elser told Blume the exact opposite – that the firm's involvement in a BIH event would <u>not</u> preclude Wilson Elser from working with CLM.  *Id.* at ¶ 52.

Simply put, the Court may conclude based upon the undisputed facts and record evidence, and the plain text of the APA itself, including the Permitted Activities, that Potter has committed no breach of contract in this case.  That is certainly true here, where the contractual language-at-issue is unambiguous, but also true even if the Court were to find the APA to be ambiguous.  It is well-settled that any ambiguities in a contract must be construed against the drafting party, which is

Plaintiffs in this case. *Sci. Telecommunications LLC v. ADTRAN, Inc.*, 2016 WL 4037004, at *2 (D. Del. July 25, 2016) ("[A]ny ambiguity in the agreement as to what acts are covered and what are not . . . is generally construed against the drafter . . . ."); *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003) (same). Here, however, while Plaintiffs' interpretation of the restrictive covenant and the Permitted Activities is overly broad, misguided and tortured, such a reading does not lead to any conclusion that the restrictive covenant is ambiguous. Nor does any reading of it permit a conclusion that the Cannabis Conference violated the restrictive covenant. Thus, Plaintiffs cannot prevail on their breach of contract claim against Potter based upon the Cannabis Conference – or any other unsupported claims of competition and/or solicitation. Accordingly, this Court should enter summary judgment on Count I.

## II. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: PLAINTIFFS HAVE SUFFERED NO DAMAGES BECAUSE OF POTTER OR THE CANNABIS CONFERENCE.

Even if the Court were to determine that the Cannabis Conference violated the Non-Compete or the Non-Solicit, it is undisputed that Plaintiffs have suffered no damages as a result. Plaintiffs already concede that any purported impact from this Cannabis Conference would be, at most, "*de minimis*." SUMF ¶ 32. Plaintiffs also concede that they have not lost any customers, sponsors, or revenue because of Potter's alleged conduct, and that Plaintiffs are not pursuing a claim for such

damages. *Id.* at ¶¶ 44-48. Plaintiffs further concede that CLM had no Cannabis Conference. *Id.* at ¶ 30. Thus, any purported attendance at the Cannabis Conference by any of Plaintiffs' customers or sponsors would have had no bearing on their decision to attend or sponsor any of Plaintiffs' events. But, certainly, Plaintiffs have proffered no evidence to the contrary.

Plaintiffs have suffered no cognizable damages under any interpretation of Delaware law. Even their Amended Complaint which seeks damages for "future losses of customers and sponsors, loss of good will, loss of revenues, and dilution and confusion in the marketplace," D.I. 48 (Amended Complaint), ¶ 147, is entirely unsupported by any record evidence in this case.[3] Frankly, at this point, Plaintiffs have conceded they have no such actual damages. The absence of actual, cognizable damages is fatal to Plaintiffs' breach of contract claim.

Contract damages "are designed to place the injured party in an action for breach of contract in the same place as he would have been if the contract had been performed." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009). The traditional measure of damages is that which is utilized in connection with an award

---

[3] Plaintiffs have proffered an expert who opined Plaintiffs' damages are not measured by any actual losses, but by an artificial and unsupportable reduction in the purchase price detached from the alleged conduct or the assets the alleged conduct purportedly impacted. Potter plans to address those deficiencies by separate motion.

of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by the defendant's wrongful conduct.  "To achieve that purpose, compensatory damages are measured by the plaintiff's 'out-of-pocket' actual loss." *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000), *as revised* (Jan. 27, 2000).

Here, by their own admissions, Plaintiffs have suffered no compensatory, "out-of-pocket" losses – caused by Potter or otherwise – and, as such, their breach of contract claim must fail.  Plaintiffs continue to have the protections of the restrictive covenant, and the terms and conditions of the APA have been fully met. Thus, there are no damages for which to compensate Plaintiffs, and  Potter is entitled to summary judgment on Count I.

