IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, <br><br>  Plaintiffs, <br><br> v. <br><br> Adam Potter, PBIH, LLC and Business Insurance Holdings, Inc., <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 1:19-cv-01600-RGA |

---

**REPLY IN FURTHER SUPPORT OF DEFENDANT
ADAM POTTER'S *DAUBERT* MOTION TO EXCLUDE THE
TESTIMONY AND REPORT OF CHRISTINE S. MEYER, PH. D.**

---

Seth Niederman (#4588)
**FOX ROTHSCHILD LLP**
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
T: (302) 622-4238
SNiederman@foxrothschild.com

**OF COUNSEL:**
Robert S. Tintner (*Admitted Pro Hac Vice*)
Nathan M. Buchter (*Admitted Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

Dated: March 25, 2022              *Attorneys for Defendant Adam Potter*

## TABLE OF CONTENTS

I. ARGUMENT ........................................................................................................... 1

    A. The Meyer Report Applies an Improper Methodology. ..................................... 1

    B. The Meyer Report is Not Reliable and Should Be Excluded. ........................... 4

        1. The Meyer Report relies on the unsupported assumption that the VRC Pre-Acquisition Report assumed no competition by Defendants. .................................................................................................. 4

        2. The Meyer Report relies on the unsupported assumption that the VRC Pre-Acquisition Report attributed value to the non-compete covenant. ...................................................................................................... 5

        3. There is Nothing In The Record to Establish That underperformance by the CLM was caused by the alleged competition by Defendants. ....................................................................... 6

II. CONCLUSION ..................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**

*All Pro Maids, Inc. v. Layton*,
  2004 WL 1878784 (Del. Ch. Aug. 9, 2004) .......................................................................... 1, 2

*Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*,
  2009 WL  3161643 (Del.Ch) ................................................................................................ 2

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)................................................................................................. 4

*Greenstar LLC v. Heller*,
  934 F. Supp. 2d 672 (D. Del. 2013)................................................................................... 2, 3

Defendant Potter,[1] through counsel, submits this Reply in further support of his *Daubert* Motion to Exclude the Testimony and Report of Dr. Meyer. D.I. 260-61 (the "**Motion to Exclude**").

## I. ARGUMENT

Dr. Meyer applies the wrong measure of damages for Defendants' alleged breach of a restrictive covenant in the Purchase Agreement. Therefore, her testimony and report are not helpful to the trier of fact and should be excluded.

The proper measure of damages *if* Plaintiffs could establish a breach of the restrictive covenant is the actual lost profits flowing from any alleged breach.[2] The Meyer Report makes no effort to calculate Plaintiffs' lost profits related to the alleged breach—presumably because none exist. Based upon the Meyer Report's application of the wrong measure of damages, Potter respectfully requests that his Motion to Exclude be granted.

### A. The Meyer Report Applies an Improper Methodology.

The Meyer Report relies upon the flawed methodology that the measure of damages for an alleged breach of a restrictive covenant in the Purchase Agreement

---

[1] Potter incorporates by reference the defined terms from his Opening Memorandum. D.I. 266.

[2] *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, *10 (Del. Ch. Aug. 9, 2004) ("The proper measure of damages for breach of a covenant not to compete is [] lost profits." (citing cases)).

1

is the difference between the value of the CLM Assets assuming no competition and the value of the CLM Assets with competition, valued at the time of acquisition.³ However, Plaintiffs do not cite to any legal authority to support Dr. Meyer's "benefit of the bargain" methodology for calculating damages related to an alleged breach of a restrictive covenant. In fact, it is well settled law in Delaware that the proper measure of damages for a breach of a restrictive covenant is the actual lost gross profits caused by the breach.⁴

A review of the cases relied upon by Plaintiffs supports Potter's position that the proper methodology for calculating damages related to a breach of a restrictive covenant should be the damages sustained for any lost customers, sponsors or potential competition—not a reduction in purchase price. For example, Plaintiffs cite to *Greenstar LLC v. Heller*,⁵ to support application of Dr. Meyer's benefit of the bargain damages analysis.⁶ *Greenstar* involved, *inter alia*, an award of damages for breaches of representations and warranties in an asset purchase agreement related to

---

³ *See* Motion to Exclude, Exhibit A (Meyer Report) at ¶ 10(c).
⁴ *Layton*, 2004 WL 1878784 at *10; *see Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.*, 2009 WL 3161643, *15 (Del.Ch) (awarding lost gross profits for a breach of a non-competition covenant contained in an asset purchase agreement).
⁵ 934 F. Supp. 2d 672 (D. Del. 2013).
⁶ *See* D.I. 289 (Pl. Answering Brief in Opposition (the "Opposition")) at pp. 12-13. Pinpoint citations to papers filed on the docket refer to the page numbers in the unique document stamp applied to the header upon filing.

2

certain environmental liabilities.[7] The Court awarded damages for the breach of the representations and warranties equal to the cost associated with specific breach–*i.e.*, the cost to remove the environmental liability.[8] Similarly, the proper measure of damages for calculating damages related to a breach of a restrictive covenant should be the damages associated with the specific breach–*i.e.*, the lost profits related to any lost customers, sponsors or potential competition.[9]

Plaintiffs attempt to salvage their flawed damages methodology by pointing to the absence of actual damages because of the COVID-19 Pandemic.[10] In doing so, Plaintiffs concede that that they are unable to calculate actual damages with a "reasonable certainty." However, this absence of actual damages cannot support the use of an improper methodology to manufacture damages. Accordingly, the Meyer Report and Dr. Meyer's damages testimony should be excluded based upon improper methodology.

