IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS and THE INSTITUTES, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADAM POTTER and BUSINESS INSURANCE HOLDINGS, INC.,<br><br>    Defendants. | Civil Action No. 19-1600-RGA |

MEMORANDUM ORDER

Before me are Business Insurance Holdings, Inc. ("BIH")'s and Adam Potter's *Daubert* motions to exclude Plaintiffs' damages expert Dr. Christine Meyer. (D.I. 259, 260). I have considered the parties' briefing. (D.I. 261, 262, 289, 292, 297, 298).

Plaintiffs allege that BIH and Potter have breached the non-compete provisions of the Asset Purchase Agreement ("APA"). (D.I. 48). Dr. Meyer opines that the appropriate measure of damages for this breach is the difference between the amount Plaintiffs paid for the CLM assets and the value of the CLM assets received by Plaintiffs (which is lower due to Defendants' competition). (D.I. 263-1, Ex. 2, ¶ 10(c)).

Plaintiffs based their purchase price on an initial valuation performed by Valuation Research Corporation ("VRC") on March 5, 2018 (the "Pre-Acquisition Valuation"). (*See* D.I. 263-2, Ex. 3). Dr. Meyer created two alternative adjustments to the Pre-Acquisition

1

Valuation— the "Theoretical Adjustment" and the "Actual Revenue Adjustment"—to estimate the value Plaintiffs would have expected to receive assuming competition from Defendants. (D.I. 263-1, Ex. 2, ¶¶ 55–59). To calculate the damages, Dr. Meyer subtracted the value of the CLM assets estimated using these adjustments from the present value of the purchase price as of June 1, 2018. (*Id.*, ¶ 63). She concluded that Plaintiffs' damages are "at least $3.5 to $5.2 million, and as high as $6.7 to $8.0 million." (*Id.*).

In conducting her analysis, Dr. Meyer assumed, "The valuation in the Pre-Acquisition Valuation Report was conducted under the assumption that Defendants would not compete with CLM after the acquisition of the CLM Assets" by Plaintiffs. (*Id.*, ¶ 42). BIH and Potter argue that there is no factual support for this assumption. (D.I. 261 at 8–9; D.I. 262 at 14–15). Plaintiffs respond by pointing to evidence supporting Dr. Meyer's assumption. (D.I. 292 at 11–12; *see also* D.I. 263-1, Ex. 1, at 89:5–90:5; 242:1–9). Thus, I reject this "failure of proof" argument.[1] BIH and Potter can cross-examine Dr. Meyer about the basis for her assumption.

BIH also argues that Dr. Meyer's "Theoretical Adjustment" model is not supported by the facts of this case. (D.I. 262 at 15–17). For her "Theoretical Adjustment," Dr. Meyer uses the Cournot model to assume that Defendants' competition with Plaintiffs would result in a 50% reduction in Plaintiffs' market share. (D.I. 263-1, Ex. 2, ¶ 57). The text Dr. Meyer relies on states that one of the "rules/assumptions" of the Cournot model is that the "[p]roducts are homogeneous." (D.I. 263-5, Ex. 6, at 233). BIH argues that Plaintiffs and Defendants do not offer homogeneous products and thus the requirements of the model are not met. (D.I. 262 at

---

[1] Potter's argument that Dr. Meyer improperly assumes that the Pre-Acquisition Valuation attributed value to the non-compete covenant (D.I. 261 at 10–12) is rejected on the same basis.

