IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS and THE INSTITUTES, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ADAM POTTER and BUSINESS INSURANCE HOLDINGS, INC.,<br><br>    Defendants. | Civil Action No. 19-1600-RGA |

MEMORANDUM

Before me is Defendant Adam Potter's Motion for Summary Judgment on Business Insurance Holdings, Inc.'s Cross-Claims. (D.I. 245). I have reviewed the parties' briefing. (D.I. 246, 270, 286).

I. BACKGROUND

Plaintiffs The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC (together, "Plaintiffs") allege that Defendants Adam Potter and Business Insurance Holdings, Inc. ("BIH") have breached the non-compete provisions of the Asset Purchase Agreement ("APA"). (D.I. 48). BIH has asserted five cross-claims against Potter. (D.I. 146 at 52–58). Potter now moves for summary judgment on BIH's three remaining cross-

1

claims: Negligent Management and Operation of BIH (Cross-Claim II), Fraud (Cross-Claim III), and Negligent Misrepresentation (Cross-Claim IV).[1] (D.I. 245).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's

---

[1] Cross-Claim I (Indemnification) and Cross-Claim V (Tortious Interference with Contractual Relationship) have been dismissed. (D.I. 221, 223).

evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

#### A. Negligent Management and Operation (Cross-Claim II)

BIH's "negligent management and operation" claim[2] arises from actions Potter took when he held multiple roles at BIH—officer, director, and sole shareholder. BIH argues that Potter "negligently failed to fulfill his duty of care with respect to BIH" when he failed to take all of the steps he indicated he would take to ensure that the Cannabis & Hemp ("C&H") Conference complied with the APA. (D.I. 146 at 53). The parties agree that this claim is governed by Florida law because BIH is incorporated in Florida. (D.I. 246 at 5; D.I. 270 at 7).

The fiduciary duties owed to a Florida corporation by its officers and directors are provided in the Florida Business Corporation Act. The Act provides that directors must act "[i]n good faith" and "[i]n a manner he or she reasonably believes to be in the best interests of the corporation." FLA. STAT. § 607.0830(1). When making decisions on behalf of the corporation, directors "shall discharge their duties with the care that an ordinary prudent person in a like

---

[2] This claim is essentially a claim for breach of fiduciary duty.

position would reasonably believe appropriate under similar circumstances." *Id.* § 607.0830(2). The Act also codifies the business judgment rule and provides that directors are not personally liable for actions taken in furtherance of their corporate duties, except in limited circumstances. *See id.* § 607.0831.

BIH argues that Florida's statutory business judgment rule only insulates directors from negligence claims, not officers. (D.I. 270 at 8–9). Thus, BIH argues that the statutory business judgment rule does not apply to Potter because he took the alleged negligent actions as both BIH's director and officer. (*Id.* at 9).

As BIH points out, many Florida district courts have held that section 607.0831 does not apply to officers. *See, e.g., FDIC v. Copenhaver*, 2014 WL 12621202, at *10 (M.D. Fla. May 10, 2014) ("By its plain terms, section 607.0831 insulates only directors from claims for ordinary negligence. . . . Had the legislature intended to insulate officers from negligence claims under section 607.0831, it surely could have done so, but it did not."), *report and recommendation adopted sub nom. FDIC v. Mangano*, 2014 WL 12621581 (M.D. Fla. June 4, 2014); *FDIC v. Florescue*, 2013 WL 2477246, at *4 (M.D. Fla. June 10, 2013) ("A straightforward reading of the statute makes it appear that the business judgment rule eliminates claims for ordinary negligence against directors only."); *FDIC v. Brudnicki*, 2013 WL 2145720, at *2–3 (N.D. Fla. May 15, 2013) (finding that a defendant who was a director and officer was not entitled to the protection of section 607.0831 in his capacity as an officer because "the statute does not afford the same protections to officers as it does to directors").

In response, Potter points to two cases which stated that section 607.0831 applies to directors and officers. *See FDIC v. Stahl*, 89 F.3d 1510, 1516 n.12 (11th Cir. 1996) ("The

4

Florida legislature passed FLA. STAT. [§ § 607.0830, 607.0831] to afford corporate officers and directors greater protection from liability . . . ."); *FDIC v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1556 (S.D. Fla. 1993) ("We find that the Florida statute insulates corporate directors and officers from conduct amounting to gross negligence, and permits liability only for greater derelictions of the duty of care."). In neither case was there actually an issue about the statute's applicability to officers.

I find the reasoning in the more recent Florida district court opinions—which have declined to follow the cases cited by Potter[3]—to be more persuasive. A plain reading of section 607.0831 makes clear that it only applies to "directors." *See* FLA. STAT. § 607.0831 ("A *director* is not personally liable for monetary damages . . . ." (emphasis added)). Thus, Potter is not entitled to the protections of the statutory business judgment rule as far as the claim for ordinary negligence arises from his work as an officer. *See Copenhaver*, 2014 WL 12621202, at *10.

