IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE AMERICAN INSTITUTE FOR
CHARTERED PROPERTY CASUALTY
UNDERWRITERS and THE INSTITUTES,
LLC,

      Plaintiffs,

      v.

ADAM POTTER and BUSINESS
INSURANCE HOLDINGS, INC.,

      Defendants.

Civil Action No. 19-1600-RGA

## MEMORANDUM

Before me are Defendant Business Insurance Holdings, Inc. ("BIH")'s Motion for

Summary Judgment with Respect to Plaintiffs' Claims (D.I. 233); Plaintiffs' Motion for Partial

Summary Judgment (D.I. 236); and Defendant Adam Potter's Motion for Summary Judgment on

Plaintiffs' Amended and Supplemental Complaint (D.I. 241).   I have considered the parties'

briefing.   (D.I. 234, 239, 242, 269, 274, 277, 280, 290, 291, 293, 294).

## I.   BACKGROUND

On June 1, 2018, Plaintiffs The American Institute for Chartered Property Casualty

Underwriters and The Institutes, LLC (together, "Plaintiffs") entered into the Asset Purchase

Agreement ("APA") with Claims Pages, LLC ("CP"), C&E MGMT and Planning, Inc. ("C&E"),

CLM Group, Inc. ("CLM"), Potter, and Moxie HC, LLC ("Moxie").   (D.I. 240-9, Ex. 9).

Pursuant to the APA, Plaintiffs acquired substantially all of the assets of CP, C&E, and CLM.

1

(*Id.* at 1).   The APA contains non-compete and non-solicitation provisions which generally

prohibit "each Selling Party"[1] from competing with the "Sellers' Businesses."   (*Id.*, § 6.12(a)–

(b)).

In Count I of the Amended and Supplemental Complaint, Plaintiffs claim that BIH and

Potter breached the non-compete and non-solicitation provisions of the APA.   (D.I. 48).

Plaintiffs also assert claims for tortious interference (Count II) and declaratory relief (Count IV)

against Potter.   (*Id.*).   Plaintiffs, BIH, and Potter have all filed cross-motions for summary

judgment on Plaintiffs' breach of contract claim.   (D.I. 233, 236, 241).   Potter has also moved

for summary judgment on Plaintiffs' tortious interference and declaratory relief claims.   (D.I.

241).

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED.

R. CIV. P. 56(a).   Material facts are those "that could affect the outcome" of the proceeding.

*Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 248 (1986)).   "[A] dispute about a material fact is 'genuine' if the evidence

is sufficient to permit a reasonable jury to return a verdict for the nonmoving party."   *Id.*   The

burden on the moving party may be discharged by pointing out to the district court that there is

---

[1] The APA defines the term "Selling Parties" as "the Companies, Adam Potter and Moxie."
(D.I. 240-9, Ex. 9, at 46).   The "Companies" are CP, C&E, and CLM.   (*Id.* at 1).   C&E
changed its name to BIH on June 7, 2018.   (D.I. 48 at ¶ 12; D.I. 145 at ¶ 12).   Potter then sold
BIH to Beacon Intercontinental Group, Inc. on September 1, 2019.   (D.I. 247-2, Ex. 13).   In
rejecting BIH's motion to dismiss the contract claim, this Court held that the non-compete and
non-solicitation provisions of the APA still apply to BIH despite its new ownership.   (D.I. 137 at
5–6).

an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III.   DISCUSSION

### A.   Breach of Contract (Count I)

Plaintiffs allege that BIH and Potter violated the non-compete and non-solicitation provisions of the APA by promoting and hosting the Cannabis and Hemp Conference ("the C&H

Conference") in October 2019.   (D.I. 48 at ¶ 153).   The non-compete and non-solicitation

provisions of the APA provide:

> (a) During the period beginning on the Closing Date and ending the fifth (5th) anniversary of the Closing Date (the "Non-Compete Period"), each Selling Party covenants and agrees not to, and shall cause its Affiliates not to, directly or indirectly, and anywhere in the United States, conduct, manage, operate, engage in or have an ownership interest in any business or enterprise engaged in any activities that are otherwise competitive with any of the Sellers' Businesses as conducted as of the Closing Date, except that during the Non-Compete Period any Selling Party, or any other party listed on Schedule 6.12, may undertake the activities set forth on Schedule 6.12 attached hereto (collectively, the "Permitted Activities").

