IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, | ) ) ) ) | Civil Action No. 1:19-cv-01600-RGA |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| Adam Potter, PBIH, LLC and Business Insurance Holdings, Inc., | ) ) ) | |
| Defendants. | ) | |

---

**OPENING BRIEF IN SUPPORT OF ADAM POTTER'S
MOTION FOR PARTIAL RECONSIDERATION OF THE
COURT'S MAY 13, 2022 ORDER GRANTING IN PART
AND DENYING IN PART SUMMARY JUDGMENT AS TO
PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT**

---

Seth Niederman (#4588)
**FOX ROTHSCHILD LLP**
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
T: (302) 622-4238
SNiederman@foxrothschild.com

**OF COUNSEL:**
Robert S. Tintner (*Admitted Pro Hac Vice*)
Nathan M. Buchter (*Admitted Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

Dated: May 23, 2022                    *Attorneys for Defendant Adam Potter*

## **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ........1

SUMMARY OF ARGUMENT ...................................................................1

CONCISE STATEMENT OF FACTS .........................................................2

    I.    UNDISPUTED MATERIAL FACTS CONCERNING THE CLM BUSINESS AS CONDUCTED AS OF THE CLOSING DATE, AND THE C&H CONFERENCE.........2

    II.    THE COURT'S MEMORANDUM AND ORDER DENYING POTTER SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM CONCERNING THE C&H CONFERENCE....................................................................3

STANDARD OF REVIEW .......................................................................5

ARGUMENT .......................................................................................6

    I.    THE NON-COMPETE'S THREE-STEP FRAMEWORK. .......................6

    II.    STEP TWO OF THE NON-COMPETE'S ANALYTICAL FRAMEWORK REQUIRES THAT THE C&H CONFERENCE BE A PRODUCT OR SERVICE CONDUCTED BY THE CLM BUSINESS AS OF THE CLOSING DATE. ...........................7

CONCLUSION ....................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A. 2d 1020 (Del. Ch. 2006) .....4

*Brown v. May*, 2022 WL 606285 (D. Del. Feb. 23, 2022) ........................................5

*Concord Steel, Inc. v. Wilmington Steel Processing Co.*, Inc., 2008 WL 902406 (Del. Ch. April 3, 2008) ................................................................................................4

*Escanio v. United Parcel Serv.*, 538 F. App'x 195 (3d Cir. 2013)...........................5

*Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109 (E.D. Pa. 1993)...6

*Krolick v. Astrue*, 2008 WL 4790983 (D. Del. Nov. 3, 2008)...............................6, 8

*Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614 (3d Cir. 1989) ....................5

*Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199 (Del. 2021) .6, 9

Ma*x's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) ...............................................................................................................................5

*Parker v. Amazon.Com.Indc, LLC*, 2022 WL 1490789 (D. Del. May 11, 2022)......5

*Wi-LAN Inc. v. Sharp Elecs. Corp.*, 2022 WL 1224901 (D. Del. Apr. 25, 2022).....6

**Rules**

D. Del. L.R. 7.1.5 ......................................................................................................5

Fed. R. Civ. P. 54(b) ..................................................................................................5

Defendant, Adam Potter ("Potter"), through undersigned counsel, submits this memorandum of law in support of his Motion for Partial Reconsideration of the Court's May 13, 2022 Order Granting in Part and Denying in Part Summary Judgment on Plaintiffs' Amended and Supplemental Complaint (the "Motion").

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On February 11, 2022, the parties filed cross-motions for summary judgment. (D.I. 233, 236, 241).  Germane to the Motion: On May 13, 2022, the Court issued a memorandum (the "Memorandum") and entered an accompanying order (the "Order") denying Potter's motion for summary judgment on Count I (breach of contract) of the Amended and Supplemental Complaint.  (D.I. 304-05).

Trial in this case is scheduled to begin on June 27, 2022.  (D.I. 229).

## SUMMARY OF ARGUMENT

Reconsideration is warranted where a court's prior decision overlooked facts and legal issues raised below that reasonably would have altered the result. Respectfully, that occurred here.  The Court concluded in the Memorandum that a triable factual dispute exists regarding whether the C&H Conference offered claims and litigation content or targeted claims professionals.  In so holding, the Court may have overlooked a material, preceding step under the non-compete's framework and plain text for analyzing the C&H Conference: whether the C&H Conference was a product or service of the CLM Business as conducted as of the Closing Date.