## III.  PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS: PLAINTIFFS HAVE WAIVED MUCH OF THE RELIEF THEY SEEK.

Lost in several years of protracted litigation is that Plaintiffs have largely waived the relief sought in their Amended Complaint.  Their Amended Complaint is replete with allegations and requests for injunctive and declaratory relief. Plaintiffs have abandoned and waived such requests.  Indeed, while motive and strategy may be irrelevant, what is clearly relevant, important and dispositive on this point is that Plaintiffs freely and admittedly failed to seek any form of injunctive relief to prevent the Cannabis Conference from occurring ***even though they were well aware of its planning and advertising before its scheduled date in October***

*2019 and certainly at the time that they filed this action in September 2019.* SUMF ¶¶ 29, 35-38. The APA expressly provided Plaintiffs with the ability "to seek an injunction or injunctions to prevent breaches of the provisions of [the restrictive covenant] without proving actual damages, and to enforce specifically such terms and provisions." *Id.* at ¶ 36; Niederman Decl., Ex. 1 (APA), § 6.12(d), Potter-DE-000032. Typically where a plaintiff believes that there has been a violation of a restrictive covenant, that is precisely the relief that it seeks.

Here, despite making multiple threats and claims, the fact remains that Plaintiffs never sought any form of injunctive relief in this action to stop the Cannabis Conference from occurring (or to prevent or remedy any other purported allegation of competition or solicitation as contained in their Amended Complaint). SUMF ¶¶ 29, 42-43. Plaintiffs have certainly waived any right to do so now, over two-and-a-half years later.

More importantly, Plaintiffs' failure to seek injunctive relief – which could have been filed in the form of a motion for preliminary injunction at the time that they commenced this action in August 2019 – should be seen as an admission that Plaintiffs did not believe the Cannabis Conference violated the restrictive covenant, and that it did not warrant any form of injunctive relief. Certainly it did not, but crucially, Plaintiffs never actually tried to prevent the Cannabis Conference from moving forward. They also took no action to convince this Court that a violation of

the restrictive covenant occurred before it happened.  For that additional reason, Potter is entitled to summary judgment on Count I.

## IV. PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM FAILS: NO EVIDENCE EXISTS SHOWING POTTER INTERFERED WITH PLAINTIFFS' BUSINESS RELATION OR THAT PLAINTIFFS SUFFERED ANY DAMAGES.

Plaintiffs cannot establish that Potter tortiously interfered with any existing contractual or business relationship.  The Court should enter summary judgment in favor of Potter and against Plaintiffs for all of the reasons articulated by this Court in recommending the dismissal of this claim as to BIH  because Plaintiffs can neither point to an existing contract or business relationship with which Potter tortiously interfered nor can they establish any of the elements of a tortious interference claim under Delaware law, including any purported damages.[4]

A tortious inference claim under Delaware law requires evidence showing: (1) a valid business relationship or expectancy; (2) the interferer knew of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy was disrupted. *Truinject Corp. v. Nestle Skin*

---

[4] Plaintiffs failed to amend their Amended and Supplemental Complaint to restate any tortious interference claim.  Worse, consistent with their obligations under Federal Rule of Civil Procedure 11, Plaintiffs should have voluntarily discontinued any tortious interference claim in the absence of evidence or damages to support it.

*Health, S.A.*, 2020 WL 70981 at *16 (D. Del Jan 7, 2020), *report and recommendation adopted*, 2020 WL 127096 (D. Del. Mar. 17, 2020).

First, Plaintiffs have failed to identify any contractual or business relation Potter induced or caused to breach with Plaintiffs. SUMF ¶¶ 44-48. As noted above, the only "business relationship" Plaintiffs even identified during discovery – Wilson Elser – is still a CLM-member (along with its attorneys), still sponsors CLM events, and sits on CLM's cannabis advisory board. *Id.* at ¶¶ 51, 53-54; *see id.* at ¶¶ 50, 52. Thus, Wilson Elser sponsoring the Cannabis Conference (admittedly and undisputedly before CLM even contemplated a Cannabis Conference of its own), provides no basis for any tortious interference claim against Potter. "[A] plaintiff must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *U.S. Nat'l Bank Ass'n v Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) (citation and internal quotation marks omitted). "[M]ere hope or the innate optimism of a salesman or a mere perception of a prospective business relationship" will not suffice. *Id.*

Simply put, Plaintiffs cannot establish a tortious interference claim. Plaintiffs have failed to offer the testimony of a single sponsor, customer, or purported business relation of theirs that was dissuaded or discouraged from entering into a contract or business relationship with Plaintiffs because of Potter. Indeed, Plaintiffs

freely admit that they have not lost any customers or sponsors as result of Potter, and have withdrawn any such claim for lost customer or sponsorship revenue.  SUMF ¶¶ 44-45, 47.  The same goes for advisory board members, directors or trustees.  *Id.* at ¶ 55.