---

[7] 934 F. Supp. 2d at 693-96.
[8] *Id. at* 694.
[9] *See* fn4.
[10] Opposition at p. 17.

### B. The Meyer Report is Not Reliable and Should Be Excluded.

As detailed in Potter's Opening Memorandum, Dr. Meyer's "principal conclusions" rely upon assumptions that are not supported by the record. Therefore, the Meyer Report and testimony should be excluded as unreliable.[11]

#### 1. The Meyer Report relies on the unsupported assumption that the VRC Pre-Acquisition Report assumed no competition by Defendants.

There is no evidence in the record that the VRC Pre-Acquisition Report made any assumption about the existence of a non-compete agreement. When questioned about this at her deposition, Dr. Meyer testified that the assumption was "embedded in the income data that one can find in the report."[12] However, Dr. Meyer agreed that the VRC Pre-Acquisition Report does not expressly state that it is relying on the assumption that defendants would not be competing with CLM post-transaction.[13] In an attempt to bridge this gap in the factual record, Plaintiffs resort to arguments related to "common sense conclusion independently grounded in economic and business reality."[14] However, the actual record confirms that Plaintiffs admit that

---

[11] *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 and n.12 (3d Cir. 2000) (finding that expert testimony should be excluded where a damages model relied on assumptions wholly without foundation in the record).
[12] BIH Ex. 1, 87:24-88:11.
[13] *Id.*, 88:12-90:10.
[14] Opposition at pp. 18-19.

4

restrictive covenants were not a key term in the negotiation of the APA.[15] Because there are no facts in the record to support the assumption that the VRC Pre-Acquisition Report assumed no competition by Defendants, the Meyer Report and Dr. Meyer's damages testimony should be excluded as unreliable.

        **2.     The Meyer Report relies on the unsupported assumption that the VRC Pre-Acquisition Report attributed value to the non-compete covenant.**

As detailed in Potter's Opening Memorandum, VRC believed the value of the non-compete covenant of the APA to be "immaterial."[16] Thus, VRC did not attribute any of the purchase price that Plaintiffs paid to acquire the CLM Assets to the non-compete as of the Closing Date. Plaintiffs attempt to overcome this fatal fact through arguments concerning VRC's alleged 'assumptions.' However, Plaintiffs do not cite to anything in the record to support these assumptions in the *Pre*-Acquisition Report nor does the Meyer Report make any effort to confirm these alleged assumptions.[17] Because there are no facts in the record to support the assumption that the VRC *Pre*-Acquisition Report attributed value to the non-compete covenant, the Meyer Report and Dr. Meyer's damages testimony should be excluded as unreliable.

---

[15] *See* Motion to Exclude Ex. C (Horowitz-Potter emails); Ex. D (Horowitz-Miller emails).
[16] *See* Motion to Exclude Exhibit F (VRC Post-Acquisition Report) at 098.
[17] Plaintiffs' citation to BIH Ex. 7, ¶ 54 in its Opposition at p. 15 is misplaced given that this citation relies on specific portions of the ***Post***-Acquisition Report.

      **3.**      **There is Nothing In The Record to Establish That underperformance by the CLM was caused by the alleged competition by Defendants.**

Plaintiffs do not respond to Potter's argument that the Meyer Report does not present any analysis that assesses the amount of, if any, specific profits that Plaintiffs actually lost from sponsors, conference attendees (*i.e.*, customers), or members as a result of the alleged competitive actions undertaken by Defendant Potter after the Closing Date. Accordingly, the Meyer Report does not provide a sufficient and appropriate basis for the premise that Plaintiffs were actually damaged by the alleged breach of the non-compete covenant, and therefore, the Meyer Report and Dr. Meyer's testimony should be excluded as unreliable.

## II.   CONCLUSION

For the reasons stated above, Potter respectfully requests that the Meyer Report be excluded and that Dr. Meyer be precluded from offering damages testimony at trial.

[Signature of counsel on next page]

|  | **FOX ROTHSCHILD LLP** |
|---|---|
|  | */s/ Seth Niederman* |
|  | Seth Niederman (#4588) |
|  | Citizens Bank Center |
|  | 919 North Market Street, Suite 300 |
|  | Wilmington, DE 19899-2323 |
|  | T: (302) 622-4238 |
|  | sniederman@foxrothschild.com |
|  | **OF COUNSEL:** |
|  | Robert S. Tintner (*Admitted Pro Hac Vice*) |
|  | Nathan M. Buchter (*Admitted Pro Hac Vice*) |
|  | **FOX ROTHSCHILD LLP** |
|  | 2000 Market Street, 20th Floor |
|  | Philadelphia, PA, 19103-3222 |
|  | rtintner@foxrothschild.com |
|  | nbuchter@foxrothschild.com |
| Dated: March 25, 2022 | *Attorneys for Defendant Adam Potter* |

7