2

15–17). Dr. Meyer opines that the products offered by CLM and Defendants would be "substantively similar" given Potter's intimate knowledge of CLM and the relevant industry. (D.I. 263-6, Ex. 7, ¶ 38). Dr. Meyer testified that although the "products" in this case are not "completely homogeneous," the Cournot model can be expanded to account for the types of similarities here. (D.I. 263-1, Ex. 1, at 274:6–277:9). Defendants can cross-examine Dr. Meyer or present contrary evidence to challenge these opinions. Thus, I decline to exclude Dr. Meyer's testimony regarding the "Theoretical Adjustment."[2]

BIH also argues that Dr. Meyer's "Actual Revenue Adjustment" model is not supported by the facts of this case. (D.I. 262 at 17–18). For this adjustment, Dr. Meyer estimated the rate at which CLM's revenue would decrease over the five-year non-compete period due to competition from Defendants. (D.I. 263-1, Ex. 2, ¶ 59). To do this, Dr. Meyer took the difference between CLM's actual revenue in 2019 and the 2019 projected revenue used in the Pre-Acquisition Valuation. (*Id.*). Using this "diminution" of revenue, she calculated an annual diminution rate of 9.4% due to competition from Defendants. (*Id.*; *see also id.* at Ex. 13). She then recalculated the Pre-Acquisition Valuation under the assumption that CLM's revenues would drop 9.4% per year for five years. (*Id.*, ¶¶ 59, 63).

Instead of comparing CLM's actual revenue numbers from 2018 to 2019, for example, Dr. Meyer assumes that the $1.1 million difference between the 2019 projected and actual

---

[2] BIH also argues that Dr. Meyer's "Theoretical Adjustment" is not based on reliable principles and methods because the simple Cournot model is not the appropriate model for analyzing damages in this case. (D.I. 262 at 19–20). Plaintiffs respond by citing various texts and cases accepting the Cournot model as a way to evaluate competition between firms. (D.I. 292 at 15–19). I therefore decline to exclude Dr. Meyer's analysis on this basis. Any limitations to the applicability of the Cournot model to the particular facts of this case can be explored on cross-examination.

3

revenues is solely a result of Defendants' competition. This assumption is entirely unreliable. It fails to account for the possibility of a faulty projection or the several other reasons why a business's actual revenue might be 10% lower than projected. Thus, I will tentatively exclude Dr. Meyer's "Actual Revenue Adjustment" because her methodology is not sound. If Plaintiffs would like me to reconsider, they may bring Dr. Meyer to the pre-trial conference on May 27, 2022, and she may present her methodology and undergo cross-examination on it. Plaintiffs should advise by May 20, whether they want to pursue this theory, and will be presenting Dr. Meyer on May 27th.

Finally, Potter argues that Dr. Meyer applies an improper methodology because the proper measure of damages for breach of a restrictive covenant is lost profits, not benefit of the bargain damages. (D.I. 261 at 15–16). Potter does not cite any cases that support this proposition.[3] Instead, Delaware courts clearly recognize benefit of the bargain damages for breach of contract claims. *See Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000) ("It is a basic principle of contract law that [the] remedy for a breach should seek to give the nonbreaching [] party the benefit of its bargain by putting that party in the position it would have been but for the breach."). I therefore reject this argument.[4]

---

[3] Potter cites cases in which the court awarded lost profits for breaches of non-compete covenants, but these cases do not say anything about the validity of benefit of the bargain damages. *See Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2009 WL 3161643, at *15 (Del. Ch. Sept. 30, 2009), *aff'd*, 7 A.3d 486 (Del. 2010); *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *10 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005).

[4] Potter separately argues that there is no evidence to show that CLM's underperformance was caused by Defendants' competition. (D.I. 261 at 13–14). Potter basically faults Dr. Meyer for not conducting a lost profits analysis. (*See id.*; D.I. 298 at 6). I reject this argument for the reasons stated above.

Consistent with the above discussion, BIH's Motion to Exclude Testimony of Plaintiffs' Expert Under Federal Rule of Civil Procedure 702 (D.I. 259) is **DENIED-IN-PART** and tentatively **GRANTED-IN-PART**. Potter's *Daubert* Motion to Exclude Testimony and Report of Christine S. Meyer, Ph.D. (D.I. 260) is **DENIED**.

Entered this 6th day of May, 2022.

_/s/ Richard G. Andrews_
United States District Judge