Potter argues that even if he is subject to personal liability for ordinary negligence, he is protected under Florida's common law business judgment rule.[4] (D.I. 246 at 6–7). Under that rule, there is a presumption that, in making a business decision, corporate directors and officers "acted on an informed basis, in good faith and in the honest belief that the action taken was in the

---

[3] *See, e.g., FDIC as Receiver for Wakulla Bank v. Dodson*, 2014 WL 11511068, at *2 n.2 (N.D. Fla. Feb. 27, 2014) (referring to the statements in *Stahl* and *Gonzalez-Gorrondona* as "dicta"); *Florescue*, 2013 WL 2477246, at *4 (same).

[4] Both parties seem to assume that the common law business judgment rule that protects officers is still applicable. (D.I. 270 at 9–10; D.I. 286 at 3–4 n.2). *See Copenhaver*, 2014 WL 12621202, at *7–11 (applying both the statutory and common law business judgment rule). *But see FDIC v. Dodson*, 2015 WL 7769520, at *3 (N.D. Fla. Sept. 25, 2015) ("It is not entirely clear whether Florida's common-law BJR applies to officers and whether it even survived the enactment of section 607.0831.").

best interests of the company." *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (citation omitted). The business judgment rule protects corporate officers and directors from liability "absent a clear showing of fraud, bad faith or abuse of discretion." *Id.* Thus, to survive a motion for summary judgment, BIH "must allege specific facts that show a genuine issue of material fact concerning fraud, bad faith or abuse of discretion." *Id.*

BIH's claim is based on specific representations Potter made to Plaintiffs concerning the C&H Conference. After Plaintiffs notified Potter that the C&H Conference was in breach of the non-compete provisions of the APA, Potter's lawyer sent Plaintiffs a letter stating that he made the following adjustments to the C&H Conference:

> 1. Added to the about page [on BIH's website], in bold: **This conference was not developed and is not intended for claims and litigation management professionals**.
>
> 2. Modified the session title in the "Cannabis & Hemp Conference" to ensure there is no mention of claims in the title, description and session information.
>
> 3. [BIH] will not knowingly allow any claims and litigation management professionals to attend the 2019 Cannabis & Hemp Conference.

(D.I. 273-2, Ex. 4, at 1).[5]

---

[5] Potter argues that this letter is inadmissible under FED. R. EVID. 408 because the letter was sent "For Settlement Purposes Only." (D.I. 246 at 8–9). Rule 408 provides that settlement offers are inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement." FED. R. EVID. 408(a). The focus of Rule 408(a) is on the claim being compromised—here, Plaintiffs' breach of contract claim. *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2019 WL 1571666, at *4 n.6 (D. Del. Apr. 11, 2019); *see also Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 699 (8th Cir. 2008) ("Rule 408 as written only applies to evidence of compromise offered to prove liability for or the amount of the claim that was compromised . . . ."). BIH, however, is using this letter to show that Potter made commitments to Plaintiffs on behalf of BIH, not to show the validity of Plaintiffs' breach of contract claim. The compromise letter is admissible for this purpose. *See* FED. R. EVID. 408(b).

6

BIH argues that Potter failed to fulfill these commitments. The record evidence, however, makes clear that Potter made the first two adjustments. (D.I. 238, Ex. F, at 1, 6). As to the third adjustment, Potter testified that he instructed Katie Kett, a former BIH employee responsible for organizing conferences, not to accept any registrations from claims or litigation management personnel. (D.I. 273-2, Ex. 1, at 93:19–23). Although there is some evidence that Potter may have known there were claims professionals registered for the conference, (*id.*, Ex. 7, at 78:17–79:18), this alone is insufficient to establish the "clear showing" of bad faith required to overcome the business judgment rule presumption. BIH has failed to demonstrate the existence of any genuine factual dispute concerning whether Potter was grossly negligent or acted in bad faith. Potter is therefore entitled to the business judgment rule presumption. Thus, I grant Potter's motion for summary judgment on this claim.

### B. Fraud (Cross-Claim III)

The parties agree that BIH's claim of fraud is governed by Connecticut law. (D.I. 246 at 9–10; D.I. 270 at 11–12). To establish liability for fraud, BIH must show by clear and convincing evidence that: "(1) a false representation was made [by Potter] as a statement of fact; (2) the statement was untrue and known to be so by [Potter]; (3) the statement was made with the intent of inducing reliance thereon; and (4) [BIH] relied on the statement to [its] detriment." *Stuart v. Freiberg*, 116 A.3d 1195, 1203 (Conn. 2015) (internal citation omitted). BIH alleges that Potter "fraudulently induced BIH to (a) continue with the C&H Conference and (b) permit its directors, officers, and/or employees to have involvement with ClaimsX." (D.I. 146 at 54).