> (b) With the exception of Permitted Activities, during the Non-Compete Period, each Selling Party shall not, and shall cause its Affiliates not to, directly or indirectly, call-on, solicit or induce, or attempt to solicit or induce, any customer or other business relation of Buyer for the provision of products or services related to any of Sellers' Businesses or in any other manner that would otherwise interfere with the business relationship between Buyer and its customers and other business relations.

(D.I. 240-9, Ex. 9, § 6.12).

The parties dispute the proper interpretation of "Sellers' Businesses."   The APA states,

"'Sellers' Businesses' or 'Seller's Business' has the meaning set forth in the preamble hereto."

(*Id.* at 45).   The preamble provides, "CLM is engaged in the business of operating as a national

trade association for the claims and litigation management industries, as more specifically set

forth in Schedule A . . ."[2]   (*Id.* at 1).   Schedule A defines "CLM Business" as "A professional

association in the insurance industry with more than 45,000 professionals in the claims

resolutions and litigation management industries, offering different types of memberships, with

local chapters across the United States."   (*Id.* at Schedule A (Institutes0008127)).   Schedule A

---

[2] There were multiple businesses sold to Plaintiffs in the APA, but in this litigation, Plaintiffs are only concerned with CLM's business.   (*See, e.g.*, D.I. 269 at 9).

4

further provides that CLM offers specific "products and services," including an annual

conference and specialty conferences.   (*Id.*).

Schedule 6.12 of the APA outlines the "Permitted Activities" that are excluded from the

non-compete provisions, with the following limitation:

> [P]rovided, however, on or after the Closing Date, none of the Selling Parties is permitted
> to, and each shall cause its Affiliates not to (and the following are excluded from Permitted
> Activities):
>
> 1. Work/create/develop/offer/promote educational content related to claims and litigation
> management, unless in partnership with CLM and CP.
>
> 2. Produce live delivery, such as events, networking, seminars, award programs, and
> conferences targeted to claims and litigation management professionals.

(*Id.* at Schedule 6.12 (Institutes0008229)).

Plaintiffs argue that the non-compete provision of the APA prohibits Defendants from

offering any "specialty conference" relating to the insurance industry, unless it is listed as a

"Permitted Activity."   (D.I. 294 at 3).   Plaintiffs' interpretation is inconsistent with the plain

language of the APA.   The plain language instead makes clear that CLM's business is limited to

the claims and litigation management industries, not the insurance industry generally.   *See Manti*

*Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021) ("When a contract

is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms

and provisions." (internal citation omitted)).   The APA therefore prohibits Defendants from

offering a specialty conference that provides content related to claims and litigation management

or that targets claims and litigation management professionals.

There is a factual dispute regarding whether the C&H Conference offered claims and

litigation management content or targeted claims professionals.   For example, the C&H

Conference included a session titled, "Cannabis Exposure: A Peek Down the Rabbit Hole,"[3] which was described on BIH's website as follows:

> The cannabis exposure is often difficult to evaluate due to rapidly emerging risks in a highly regulated industry and lack of access to significant data. This panel of experienced cannabis professionals will attempt to shed light on the various cannabis exposures to date, and how these will involve [sic] in the future.

(D.I. 238, Ex. J). This session included slides detailing examples of claims issues that have arisen in the cannabis industry. (*Id.*, Ex. E, at 126:6–22). The fact-finder could conclude based on such evidence that the C&H Conference offered educational content relating to claims and litigation management.