1

An analysis of the CLM Business' products and services as conducted as of the Closing Date, which the non-compete's plain text and intent requires, obviates any factual dispute concerning the C&H Conference's content or target audience. The uncontroverted summary judgment record demonstrates that the CLM Business did ***not*** have a dedicated conference on cannabis and hemp as of the Closing Date. In fact, CLM's own chief executive officer admitted at the time that CLM had ***no cannabis-related product*** as of the Closing Date, a declaration that extends far beyond events or conferences.

Thus, Potter respectfully requests reconsideration of the Court's Order Denying Summary Judgment on Plaintiffs' breach of contract claim with respect to the C&H Conference as an alleged violation of the non-compete.

## CONCISE STATEMENT OF FACTS

### I. UNDISPUTED MATERIAL FACTS CONCERNING THE CLM BUSINESS AS CONDUCTED AS OF THE CLOSING DATE, AND THE C&H CONFERENCE.

The following facts from the summary judgment record are uncontroverted:

- The APA and Schedule A define the CLM Business.  (D.I. 256, ¶ 10; D.I. 276, ¶ 10).

- Schedule A does not list a dedicated conference to cannabis and hemp. (D.I. 256, ¶ 15; D.I. 276, ¶ 15).

- CLM did not have a dedicated conference to cannabis and hemp as of the Closing Date.  (D.I. 256, ¶¶ 29-30; D.I. 276, ¶¶ 29-30).

- On July 19, 2019, Plaintiffs learned that BIH was offering the C&H Conference.  (D.I. 256, ¶ 27; D.I. 276, ¶ 27).

- On July 19, 2019 Anne Blume, CLM's then chief executive officer, wrote in an internal email that "CLM did not have any Cannabis-related product on the Closing Date." (D.I. 257-2, Ex. 17, p. 2).

## II.   THE COURT'S MEMORANDUM AND ORDER DENYING POTTER SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM CONCERNING THE C&H CONFERENCE.

The Court's analysis of the non-compete began with its text, which states:

> During the period beginning on the Closing Date and ending the fifth (5th) anniversary of the Closing Date (the "Non-Compete Period"), ***each Selling Party covenants and agrees not to, and shall cause its Affiliates not to . . . anywhere in the United States . . . engage in or have an ownership interest in any business or enterprise engaged in any activities that are otherwise competitive with any of the Sellers' Businesses as conducted as of the Closing Date***, except that during the Non-Compete Period any Selling Party, or any other party listed on Schedule 6.12, may undertake [the Permitted Activities].

(D.I. 304, at 4 (citing D.I. 240-9, § 6.12(a) (Institutes0008016)) (emphasis added)).

Noting the parties disputed the proper interpretation of "Sellers' Businesses" – specifically, the CLM Business in this case[1] – the Court found that Schedule A defines the CLM Business as a national trade association for the claims and litigation management industries, and "further provides that CLM offers specific 'products and services,' including an annual conference and specialty conferences." *Id.* at 4-5. The Court also found that Schedule 6.12's "Permitted Activities" were expressly excluded from the non-compete, but with limitations on the ability to:

---

[1] *See id.* at 4, n. 1 ("[I]in this litigation, Plaintiffs are only concerned with CLM's business.").

3

> 1. Work/create/develop/offer/promote educational content related to claims and litigation management, unless in partnership with CLM and CP[; and]
>
> 2. Produce live delivery, such as events, . . . and conferences targeted to claims and litigation management professionals.

*Id.* at 4 (citing D.I. 240- 9, Schedule 6.12 (Institutes0008229)).

Based on those findings, the Court rejected Plaintiffs' interpretation of the non-compete – arguing it prohibited ***any*** specialty conferences relating to the insurance industry, unless a Permitted Activity – as inconsistent with the APA's plain language. *Id.* at 5. Instead, the Court held the non-compete was narrower[2]:

> The plain language instead makes clear that CLM's business is limited to the claims and litigation management industries, not the insurance industry generally. The APA therefore prohibits Defendants from offering a specialty conference that provides content related to claims and litigation management or that targets claims and litigation management professionals.