Moreover, it is undisputed that Potter is no longer in any insurance or claims-related business, and has not been since September 3, 2019.  *Id.* at ¶¶ 66-67.  Potter has not – and could not – interfere with any of Plaintiffs' alleged business or contractual relationships, and Plaintiffs have failed to adduce any evidence to the contrary.  Thus, Potter is entitled to summary judgment as a matter of law in his favor on Count II.

## V.    COUNT IV FAILS: IT IS LEGALLY IMPROPER, REDUNDANT OF THEIR BREACH OF CONTRACT CLAIM AND MOOT.

Plaintiffs seek "a declaration that Defendant Potter has ***violated*** the terms of the [APA] and that [Plaintiffs] are entitled to an offset of the ***sums paid*** under the [APA] in an amount equal to the damages caused by . . . Potter's conduct."  D.I. 48 (Amended Complaint), ¶ 179 (emphasis added).  This Court has previously recognized that "[a]sking [it] to proclaim that one's rights were violated is not a proper basis for declaratory relief."  *In re Noble*, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018).  Declaratory relief is instead meant to define the parties' legal rights and obligations ***in anticipation of future conduct***, not proclaim liability for past acts

or adjudicate past conduct. *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016); *Corliss v. O'Brien*, 200 Fed. App'x. 80, 84 (3d Cir. 2006).

Simply put, Potter's alleged past acts are not a cognizable injury-in-fact for declaratory relief and redundant of Plaintiffs' breach of contract claim. *See, e.g.*, *Corliss*, 200 Fed. App'x. at 84; *Swain v. Wilmington Tr., N.A.*, 2018 WL 934598, at *4 (D. Del. Feb. 16, 2018). The Court should enter summary judgment on both claims for the same reasons that Plaintiffs cannot establish a breach of contract claim. *See* Section I, *supra*.

Even to the extent Plaintiffs seek a determination concerning Potter's obligations under the APA, and certain payments they have already made, those requests for relief are now moot. All payments under the APA have been paid.[5] SUMF ¶ 43. Potter admittedly and indisputably is no longer in the insurance industry, and he has not been since the fall of 2019, almost two-and-a-half years ago. *Id.* at   ¶¶ 66-67. Potter's obligations and restrictions under the restrictive covenant in the APA expire in June 2023. Any basis for Plaintiffs to seek declaratory relief

---

[5] Plaintiffs' initial complaint sought declaratory relief to avoid making the final payment owed under the APA, and to offset or escrow the funds. D.I. 1 (Initial Complaint), ¶¶ 122-25. Plaintiffs abandoned that claim with the Amended Complaint, failed to escrow any funds, and made the final payment in early 2020. SUMF ¶ 43.

from the Court concerning those payments or any obligations under the APA is now moot.

## **CONCLUSION**

For all of the above reasons, Potter respectfully requests that this Court enter his proposed form of Order granting summary judgment in his favor, and against Plaintiffs, as to all remaining claims or causes of action asserted, and relief sought, by them against Potter in the Amended and Supplemental Complaint, D.I. 48.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

*/s/  Seth Niederman*
Seth Niederman (#4588)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
(302) 622-4238
SNiederman@foxrothschild.com

**OF COUNSEL:**
Robert S. Tintner (*Admitted Pro Hac Vice*)
Nathan M. Buchter (*Admitted Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market St., 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

Dated: February 11, 2022            *Attorneys for Defendant Adam Potter*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that Potter's Memorandum of Law and Omnibus Statement of Undisputed Material Facts submitted in support of his Motion for Summary Judgment complies with the type, font and word limitations set forth in this Court's December 9, 2019 Scheduling Order, as amended by this Court's February 9, 2022 Order concerning the length of a statement of undisputed material facts. Potter's Memorandum of Law contains 4,068 total words. Potter's Omnibus Statement of Undisputed Facts contains 1,998 total words.

<u>*/s/ Seth Niederman*</u>
Seth Niederman

Dated:  February 11, 2022