I cannot grant summary judgment on BIH's fraud cross-claim because there are genuine factual disputes as to whether Potter made a false representation about the C&H Conference with

7

the requisite knowledge and intent. For example, Stephen Acunto—owner of Beacon—testified that Potter told him prior to the sale of BIH to Beacon that the non-compete provisions of the APA would not apply to BIH after the sale. (D.I. 273-2, Ex. 2, at 44:10–15, 82:15–19). In the Stock Purchase Agreement with Beacon, Potter again represented that the APA "contained a non-compete for Adam Potter personally, however [BIH] is not part of the agreement." (*Id.*, Ex. 5, at Schedule 3.09 (BIH-003-003909)). But BIH was subject to the non-compete. The assurance in the Stock Purchase Agreement further provided, "We remain confident there is no violation and took proactive steps to clarify the intended conference attendees." (*Id.*; *see also* Ex. 1, at 161:24–162:3). Mr. Acunto testified that he believed "the inclusion of claims and litigation in the conference . . . were excised before [he] owned the company." (*Id.*, Ex. 2, at 274:25–275:5).[6] Thus, there is evidence that would support a finding of fraud in the representations that BIH was not subject to the non-compete.

There is also a factual dispute regarding whether Potter misled BIH into believing that its directors and officers could be involved with ClaimsX without violating the APA's non-compete. Potter introduced Mr. Acunto to Sydney Posner (Potter's sister), who started ClaimsX. (*Id.*, Ex. 1, at 114:11–20). After Mr. Acunto agreed to meet with Ms. Posner to

---

[6] Potter argues that BIH cannot rely on Potter's pre-sale representations to Mr. Acunto to support its fraud claim because Mr. Acunto was a third party and not affiliated with BIH prior to its sale. (D.I. 246 at 11). Potter thus reasons that BIH would not have detrimentally relied on these pre-sale statements. (*Id.*). I disagree. After the sale, Mr. Acunto became a director and officer of BIH. (D.I. 247-3, Ex. 25). And the evidence supports a finding that he relied on Potter's pre-sale representations in making decisions on behalf of BIH. (D.I. 273-2, Ex. 2, at 102:18–103:15, 106:3–108:10); *see Tatem v. Norwalk Acquisition 1, LLC*, 2021 WL 4393805, at *13 (Conn. Super. Ct. Aug. 31, 2021) ("Although reliance may be indirect, it must be the plaintiff or her agents and not merely others who rely upon the misrepresentation." (internal citation omitted)).

8

discuss a joint venture, Potter informed him that Potter could not be involved in any discussions because of his non-compete. (D.I. 247-3, Ex. 31). Potter did not say anything about whether Mr. Acunto could be involved. (*See id.*).

Potter argues that BIH fails to present any evidence that Potter made any statements with fraudulent intent.[7] (D.I. 246 at 12). Although BIH does not point to any direct evidence of Potter's fraudulent intent, a reasonable factfinder may infer this intent based on the surrounding circumstances. *Miller v. Bourgoin*, 613 A.2d 292, 295 (Conn. 1992) ("It is well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (cleaned up)).

I therefore deny the request for summary judgment on BIH's fraud cross-claim.

### C. Negligent Misrepresentation (Cross-Claim IV)

The parties agree that BIH's claim of negligent misrepresentation is governed by Connecticut law. (D.I. 246 at 9–10; D.I. 270 at 11–12). To establish liability for negligent misrepresentation, BIH must show by a preponderance of the evidence: "(1) that [Potter] made a misrepresentation of fact (2) that [Potter] knew or should have known was false, and (3) that [BIH] reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Stuart*, 116 A.3d at 1204 (internal citation omitted). BIH alleges that Potter "negligently misrepresented BIH's legal responsibilities to BIH following his sale of BIH to Beacon Intercontinental." (D.I. 146 at 55). To support its negligent misrepresentation claim, BIH points to the same statements as in its fraud claim.

---

[7] Potter does not argue that the evidence is insufficient to show that there was a false statement.

Potter argues that BIH has failed to show that it reasonably relied on the alleged misrepresentations. (D.I. 246 at 12–13). There is sufficient evidence to support a finding that Mr. Acunto and BIH relied on Potter's assurances. (D.I. 273-2, Ex. 2, at 102:18–103:15, 106:3–108:10). Whether this reliance was reasonable is a factual dispute. *See Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995) ("We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances."). Thus, I deny the request for summary judgment on this claim.

## IV. CONCLUSION

An appropriate order will issue.

Entered this 13 day of May, 2022.

Richard G. Andrews
United States District Judge