Additionally, BIH sent C&H Conference advertisements to individuals on the marketing list provided by the Wilson Elser law firm, which is involved in claims and litigation management. (D.I. 272, Ex. C, at 73:20–24, 89:1–6). Potter did add a disclaimer to the C&H Conference advertisement stating, "This conference was not developed and is not intended for claims and litigation management professionals." (D.I. 238, Ex. F, at 1). There is testimony, however, that least 15 individuals and 40 companies that were CLM members attended the C&H Conference. (D.I. 278, Ex. C, at 38:22–39:4). Based on this evidence, the fact-finder could conclude that this conference was targeted to claims professionals. Thus, summary judgment must be denied.[4]

---

[3] The session was originally titled "Cannabis Claims: A Peek Down the Rabbit Hole." Potter changed the session's title and description to omit all references to "claims" after Plaintiffs notified him that it violated the APA. (D.I. 238, Ex. C, at 86:21–88:25).

[4] Potter also argues that the C&H Conference does not violate the non-compete because it is one of the "Permitted Activities" in Schedule 6.12. (D.I. 242 at 7–8). The plain language of the APA, however, easily dispels this argument. Schedule 6.12 provides that BIH is permitted to present "Events and Award Programs *as follows*" and lists six specific events, none of which include the C&H Conference. (D.I. 240-9, Ex. 9, at Schedule 6.12 (Institutes0008229)

Plaintiffs also claim that Defendants breached the non-compete provisions of the APA when Stephen and Carole Acunto (directors and officers of BIH) briefly joined the advisory board of ClaimsX (CLM's competitor).   (D.I. 48 at ¶ 130).   BIH argues that Plaintiffs have failed to show that the Acuntos' brief involvement with ClaimsX harmed Plaintiffs.   (D.I. 234 at 18–21).   Potter similarly argues that Plaintiffs have failed to show that they suffered any damages because of the C&H Conference.   (D.I. 242 at 11–12).   Plaintiffs respond that they are entitled to "benefit of the bargain" damages, nominal damages, and/or injunctive relief, so summary judgment is improper.   (D.I. 269 at 18–19, 19 n.3; D.I. 280 at 12–13).

Plaintiffs' damages expert Dr. Christine Meyer has opined that Plaintiffs' damages are equal to the difference between the price that Plaintiffs paid for the assets and the actual value of the assets received by Plaintiffs (which was lower due to the competition from Defendants). (*See* D.I. 261-1, Ex. A).   This testimony is sufficient to create a factual dispute as to whether Plaintiffs suffered damages (i.e., lost the benefit of their bargain) as a result of Defendants' alleged breaches.   *See Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015) ("[W]hen a contract is breached, expectation damages can be established as long as the plaintiff can prove the *fact* of damages with reasonable certainty."); *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000) ("It is a basic principle of contract law that [the] remedy for a breach should seek to give the nonbreaching [] party the benefit of its bargain by putting that party in the position it would have been but for the breach.").   Any claimed deficiencies in Dr. Meyer's methodology were the subject of Defendants' *Daubert* motions (D.I. 259, 260), which I

---

(emphasis added); *see also id*. (Institutes0008228) ("'Permitted Activities' shall mean the business operations of the following entities, *as specifically set forth below*[.]" (emphasis added))).

mostly denied.   Whether her testimony is persuasive presents a different issue, which Defendants can test with cross-examination and opposing testimony.

Finally, BIH argues that Plaintiffs are barred from relief because they did not seek a preliminary injunction and thus failed to mitigate their damages.   (D.I. 234 at 21–22).   Similarly, Potter argues that Plaintiffs have waived any right to seek injunctive relief due to their failure to do so at the beginning of this litigation.   (D.I. 242 at 12–14).   These arguments are frivolous.   Plaintiffs' decision not to seek a preliminary injunction in no way waives the right to relief or provides a reasonable theory of mitigation.

Because there are genuine disputes of fact, I will deny Plaintiffs', BIH's, and Potter's motions for summary judgment on Plaintiffs' breach of contract claim.

### B. Tortious Interference (Count II)

Potter also moves for summary judgment on Plaintiffs' tortious interference claim.   (*Id.* at 14–16).[5]   To establish a tortious interference claim under Delaware law, Plaintiffs must prove: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003).   Plaintiffs allege that by offering the C&H Conference and assisting in the operations of ClaimsX, Potter knowingly and intentionally interfered with CLM's existing and prospective contractual and business relationships.   (D.I. 48 at ¶¶ 167–168).