*Id.* (citations omitted). The Court then concluded that "[t]here is a factual dispute regarding whether the C&H Conference offered claims and litigation management content or targeted claims professionals." *Id.* at 5-6. The Court also rejected Potter's argument that the C&H Conference was part of Schedule 6.12's Permitted

---

[2] "Delaware courts construe restrictive covenants narrowly as written." *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, Inc., 2008 WL 902406, at * 6 (Del. Ch. April 3, 2008) (citing *Allied Capital Corp. v. GC-Sun Holdings, LP*, 910 A.2d 1020, 1024 (Del. Ch. 2006)).

Activities. *Id.* at 6, n. 4 ("Schedule 6.12 . . . list six specific events, none of which include the C&H Conference.").

## STANDARD OF REVIEW

An order denying summary judgment is interlocutory. *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 619 (3d Cir. 1989). An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Escanio v. United Parcel Serv.*, 538 F. App'x 195, 199 (3d Cir. 2013); *Brown v. May*, 2022 WL 606285, at \*2 (D. Del. Feb. 23, 2022) ("[M]otions for reconsideration of interlocutory orders are governed by Federal Rule of Civil Procedure 54(b).").

Reconsideration serves to "correct manifest errors of law or fact or to present newly discovered evidence." Ma*x's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation and internal quotation marks omitted); D. Del. L.R. 7.1.5. Relief on reconsideration is typically available where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Parker v. Amazon.Com.Indc, LLC*, 2022 WL 1490789, at \*1 (D. Del. May 11, 2022) (citation and internal quotation marks omitted). Indeed, "a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result." *Krolick v. Astrue*, 2008 WL 4790983, at \*1 (D. Del.

5

Nov. 3, 2008); *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (recognizing that "a motion for reconsideration addresses factual and legal matters that the Court may have overlooked" (citation and internal quotation marks omitted)); *see Wi-LAN Inc. v. Sharp Elecs. Corp.*, 2022 WL 1224901, at *2 (D. Del. Apr. 25, 2022) (granting in part a motion for reconsideration based because of an "error of apprehension" based on an "overlooked . . . fact").

## ARGUMENT

### I.   THE NON-COMPETE'S THREE-STEP FRAMEWORK.

The non-compete's plain text sets forth a three-step framework for analyzing alleged competition.

*First*, the Court must determine if the alleged activities were undertaken by a "Selling Party" or an "Affiliate," if caused by a Selling Party, and occurred within five years from the Closing Date (the "Non-Compete Period"). (D.I. 240-9, § 6.12(a) (Institutes0008016)). If yes, then one must proceed to Step Two. If not, the inquiry is over; the alleged activities cannot be prohibited conduct. *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021) ("When a contract is clear and unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions." (citation and internal quotation marks omitted)).

*Second*, the Court must determine if the alleged "activities . . . are otherwise competitive with any of the Sellers' Businesses as conducted as of the Closing Date."

(D.I. 240-9,§ 6.12(a) (Institutes0008016)).  If yes, then one must proceed to Step Three.  If not, the inquiry is over; the alleged activities are not prohibited conduct.

***Third***, the Court must determine if the alleged activities are excepted Permitted Activities.  Only this third step requires an analysis into the content and target audience of the alleged activities to determine if they comply with Schedule 6.12's express limitation on "educational content related to claims and litigation management" or "live delivery, such as events . . . and conferences targeted to claims and litigation management professionals."  *Id.* at Schedule 6.12 (Institutes0008229).

## II.   STEP TWO OF THE NON-COMPETE'S ANALYTICAL FRAMEWORK REQUIRES THAT THE C&H CONFERENCE BE A PRODUCT OR SERVICE CONDUCTED BY THE CLM BUSINESS AS OF THE CLOSING DATE.

The Court overlooked the non-compete's plain language by concluding that "[t]he APA . . . prohibits Defendants from offering a specialty conference that provides content related to claims and litigation management or that targets claims and litigation management professionals."  (D.I. 304, at 4-5).  Specifically, the Court appears to have erroneously conflated Steps Two and Three under the non-compete's analytical framework, concluding that the alleged competitive nature of the C&H Conference under the non-compete turns on its content and target audience. The non-compete's plain text makes clear, however, that ***only*** Schedule 6.12's Permitted Activities – Step Three – requires an analysis into content and target audience because of Schedule 6.12's express limitation on those subjects.  (D.I. 240-

9, Schedule 6.12 (Institutes0008229)).  Step Two, which had to be satisfied before

moving onto Step Three, does ***not*** impose similar conditions.[3]

Stated differently: an inquiry into content and target audience under the non-

compete only occurs if Plaintiffs ***first*** satisfy Step Two by demonstrating that the

C&H Conference was a product or service performed by the CLM Business as

conducted as of the Closing Date.  This analysis is not in the Memorandum and

therefore, may have been overlooked.  *Krolick*, 2008 WL 4790983, at *1; *Glendon*

*Energy*, 836 F. Supp. at 1122.