---

[5] This Court previously dismissed Count II against BIH.   (D.I. 137).

Potter argues that Plaintiffs have failed to identify any business relationship with which Potter tortiously interfered. (D.I. 242 at 15). Plaintiffs respond with evidence showing that three customers and sponsors have decreased their spending with CLM from 2018 to 2021—after BIH and ClaimsX entered the market. (D.I. 278, Ex. C, at 44:19–46:11, 47:9–49:24). This is not enough to establish the existence of a valid business relationship or expectancy.

"To meet the reasonable probability of a business opportunity prong, a plaintiff must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.'" *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) (cleaned up). Plaintiffs do not point to any evidence showing that there was a reasonable probability that Plaintiffs would continue to receive the same level of sponsorship from the three named sponsors. *See Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 611 (Del. Ch.) (finding existence of a prospective business relationship where plaintiff provided evidence showing that there was a reasonable probability of obtaining repeat business from its one-off and long-term catalog customers), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010). Thus, Plaintiffs have failed to show a valid business relationship or expectancy.

Even if Plaintiffs could show a valid business relationship, they have failed to show that Potter's alleged interference caused the customers to decrease their spending. Plaintiffs' only evidence is the testimony of Mr. Miller (Plaintiffs' 30(b)(6) witness) in which he states that he cannot think of any other reason for the decrease. (D.I. 278, Ex. C, at 45:18–46:11). This alone is insufficient to establish proximate causation.

Thus, I will grant Potter's motion for summary judgment with respect to Count II.

## C. Declaratory Relief (Count IV)

In Count IV, Plaintiffs "seek a declaration that Defendant Potter has violated the terms of the [APA] and that [Plaintiffs] are entitled to an offset of the sums paid under the [APA] in an amount equal to the damages caused by Defendant Potter's conduct." (D.I. 48 at ¶ 179). Potter argues that Plaintiffs seek a declaration regarding Potter's past conduct, which is not a proper basis for declaratory relief. (D.I. 242 at 16–17). Plaintiffs respond that the Magistrate Judge already rejected this argument in denying Potter's motion to dismiss Count IV. (D.I. 280 at 18). Specifically, the Magistrate Judge found, "[T]he amended complaint contains sufficient allegations that Potter's allegedly breaching conduct 'continues or is likely to continue in the future.'" (D.I. 126 at 22).

But the current motion is one for summary judgment, and Plaintiffs must now provide evidence supporting their claim. *See Celotex Corp.*, 477 U.S. at 322. "A plaintiff bringing an action for declaratory judgment must prove, by a preponderance of the evidence, that an actual controversy exists." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 59 F. Supp. 3d 654, 662 (D. Del. 2014), *aff'd*, 622 F. App'x 169 (3d Cir. 2015).

Plaintiffs, however, have made no effort to show that Potter's conduct "continues or is likely to continue in the future." *Benson v. Amguard Ins. Co.*, 2017 WL 2672078, at *4 (D. Del. June 21, 2017). Instead, Potter has testified that he has not been involved in the insurance industry since he resigned from BIH in 2019. (D.I. 247-2, Ex. 12, at 120:2–15; D.I. 247-3, Ex. 24). Thus, Plaintiffs have not shown that their declaratory relief claim is anything more than an improper request regarding Potter's past conduct. *In re Noble*, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018) ("Asking a court to proclaim that one's rights were violated is not a proper

10

basis for declaratory relief."). Further, Plaintiffs' declaratory claim is redundant of their breach of contract claim. *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, 2015 WL 6675537, at *5 (D. Del. Nov. 2, 2015) ("Courts have discretion to dismiss a declaratory judgment claim when . . . the controversy would be resolved by the disposition of another claim in the case.").

Thus, I will grant summary judgment on Count IV.

## IV.   CONCLUSION

An appropriate order will issue.

Entered this **13** day of May, 2022.

United States District Judge

11