Step Two of the non-compete asks whether the alleged "activities . . . are

otherwise competitive with any of the Sellers' Businesses as conducted as of the

Closing Date."  (D.I. 240-9, § 6.12(a) (Institutes0008016)).  Here, as part of Step

Two, the Court identified the Sellers' Businesses at issue – the CLM Business – and

then defined it  as "offer[ing] specific 'products and services,' including an annual

conference and specialty conferences," to the claims and litigation management

industries.  (D.I. 304, at 4-5).  But Step Two also required an analysis into whether

Plaintiffs have proffered facts demonstrating the C&H Conference was one of those

products and services.  The Court's Memorandum does not perform that analysis,

instead advancing onto Step Three's content and target audience limitation under

---

[3] The Court's conclusion that the C&H Conference was not a Permitted Activity also
undercuts the need for analysis into content and target audience. (D.I. 304 at 6, n. 4).

Schedule 6.12's Permitted Activities.  (D.I. 304, at 5).  Had the Court completed Step Two, it would have found that the uncontroverted summary judgment record demonstrates the C&H Conference was ***not*** a product or service conducted by the CLM Business as of the Closing Date, and therefore, did not violate the non-compete.[4]  *Manti Holdings*, 261 A.3d at 1208.

Schedule A, which defines the CLM Business, contains no reference to a dedicated cannabis and hemp conference.  (D.I. 256, ¶ 15; D.I. 276, ¶ 15; D.I. 304, at 5).  Plaintiffs also admit that CLM did not have a dedicated conference to cannabis and hemp as of the Closing Date.  (D.I. 256, ¶¶ 29-30; D.I. 276, ¶¶ 29-30).  Moreover, Ms. Blume stated in a July 19, 2019 email that "CLM did not have any Cannabis-related product on the Closing Date."  (D.I. 257-2, Ex. 17, p. 2).  That declaration is particularly compelling here because it was unsolicited and made internally at Plaintiffs by CLM's then-chief executive officer, and extends more broadly than just events, to include ***any cannabis-related product***.  (*See* D.I. 304, at 4-5 ("Schedule A further provides that CLM offers specific 'products and services,' including an annual conference and specialty conferences.")).

The indisputable facts recited above conclusively show the C&H Conference was not a product or service conducted by the CLM Business as of the Closing Date and, as a result, does not violate the non-compete.  Thus, the Court's conclusion in

---

[4] Potter argued this on summary judgment.  (D.I. 254; D.I. 277; D.I. 291).

the Memorandum – "[t]he APA therefore prohibits Defendants from offering a specialty conference that provides content related to claims and litigation management or that targets claims and litigation management professionals" – materially altered the outcome of summary judgment for Potter and should be reconsidered because it is the basis on which the Court found a factual dispute regarding the C&H Conference (where one does not exist), and denied Potter's summary judgment motion.  Per the non-compete's plain text, the Court need not entertain a Permitted Activities analysis into content and target audience if the C&H Conference was not one of the CLM Businesses' products or services conducted as of the Closing Date.

Thus, Potter requests respectfully that the Court reconsider that portion of the Order Denying Summary Judgment on Count I (breach of contract) of the Amended and Supplemental Complaint.

## **CONCLUSION**

For all of the above reasons, Potter respectfully requests that this Court enter his proposed form of Order (1) vacating the portion of the May 13, 2022 Order denying Potter summary judgment on Count I (breach of contract) of the Amended and Supplemental Complaint, (D.I. 305), and (2) entering summary judgment in Potter's favor, and against Plaintiffs, on Count I with respect to Plaintiffs' claim that the C&H Conference violated the non-compete.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

*/s/ Seth Niederman*
Seth Niederman (#4588)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
(302) 622-4238
SNiederman@foxrothschild.com

**OF COUNSEL:**
Robert S. Tintner (*Admitted Pro Hac Vice*)
Nathan M. Buchter (*Admitted Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market St., 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

Dated: May 23, 2022                *Attorneys for Defendant Adam Potter*

11