## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| v. | ) ) |
| Adam Potter and Business Insurance Holdings, Inc., | ) ) |
| | ) |
| Defendants. | ) ) |

Civ. A. No. 1:19-cv-01600-RGA-JLH

## [PROPOSED] FINAL PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

**Plaintiff's Counsel**: Barry M. Klayman, Esq., bklayman@cozen.com, Cozen O'Connor, 1201 North Market Street, Suite 1001, Wilmington, DE 19801, (302) 295-2035; Robert W. Hayes (Admitted *Pro Hac Vice*), rhayes@cozen.com, and Matthew J. Siegel (Admitted *Pro Hac Vice*), msiegel@cozen.com, 1650 Market Street, Suite 2800, Philadelphia, PA 19103

**Defendant Adam Potter's Counsel:** Seth Niederman (#4588), Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, DE 19899-2323, SNiederman@foxrothschild.com, (302) 622-4238; Robert S. Tintner (Admitted *Pro Hac Vice*) and Nathan M. Buchter (Admitted *Pro Hac Vice*), 2000 Market Street, 20th Floor, Philadelphia, PA, 19103-3222, RTintner@foxrothschild.com, NBuchter@foxrothschild.com

**Defendant Business Insurance Holdings, Inc.'s Counsel:** Matthew P. Denn (#2985), DLA Piper LLP (US) 1201 N. Market St., Suite 2100, Wilmington, Delaware 19801, (302) 468-5700, matthew.denn@us.dlapiper.com; Christopher G. Oprison (Admitted *Pro Hac Vice*), 200 South Biscayne Blvd., Suite 2500 Miami, FL 33131, chris.oprison@dlapiper.com

## I.  NATURE OF THE ACTION

### A.  Plaintiffs' Amended and Supplemental Complaint

The American Institute for Chartered Property Casualty Underwriters ("AICPCU") and The Institutes, LLC (collectively, "The Institutes" or "Plaintiffs"), assert claims for breach of contract based on alleged violations of restrictive covenants in an Asset Purchase Agreement ("APA").  The Institutes seek injunctive relief and monetary damages against Adam Potter ("Potter") and Business Insurance Holdings, Inc. ("BIH") (collectively "Defendants").  They also seek attorneys' fees under the APA's indemnity provisions.

### B.  Defendant BIH's Answer to Plaintiffs' Complaint and Crossclaims Against Defendant Potter

All of the Plaintiffs' claims against BIH have been dismissed with the exception of the Plaintiffs' claim for breach of the APA.  BIH has denied the allegations in the Amended and Supplemental Complaint.  The Court has denied both the plaintiffs' and BIH's motions for summary judgment on the breach of contract claim.

BIH filed five cross-claims against Mr. Potter.  Cross-Claim No. 1 (indemnification) was dismissed by agreement of the parties without prejudice so that it could be litigated in an action pending between Mr. Potter and Beacon Intercontinental/BIH in U.S. District Court for the Southern District of New York. (D.I. 221)  Cross-Claim No. 5 (Tortious Interference with Contractual Relationship)

2

was dismissed by the Court.  (D.I. 223)  The Court granted summary judgment to Mr. Potter with respect to BIH's cross-claim for Negligent Management and Operation, and denied Mr. Potter's motion for summary judgment with respect to BIH's cross-claims for fraud and negligent misrepresentation.  (D.I. 302)

### C.  Defendant Potter's Answers to Plaintiffs' Complaint and BIH's Crossclaims[1]

On May 13, 2022, this Court entered summary judgment in Potter's favor and against Plaintiffs and BIH on all remaining claims and crossclaims except for:

**Plaintiffs:** Breach of Contract (Count I – Delaware law).

**BIH:** Fraud and Negligent Misrepresentation (Crossclaims III and IV – Connecticut law).

Potter has and continues to deny all wrongdoing and liability alleged by Plaintiffs in support of their claims, and BIH in support of its crossclaims (which BIH has expressly made contingent on a finding that BIH is liable to Plaintiffs). Potter further denies that he has caused either Plaintiff or BIH to suffer any damage(s), and further maintains that Plaintiffs are not entitled to any non-monetary relief being sought.

---

[1] Potter reserves the right to amend or supplement any portion of this Pretrial Order for which he is to provide a response (under Local Rule 16.3, any applicable Court order, or otherwise) up to time of trial.

LEGAL\58072003\1

## II.        JURISDICTION

The Court's subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states and an amount in controversy which allegedly exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.  This Court has specific personal jurisdiction over the parties because the contract at issue contains a choice of law and jurisdiction provision, wherein Plaintiffs and Potter, and BIH[2], expressly consented that any disputes thereunder must be brought in the state and federal courts located in New Castle County, Delaware.  For this reason, venue is also proper in this Court.

## III.       STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

The parties' statement of facts that are admitted and require no proof is attached hereto as **Exhibit A**.

## IV.       STATEMENT OF THE ISSUES OF FACT WHICH REMAIN TO BE LITIGATED

Plaintiffs' Statement is attached hereto as **Exhibit B**;

BIH's Statement is attached hereto as **Exhibit C**;

Mr. Potter's Statement is attached hereto as **Exhibit D**.

---

[2] *See* D.I. 137 (Mem. and Order Overruling BIH's Objections) at 2, 5-6.

## V.      STATEMENT OF ISSUES OF LAW WHICH ANY PARTY CONTENDS REMAIN TO BE LITIGATED

### A.      Plaintiffs' Statement

The Institutes contend that there are five (5) outstanding mixed issues of law and fact:

(1) whether the Non-Compete provision in the APA is reasonable and enforceable;

(2) the interpretation of the APA, including what is meant by claims and litigation management and targets claims and litigation management professionals.

(3) whether the facts of the case establish that Defendants have breached, and will continue to breach, the Non-Compete and Non-Solicitation provisions in the APA;

(4) whether The Institutes are entitled to injunctive relief prohibiting the Defendants from engaging in activities prohibited by the Non-Compete and non-solicitation provisions for a period of five (5) years; and

(5)  whether the APA entitles The Institutes to an award of their attorneys' fees and costs.

### 1.      The Non-Compete is Reasonable and Enforceable.

"To be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the

covenant, and (4) survive a balance of the equities." *Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, *2 (Del. Ch. April 19, 2006).

The APA is valid and supported by adequate consideration – *i.e.*, the nearly $20 million purchase price. *See Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *9 (Del. Ch. Nov. 8, 1992). Restrictive covenants are typical in business acquisitions for the "obvious" purpose of protecting "the purchaser in his enjoyment of the business and its built-up good will." *Tull v. Turek*, 147 A.2d 658, 662 (Del. 1958). Selling parties are generally uniquely situated to compete against an acquired entity because of their prior control of the business.

The five year non-compete clause at issue in this case is reasonable. Courts have found similar restrictions appropriate. *See id.* at 662 (finding ten year restriction valid in sale of business); *C. Edgar Wood, Inc. v. Clark*, 1986 WL 1160 (Del. Ch. Jan. 21, 1986) (three year restriction permissible). The period of noncompetition in the sale of a business is far broader than with a restrictive covenant applicable to former employees because former owners have a stronger association with the company than any one employee. Further, the parties recognized that the CLM Business operates nationwide, so the geographic restriction to the United States is reasonable. There also is no legitimate argument that the scope of the competitive activities are overbroad where the APA defines the CLM's business and Potter drafted that definition.

## 2.    The Scope of the Restrictive Covenants

Contracts must be enforced so as to effectuate the agreement reached by the parties at the time of execution.  *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.,* 206 A.3d 836, 846 (Del. 2019).  That agreement is established by interpreting contract terms as "an objective, reasonable third party" would understand them. *Osborn ex. rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010) (quoting *NBC Universal v. Paxson Commc'ns*, 2205 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)). Where there is no uncertainty as to the contract terms, the parties' objective intent must be determined based on the clear and unambiguous meaning of those terms. *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A. 3d 776, 783 (Del. 2012).  However, a court must give effect to the entire agreement and should not adopt an interpretation based on one contractual term that is inconsistent with the entire scope of the agreement.  *Chicago Bridge & Iron Co. v. Westinghouse Electric Co. LLC*, 166 A.2d 912, 927-928 (Del. 2017).

To the extent that the Court's interpretation of the APA in denying Motions for Summary Judgment is intended to be final, as set forth hereinafter, all of the specialty conferences Defendants have planned, organized or marketed involved, at least, claims and litigation management content.  But, the precise meaning of that term, as well as "targeting claims and litigation professionals", will be important in

fashioning prospective injunctive relief so as to avoid attempts to circumvent the prohibitions imposed.

Those terms should be interpreted broadly. "Claims and litigation management" means content on the prevention, handling, defense of claims or litigation or subjects, such as workmen's compensation, that inherently involve those topics. Claims and litigation management professionals means anyone whose responsibilities involve any of those areas, including those with responsibility for risk management. For instance, "management" is a broad term that extends beyond handling a claim or defending litigation. *Management*, *Merriam-Webster On-Line Dictionary*, [https://www.merriam-webster.com/dictionary/management](https://www.merriam-webster.com/dictionary/management) ("the conducting or supervising of something") Moreover, the fundamental purpose of the noncompetition provisions was to prevent the Selling Parties from competing against the acquired entities for five years after the acquisition. So, while Schedule A conclusively defines the scope of the CLM Group's businesses as of the closing of the acquisition, that definition should be interpreted in accordance with the scope of the CLM Group's business as of the closing. The CLM included individuals beyond simply claims managers, such as those involved in risk management and actively defending claims.

### 3. The Undisputed Facts Of Record Establish Defendants' Past, Ongoing, and Future Breaches Of The APA.

The APA unambiguously prohibits Defendants from engaging in the very conduct they admit to have undertaken and that BIH intends to undertake in the future.

Defendants breached the Non-Compete when they promoted and hosted the Cannabis and Hemp Conference;  assisted in the formation of ClaimsX as an entity competitive with CLM; and when BIH planned, promoted, and held additional conferences and webinars in 2020 and 2021, as enumerated in Section IV. The Institutes further contend that that any similar future events planned by BIH will constitute ongoing breaches of the Non-Compete.

The Institutes also intend to prove that Defendants violated the Non-Solicitation provision of the APA by calling upon a significant sponsor of the CLM Business to sponsor Defendants' conferences.

### 4. The Institutes Are Entitled To Injunctive Relief Prohibiting Defendants From Engaging In Competitive Activities Prohibited By The Non-Compete For Five Years.

In the APA, Defendants conceded that The Institutes' remedies at law for any breach would be inadequate, so that they are entitled to injunctive relief without proving actual damages, conceding that monetary damages alone would be inadequate to compensate The Institutes for the harm they inflicted.  Even without this concession, courts have recognized that the "harms resulting from competition

by someone bound by a non-competition agreement are frequently found to be irreparable." *Tristate Courier and Carriage, Inc.*, 2004 WL 835886, at * 13 (Del. Ch. April 15, 2004).  Further, in *Equitable Life Insurance Co. v. Young*, 1985 WL 11551 (Del. Ch. May 6, 1985), the Chancery Court granted injunctive relief where an insurance agent, upon resignation from his prior employer and beginning his own business, took away dozens of his former employer's customers. *Id*.  The court stated that "it would be difficult, if not impossible, to prove how long those customers would have remained with Equitable but for Young's intervention." *Id*. at *4.

In this instance, while plaintiff has provided a damages estimate with reasonable specificity, it is impossible to determine the full extent of the damage to the CLM's goodwill resulting from defendants' competition.  Additionally, BIH has reaped long-term and building business benefits from each of its violations. In particular, its specialty conferences, webinars, and strategic partnership with ClaimsX operated to expand its reach to more claims and litigation management professionals, who are then incorporated into BIH's mailing list.  Those individuals – whose names were acquired only though BIH's various competitive breaches – are then targeted for even more of BIH's expanding offerings.  As a result, a single BIH violation cannot be viewed in isolation, as each one yields ill-gotten gains that BIH then builds upon with each and every subsequent event.  Moreover, ClaimsX will continue as a competitor regardless of any injunctive relief the Court may enter.

Moreover, The Institutes are entitled to enforce the restrictive covenants for five years from the entry of the injunction.  Section 6.12(f) expressly provides that the term of the restrictive covenant shall be extended by the period of the duration of any breach of Section 6.12(a).  Defendants have ignored the covenant-not-compete virtually since the closing.

The Institutes should thus be afforded the full five-year term specified in the APA.  Such a decision is both consistent with Delaware law and necessary as a matter of equity.  Indeed, allowing BIH to compete at the end of the originally-contemplated five years would allow it to seize on the business momentum it achieved through its repeated violations.  Imposing a full-five year non-compete, in contrast, would at the very least stall BIH from capitalizing on its misconduct.

### 5.     The Institutes Are Entitled To Their Attorneys' Fees And Costs

The APA imposed broad indemnity obligations upon the "Selling Parties." Section 9.2 requires them to "indemnify, defend and hold The Institutes harmless "from, against, for and in respect of any pay any and all Losses suffered, sustained, incurred or required to be paid by any such party arising out of or resulting from "any breach of any representation, warranty, covenant or agreement contained in this Agreement' and the "enforcement by any Buyer Indemnified Party of any of its rights under this Section 9.1 or any other indemnification covenant contained in this Agreement."  APA, §§ 9.2(a) and (f).

11

"Losses" are defined to mean, in relevant part,

> [A]ll Liabilities, losses, damages . . . awards, judgments, assessments, fines, penalties, charges, fees, costs, expenses and other payments however suffered or characterized, all interest thereon, all reasonable costs and expenses of investigating any claim, lawsuit or arbitration and any appeal therefrom, **all reasonable attorneys', accountants, investment bankers' and expert witness' fees incurred in connection therewith** . . ."

APA, 9.7 (emphasis added).

Here, the attorneys' fees, expert fees and costs The Institutes incurred to enforce Section 6.12 arose out of Defendants' breach of that provision and to enforce Defendants' indemnity obligation.  Consistent with standard practice, The Institutes' right to attorneys' fees, experts' fees and costs should be established on the merits and the actual award of fees and costs should be made pursuant to a post-judgment fee petition.  *Cove on Herring Creek Homeowners' Ass'n v. Riggs*, 2005 Del. Ch. LEXIS 71, *2 (Del. Ch. Ct. May 19, 2005); *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672 (D. Del. 2013).

## B.    BIH'S Statement

The Court, in its May 13, 2022 Memorandum Opinion (D.I. 304) addressed the primary legal issue in this litigation, the meaning of the non-compete provisions of the APA.  The Court stated "The APA therefore prohibits defendants from offering a specialty conference that provides content related to claims and litigation

management or that targets claims and litigation management professionals." Id.[3]

Given the Court's ruling on this issue[4], there are six issues of law that remain to be litigated:

### 1. Permissibility of the Plaintiffs Alleging Violations That Were Not Alleged in the Amended and Supplemental Complaint (Motion In Limine No. 1)

The Amended and Supplemental Complaint, filed on March 27, 2020, listed only two events as violating the APA: the cannabis and hemp conference, and an intellectual property conference that never occurred. The plaintiffs have never sought to amend the Complaint to allege any other violations. More recently, the plaintiff's Rule 30(b)(6) witness testified unequivocally on August 26, 2021 that the only BIH actions that the plaintiffs alleged to violate the APA were those listed in the Amended and Supplemental Complaint. The question was believed to be of such significance that the witness was encouraged by BIH counsel to read the entire Complaint before answering, and even after she answered, to again acknowledge that she had an opportunity to review the entire Complaint before doing so. Then after taking a deposition break, the witness unilaterally asked to supplement her

---

[3] Although the Court noted in its Memorandum Opinion that an earlier ruling in this case had held that BIH was bound by the APA even after Mr. Potter sold it, BIH respectfully disagrees with this interpretation of the APA and reserves its appeal rights.

[4] BIH also reserves any appeal rights with respect to its interpretation of the non-compete provisions of the APA.

answer to ambiguously add to the list of alleged APA violations "the long-term care, there was a webinar and then a virtual conference.  There's a cyber webinar and I think that's it as far as events currently known."  The plaintiffs now seek to supplement their claims yet again to add even more events which occurred prior to the 30(b)(6) witness's deposition.  The plaintiffs should not be permitted to informally pile on claims in a rolling process in violation of the scheduling order and federal rules, when the events they seek to now add were publicly advertised and occurred months or years ago.

**Plaintiffs' Response: Despite Defendant's mischaracterization, Plaintiffs adequately identified conferences other than the Cannabis and Hemp Conference and Intellectual Property conference in the Amended and Supplemental Complaint**

The federal courts require only notice pleading.  (*See*, Federal Rule of Civ. P., 8(a)(2) (providing for a "short and plain statement of the claim showing that the pleader is entitled to relief").  Claimants need not and should not plead evidence.

The Amended and Supplemental Complaint plainly alleges that, since selling the CLM Group to The Institutes, defendant Potter has leveraged "the experience he gained while he owned Sellers' Businesses, to build Business Insurance as an alternative and competitor to CLM in direct contravention of the Non-Compete."  (D.E. 48-1, ¶45).  Plaintiffs further allege that Beacon Intercontinental aggressively expanded the scope of BIH's competitive conferences after acquiring this entity.  (*Id*., ¶105, BIH announced a "growing

14

annual conference schedule" including "cannabis, wildfires, the impact of AI, and cyber security").

These allegations standing alone gave notice that The Institutes claimed that defendants were offering and planning conferences that violate the noncompetition provisions beyond the cannabis and intellectual property conferences. The evidentiary basis for those allegations need not be specified and is left to discovery. Beyond that, The Institutes alleged that Business Insurance deemed itself a competitor of CLM and intended to add "conferences and other events to its agenda." *Id.*, ¶116. BIH claimed that an employee had agreed to a noncompetition provision and threatened to enforce it if he joined CLM. It also sought prospective relief even though the cannabis conference had already occurred and the intellectual property conference had been cancelled. *Id.*, ¶¶159-161.

While The Institutes focused on two conferences, the cannabis conference was the only conference that had been held by the time the Amended and Supplemental Complaint was filed, so The Institutes had more information about it.

Moreover, in discovery, The Institutes claimed that conferences beyond the cannabis and intellectual property conferences violated the noncompetition provisions. In response to Interrogatory 9 of BIH's First Set of Interrogatories,

which requested an identification of all violations of the Asset Purchase

Agreement, The Institutes responded, in part, that:

> The Institutes have learned about the sale of BI to
> Beacon Intercontinental, that BI intends to hold
> conferences similar to the BI Conferences in the future,
> as well as other events, and about the formation of the
> Claims Xchange, all of which is set forth in the Amended
> and Supplemental Complaint. Specifically with respect to
> BIH, The Institutes aver that the BI Conferences were a
> direct violation of the Purchase Agreement and that
> planned future conferences or events within the
> timeframe of the restrictive covenants will constitute
> further violations.

BIH's additional conferences were the subject of significant discovery, including

document production and depositions of BIH executives and employees.

BIH references deposition testimony from Anne Blume, as The Institutes'

corporate designee, that BIH's only violations of the noncompetition agreement

were identified in the "Complaint".  But, that testimony just begs the question of

what conferences are referenced in the Complaint.  After a lunch break, noting that

she found the question ambiguous. Ms. Blume clarified her testimony, stating that

"I just want to be clear that the BIH conferences that are specifically referenced in

the complaint are those that were known at the time of the complaint.  But, there

have, since then, been other webinars and virtual conferences that The Institutes

also contends violate the purchase agreement."  Seeking to avoid any ambiguity is

not a concession that the Complaint does not address conferences beyond the

16

cannabis and IP conference.  Further, the question at issue was posed immediately before the lunch, Ms. Blume reflected upon it over the break and did not speak to anyone about her testimony during the break.

> **2.    Permissibility of the Plaintiffs Alleging Violation by BIH of a Contractual Provision That It Accused Only Mr. Potter of Violating in the Amended and Supplemental Complaint (Motion In Limine No. 2)**

The Plaintiffs, for the first time in their Answering Brief opposing BIH's summary judgment motion, alleged that they were making claims against BIH under Section 6.12(b) of the APA in addition to Section 6.12(a).  In the Complaint, the Plaintiffs had carefully demarcated their claims based on alleged breach of the "Non-Compete Provision" (Section 6.12(a)) (D.I. 48 at ¶¶ 42 – 92, 97 - 143) and alleged breach of the "Non-Solicitation Provision" (Section 6.12(b)) (D.I. 48 at ¶¶ 93 – 96).  The claims based on alleged breach of Section 6.12(b) refer very specifically to "Defendant Potter."  The Plaintiffs now allege that BIH also violated the Non-Solicitation provision, Section 6.12(b).  The Plaintiffs should not be permitted to pursue claims against BIH based on Section 6.12(b) of the APA, given the affirmative indication in the Complaint that Section 6.12(b) was invoked only with respect to Mr. Potter.   The Plaintiffs cannot amend their Complaint through an argument opposing summary judgment.  *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d. 573, 587 (W.D. Pa. 2011), nor can they try to constructively amend their

Complaint at the summary judgment stage.  *In re Vertis Holdings, Inc.*, Civ. No. 15-867-RGA, 2016 WL 7031282 at * 7 (D. Del., Nov. 30, 2016).

**Plaintiffs' Response: Defendant overlooks key portions of the Amended and Supplemental Complaint in an attempt to escape the Non-Solicitation Provision of the APA**

Defendant asserts that Plaintiffs did not make any claims against BIH under Section 6.12(b) of the APA**,** and that any claims based on the alleged breach of Section 6.12(b) refer exclusively to Defendant Potter.  However, The Institutes expressly alleged that Potter was acting on BIH's behalf -- "Defendant Potter contacted the law firm and solicited and/or inducted it to serve as the founding partner of the conference."  (D.E., 48, ¶ 94).  The referenced conference was the cannabis conference BIH held.  As the Court has already held, the sale to Beacon Intercontinental does not relieve BIH of responsibility for actions taken before the acquisition.  Moreover, The Institutes' repeatedly referred to "defendants'" violations of the noncompetition agreement.

> **3.    Whether a Breach of Contract Is Established if No Damages Can be Demonstrated With Respect to Each Claimed APA Violation.**

In order to state a claim for breach of contract in Delaware, Plaintiffs must demonstrate (1) a contractual obligation, (2) a breach of that obligation by BIH, and (3) a resulting damage to the plaintiff.  *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d. 320, 333 (D. Del. 2017).  In order for Plaintiffs' breach of contract claim

relating to a particular claimed breach to survive, damages must be attributable to the specific allegations relating to that alleged breach, and not simply alleged generally. *Johnson v. Government Employees Ins. Co*., 2014 WL 2708300 at * 1 (D. Del., June 16, 2014) (Court grants summary judgment with respect to claimed breach of contract claim because plaintiff has not shown that alleged damages were proximately caused by contract breach); *Duncan v. STTCPL, LLC*, 2020 WL 829374 at * 10 (Del. Super., Feb. 9, 2020) (summary judgment granted on breach of contract claim because damage alleged could not be shown with reasonable certainty to be the result of specific contract breach asserted).   In order to maintain a breach of contract claim for any alleged APA violation, the plaintiffs will need to establish damages specifically tied to the alleged violation.

### 4.  Propriety of Awarding Injunctive Relief.

The plaintiffs argue that boilerplate remedy language in the APA regarding injunctive relief overrides Delaware case law regarding the elements of proving breach of contract and the requirements for awarding a permanent injunction.  BIH disputes this interpretation as being contrary to the plain language of the APA, and Delaware case law regarding interpretation of non-competition agreements. *Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc*., 2008 WL 902406 at * 6 (Del. Ch., April 3, 2008); *Revolution Retail Systems, LLC v. Sentinel Technologies, Inc*., 2015 WL 6611601 at * 10 (Del. Ch., Oct. 30, 2015); *see* also *Sensus USA, Inc.*

*v. Franklin*, 2016 WL 1466488 at * 7(D. Del., April 14, 2016).  The Plaintiffs also attempt to argue that they are entitled to both monetary damages and injunctive relief.   However, injunctive relief cannot be sought as a matter of law when measurable monetary damages can be awarded.  *Tate v. Schember*, No 19-3026, 809 Fed.Appx. 64 at * 2 (3d. Cir., April 9, 2020).  The Plaintiffs have offered a "benefit of the bargain" calculation by an expert witness, and although BIH believes the expert's opinion should be excluded on *Daubert* grounds, the portion of the plaintiff expert's opinion that the Court has not yet rejected incorporates all monetary damages resulting from the alleged breach of the APA.  The Plaintiffs cannot simultaneously offer a damages theory that is based on the "benefit of the bargain" damages, and argue the irreparable harm necessary for an injunction.

### 5.     Propriety of Awarding Attorney's Fees If No Actual Damages Have Occurred.

The plaintiffs argue that they are entitled to attorney's fees even if they ultimately prove only a technical violation of the APA but establish no damages arising therefrom.  BIH disputes this interpretation as being contrary to the plain language of the APA, and Delaware case law described above regarding narrow interpretation of non-competition agreements.

### 6.     Admissibility of Expert's Opinion.

Although the Court declined to bar both of the opinions of the plaintiffs' expert before trial so that it could hear testimony and cross-examination on the single theory that it did not exclude, BIH will argue after the expert has an opportunity to testify and be cross-examined at trial that her testimony should be barred for the same reasons stated in its pre-trial motion.

### 7.   Impact of Summary Judgment Ruling on Expert Opinion

Given the Court's finding in its Memorandum Opinion on the parties' summary judgment motions (D.I. 304) as to the meaning of the non-compete language in the APA, the Court should exclude Dr. Meyer's sole remaining expert opinion on *Daubert* grounds.

### C.   Mr. Potter's Statement

Potter contends that the following mixed issues of law and fact remain to be litigated:

### (1)   Potter's Alleged Breach of the Non-Compete and/or Non-Solicit (Plaintiffs – Count I).

Breach of contract under Delaware law requires that a plaintiff establish by a preponderance of the evidence: (i) the existence of a contractual obligation; (ii) breach of that obligation by the defendant, and (iii) resulting damage. *Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 213 (D. Del. 2017) (citing *VLIW Tech, LLC v. Hewlett Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

Potter contends that Plaintiffs are incapable of satisfying their burden of proof on a breach of contract claim against Potter.  Instead, the weight of the trial evidence will establish that the activities of the CLM Business "as conducted as of the Closing Date" did not include any of the activities alleged above by Plaintiffs as a basis for finding breach, including the C&H Conference.  APA, § 6.12(a).  Similarly, the majority of trial evidence will establish that Potter did not call-on, solicit, or induce, or attempt to call-on, solicit, or induce any customer or business relation of The Institutes "for the provision of products or services related to any of [the CLM Business]."[5]  APA, § 6.12(b).

### (2)   Sufficient Proof that Plaintiffs Suffered Damages as a Result of Potter's Alleged Breaches, and that those Purported Damages can be Reliably Quantified (Plaintiffs – Count I).

Proving the fact of damages is an essential element to a breach of contract claim under Delaware law, *Wiesemann*, 237 F. Supp. 3d at 213, and must be done with reasonable certainty.  *Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015), as corrected (Dec. 28, 2015).  If established, the amount of damages then must be quantified based on a "responsible" calculation.  *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).  Indeed, "When acting as the fact finder, the Court

---

[5] *See* D.I. 304, p. 4, n.2 ("There were multiple businesses sold to Plaintiffs in the APA, but in this litigation, Plaintiffs are only concerned with CLM's business.").

may not set damages based on mere 'speculation or conjecture'" where a plaintiff fails to adequately prove damages. *Id.* (brackets omitted).

Even if Plaintiffs can establish liability at trial, Potter contends that Plaintiffs will be unable to show with reasonable certainty that any such violation caused the damages, or that an amount of resulting damage can be calculated with any modicum of reliability. Plaintiffs have yet (because they are unable) to offer any competent evidence of actual loss from Potter's alleged acts – that is, any lost customers, members, or sponsors. The anticipated testimony of Dr. Christine Meyer – Plaintiffs' damages expert whose opinion this Court has tentatively limited already[6] – will fare no better. Potter contends that he will establish that Dr. Meyer's opinions and the underlying assumptions on which those opinions are based are unsupported by any facts and otherwise unreliable.

### (3) Plaintiffs Failure to Mitigate their Contractual Damages, if Liability and Damages are Sufficiently Established under Delaware Law (Plaintiffs – Count I)

Delaware law imposes a general duty to mitigate damages whenever feasible. *Norkei Ventures, LLC v. Butler–Gordon, Inc.*, 2008 WL 4152775, at *2 (Del. Super. Aug. 28, 2008). Even if Plaintiffs are able to offer sufficient evidence at trial to establish liability, the fact of damages, *and* reliably calculate the amount of such

---

[6] D.I. 301.

damages, Potter intends to introduce evidence at trial to sufficiently establish that Plaintiffs failed to mitigate that harm under the circumstances.

### (4) Plaintiffs' Inability to Establish Irreparable Harm and the Other Required Elements for Obtaining Equitable/Injunctive Relief, Again if Liability is Sufficiently Established (Plaintiffs – Count I)

Plaintiffs note above that they will be pursuing injunctive relief at trial – (apparently) based on nothing more than a lone provision from the APA.  Absent more, these types of "injunction clauses" cannot support the entry of an injunction. The party seeking the extraordinary and drastic remedy of injunctive relief must prove their entitlement to one through record evidence supporting all *prima facie* elements, including proof of irreparable harm.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *see First Health Grp. Corp. v. Nat'l Prescription Adm'n, Inc.*, 155 F. Supp. 2d 194, 234-35 (M.D. Pa. 2001) (concluding the parties could not contractually waive the judicial requirement that a claimant prove its entitlement to injunctive relief); *see Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) (same); *see also Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (stating an injunction  is an "extraordinary and drastic remedy" that "should never be awarded as of right" (citations and internal quotation marks omitted)).

LEGAL\58072003\1

Potter contends that Plaintiffs will be unable to offer any evidence of irreparable harm at trial, a claim that is principally contradicted by Plaintiffs' simultaneous pursuit of millions of contractual/expectation damages – the very purpose of which is to place the non-breaching party in the position it would have been but for the breach. *See Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000).

### (5) Plaintiffs Cannot Recover Consequential Damages on their Breach of Contract Claim.

Plaintiffs' Statements in this Pretrial Order suggests that it is seeking to recover "the damage to the CLM's goodwill resulting from defendants' competition." Plaintiffs' only remaining claim against Potter is Count I (breach of contract). Goodwill and other consequential damages are not available in breach of contract actions brought under Delaware law. *Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663, at *3 (Del. Super. Dec. 8, 1994) ("Delaware courts have consistently found these damages to be speculative in nature, and; therefore, have barred recovery for them." (citing *Tanner v. Exxon Corp.*, No. 79C–JA–5, 1981 WL 191389, at *2–*3 (Del. Super. July 23, 1981)); *see Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004). Therefore, any portion of Plaintiffs' breach of contract claim seeking loss of goodwill or other consequential damages fails as a matter of law. *See Chemipal*, 350 F. Supp. 2d at

595. Additionally, any expert testimony on this issue would be inappropriate and must be excluded. *Id.*

### (6)    Plaintiffs Cannot Rely on Allegedly Speculative Damages as a Basis for Irreparable Harm.

Plaintiffs' Statements in this Pretrial Order argues that, "while [they have] provided a damages estimate with reasonable specificity, it is impossible to determine the full extent of the damage to the CLM's goodwill resulting from defendants' competition." Potter denies that allegation. To the contrary, the evidence at trial will show that Plaintiffs cannot offer any evidence demonstrating loss of goodwill. Plaintiffs' alleged inability to calculate "the full extent of" the alleged harm to their goodwill conflates irreparable harm with speculation. *Robson Forensic, Inc. v. Shinsky*, 2022 WL 1198228, at *10 (E.D. Pa. Apr. 22, 2022) ("[M]ere invocation of the term 'goodwill' does not suffice to establish the sort of clear and immediate irreparable harm necessary" to warrant injunctive relief."); *Shabazz v. Delaware Dep't of Correction*, 2020 WL 998541, at *2 (D. Del. Mar. 2, 2020) ("[I]rreparable harm alleged must be actual and imminent, not merely speculative." (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Spanabel v. Delaware Thoroughbred Racing Comm'n*, 2021 WL 3829203, at *2 (Del. Super. Ct. Aug. 26, 2021) ("Speculative harm cannot serve as the basis for irreparable harm.").

### (7)   No Basis Exists under Delaware Law for Plaintiffs to Recover Attorneys' Fees.

"Delaware follows the 'American Rule,' which provides that each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation." *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017). "An exception to this rule is found in contract litigation that involves a fee shifting provision." *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

Plaintiffs' Statement in this Pretrial Order alleges that "[t]hey . . . seek attorneys' fees under the APA's indemnity provisions." Under Delaware law, "indemnity agreements are presumed not to require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2020 WL 7861336, at *5 (Del. Ch. Dec. 31, 2020) (citing cases) (internal quotation marks omitted); *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2016 WL 6879525, at *1 (Del. Super. Nov. 22, 2016); *TranSched Systems Ltd. v. Versyss Transit Solutions, LLC*, 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012). Here, the APA's plain text does not contain the "clear and unequivocal" language necessary to overcome the presumption in Delaware that the APA's indemnification provisions are limited to third-party claims.

**(8)   Can BIH establish fraud by clear and convincing evidence (BIH – Crossclaim III).**

Fraud in Connecticut requires clear and convincing evidence establishing: (1) a false representation of fact was made; (2) that was untrue and known to be untrue by the party making it; (3) to induce the other party to act upon it; and (4) reliance causing injury.  *Stuart v. Freiberg*, 116 A.3d 1195, 1204 (Conn. 2015); *see In re Coby C.*, 402, 945 A.2d 529, 536 (Conn. App. 2008)  (reciting that clear and convincing evidence is proof that "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist" (citations and internal quotation marks omitted)).

Potter contends that BIH will be unable to satisfy this exacting burden of proof at trial – principally because no such evidence of fraud exists.


**(9)   Can BIH Establish Negligent Misrepresentation by a Preponderance of the Evidence (Crossclaim IV).**

Negligent misrepresentation in Connecticut requires proof by a preponderance of the evidence that: (1) a misrepresentation of fact was made; (2) that the defendant knew or should have known was false; (3) reasonable reliance on

the misrepresentation by the plaintiff; (4) causing pecuniary harm as a result. *Stuart*, 116 A.3d at 1204.

Potter contends that BIH will also be unable to proffer sufficient evidence at trial – even under a preponderance standard – to establish the requisite elements of a negligent misrepresentation claim under Connecticut law.

### (10)    Can BIH Establish Reasonable Reliance (Crossclaim IV).

Fraud and negligent misrepresentation claims brought under Connecticut law require sufficient proof of reasonable reliance on the alleged misrepresentation. *Stuart*, 116 A.3d at 1203-04.  For fraud, that means clear and convincing evidence, and a preponderance of the evidence for negligent misrepresentation.   Potter contends that BIH will be unable to proffer sufficient evidence at trial to satisfy either burden for purposes of establishing reasonable reliance.

### (11)    BIH Voluntarily Assumed the Risks and is Barred from Recovery on its Negligent Misrepresentation Claim (BIH Crossclaims III and IV).

Even if BIH could offer sufficient evidence to meet its requisite burden of proof for providing liability and damages on a negligent misrepresentation claim, Potter intends to proffer evidence sufficient to establish that BIH voluntarily assumed the risks of any purported misrepresentation that may ultimately have resulted in harm. *Nally v. Charbonneau*, 362 A.2d 494, 496 (Conn. 1975) ("The defense of assumption of risk is applicable when a person knows or as a reasonable

person should know that in pursuing a certain course he will expose himself to the risk of injury, comprehends or ought as a reasonable person to comprehend the nature and extent of the risk and voluntarily subjects himself to it. He thus assumes the risk and cannot recover damages resulting from it.").

## VI.     <u>LIST OF PREMARKED EXHIBITS WHICH EACH PARTY INTENDS TO OFFER AT TRIAL</u>

Plaintiffs' Trial Exhibit List is attached hereto as **<u>Exhibit E</u>**;

BIH's Trial Exhibit List is hereto as **<u>Exhibit F</u>**;

Mr. Potter's Trial Exhibit List is attached hereto as **<u>Exhibit G</u>**.

## VII.    <u>LIST OF ALL WITNESSES THE PARTIES INTEND TO CALL AND WHETHER THE WITNESS WILL TESTIFY IN PERSON OR BY DEPOSITION</u>

### A.     <u>List of Witnesses Plaintiffs Expect to Call</u>

#### 1.     <u>Witnesses Plaintiffs Intend to Call to Testify in Person</u>

a)     Expert witness:

(1)     Dr. Christine Meyer, Ph.D.

b)     Non-Expert Witnesses:

(1)     Peter Miller

(2)     Anne Blume

(3)     Jeffery Scheidt

(4)     Jeremy Campbell

(5)     Keith Kenner

(6)     Adam Potter

(7)     Steve Acunto, Sr.

30

        (8)     Katie Kett (in person or by video)

        (9)     Tina Pernie (in person or by video)

### 2. Witnesses Plaintiffs Intend to Call to Testify By Deposition

    a)    Plaintiffs' deposition designations for witnesses it may call by deposition if unavailable are attached here to as **Exhibit H**.

Plaintiffs reserve the right to call any fact or expert witness listed by Defendants.

### B.  List of Witnesses Defendant Potter Expects to Call

### 1. Witnesses Potter Intends to Call to Testify in Person

    a)    Expert witness:

        (1)     Harris Devor, CPA

    b)    Non-Expert Witnesses:

        (1)     Adam Potter

        (2)     Kathrine Horowitz[7]

        (3)     Anne Blume

        (4)     Steve Acunto, Sr.

### 2. Witnesses Potter Intends to Call to Testify by Deposition

    a)    Potter's designations for witnesses he may call by deposition are attached here to as **Exhibit I**.

Potter reserves the right to call in his cases-in-chief any expert or non-expert witness listed or identified by either Plaintiffs and/or BIH.

---

[7] Potter has asked Plaintiffs whether they will accept service on behalf of Ms. Horowitz of a trial subpoena directed to her.

## C.    List of Witnesses Defendant BIH Expects to Call

BIH intends to call Stephen Acunto Sr., Keith Kenner, and Katherine Horowitz as fact witnesses, and Andrew Goodenough as an expert witness.  BIH has asked the plaintiffs to make Ms. Horowitz available for trial.  BIH's deposition designations for witnesses it may call by deposition if they are unavailable to testify at trial is attached as **Exhibit J**.  BIH also reserves the right to call any witness listed by any other party.

## VIII.    PLAINTIFFS' CLAIMS AND DAMAGES

The Institutes seek injunctive relief and monetary damages against Defendants.  They also seek attorneys' fees under the APA's indemnity provisions.

The Institutes intend to prove that: (1) they did not receive the benefit of the bargain when they purchased the assets of the Sellers' Businesses and are entitled to monetary damages; (2) they are entitled to injunctive relief prohibiting Defendants from engaging in competitive activities prohibited by the Non-compete for five years; (3) they are entitled to attorneys' fees pursuant to the specific language in Article IX of the APA; and (4) they are entitled to recovery of prejudgment interest on their claims.

### A. The Institutes Will Establish that They Did Not Receive the Benefit of the Bargain.

"It is a basic principle of contract law that remedy for a breach should seek to give the nonbreaching party the benefit of its bargain by putting the party in the

position it would have been but for the breach." *Greenstar, LLC v. Heller,* 934 F.Supp 2d 672, 693-94 (D. Del. 2013) (citing *Genencor Int'l, INc. v. Novo Nordisk A/S,* 766 A.2d 8, 11 (Del. 2000)).   The plaintiff must prove the bargain or the prospective economic advantage it would have had but for the breach or wrongful act. *Inter Med. Supplies, Ltd. V. EBI Med. Sys. Inc.,* 181 F.3d 446, 461-63 (3d Cir. 1999).   Damages calculations in complex circumstances should be "based upon values at the time of the transaction . . . which incorporate[s] future expectations." *Colbalt Operating, LLC v. James Crystal Enterprises, LLC,* 2007 WL 2142926, *30 (Del. Ch. July 20, 2007).

A plaintiff must establish a wrong and corresponding injury. *See Heller*, 934 F.Supp. 2d at 693-694 (applying Delaware law).   But, it need only establish the corresponding injury with "reasonable certainty so that the fact of damages [is] taken out of the area of speculation." *Tanner v. Exxon Corp.,* 1981 WL 191389 at *1 (Del. Super. Ct. July 23, 1981) (internal quotations omitted); *see also Beard Rsch., Inc. v. Kates,* 8 A.3d 573, 613 (Del. Ch. 2010); *Total Care Physicians, P.A. v. O'Hara,* 2003 WL 21733023 at *3 (Del. Super. Ct. July 10, 2003) ("The quantum of proof required to establish the amount of damages is not as great as that required to establish the fact of damage.").

The Institutes paid $17,329,098 for CLM at the time of the acquisition plus an additional $2,655,049, for a total of $19,984.147.   The Institutes' Expert, Dr.

Christine S. Meyer, Ph.D., will testify that The Institutes lost at least $3.5 to $5.2 million, and as high as $6.7 to $8.0 million, as a result of the Defendants' violations of the non-compete.  Dr. Meyer's analysis establishes that The Institutes would have paid less for the CLM assets if they knew that the Defendants were going to compete against them.   Dr. Meyer also opines that her measure of damages is conservative as it compares the actual value received to the price paid, which is lower than the value The Institutes expected to receive.

Defendants indisputably have competed and BIH publicly proclaims its intention to continue competing with the acquired businesses.   The APA's Disclosure Schedule contains an express definition of those businesses, drafted by Potter, so Defendants are foreclosed from disputing the scope of the activities in which they may not engage. That definition includes hosting and producing webinars and "specialty conferences."   Defendants admittedly produced a specialty conference on cannabis and on long-term care.  They have also hosted a series of issue-specific webinars presented by claims and litigation management professionals, including the 6-part cannabis update series and the cybersecurity webinar.  BIH executives have also admitted that it has conducted and is planning numerous additional webinars and specialty conferences.

Therefore, The Institutes did not receive the benefit of the bargain as contemplated by the APA, including the financial benefits that the Non-Compete

clause was intended to provide.

**B.** **In Addition to Money Damages, The Institutes are Entitled to Injunctive Relief Prohibiting Defendants from Engaging in Competitive Activities for Five Years.**

In the APA, Defendants conceded that The Institutes' remedies at law for any breach would be inadequate, so that they are entitled to injunctive relief without proving actual damages, conceding that monetary damages alone would be inadequate. Even without this concession, courts have recognized that the "harms resulting from competition by someone bound by a non-competition agreement are frequently found to be irreparable." *Tristate Courier and Carriage, Inc.*, 2004 WL 835886, at *13 (Del. Ch. April 15, 2004). Further, in *Equitable Life Insurance Co. v. Young*, 1985 WL 11551 (Del. Ch. May 6, 1985), the Chancery Court granted injunctive relief where an insurance agent, upon resignation from his prior employer and beginning his own business, took away dozens of his former employer's customers. *Id.* The court stated that "it would be difficult, if not impossible, to prove how long those customers would have remained with Equitable but for Young's intervention." *Id.* at *4.

Moreover, The Institutes are entitled to enforce the restrictive covenants for five years from the entry of the injunction. Section 6.12(f) expressly provides that the term of the restrictive covenant shall be extended by the period of the duration of any breach of Section 6.12(a). Defendants have ignored the covenant-not-

compete virtually since the closing, so The Institutes should be afforded the full five year term specified in the APA.

### C. <u>The Institutes are Entitled to Attorneys' Fees and Expert Witness Fees Pursuant to the Specific Language in Article IX of the APA.</u>

Article IX of the APA provides for the reimbursement of attorneys' fees (and other fees outlined therein), for any party to that suffers "losses" as a result of the breach of the covenants contained therein.   Specifically, Section 9.2 provides as follows:

> Section 9.2  <u>Indemnification of Buyer</u>.   The Selling Parties shall, jointly and severally, from and after the Closing, defend, indemnify and hold harmless Buyer and its respective officers, directors, stockholders, Affiliates, agents and representatives (collectively the "Buyer Indemnified Parties") from, against, for and in respect of and pay any and all **<u>Losses</u>** [emphasis added] suffered, sustained, incurred or required to be paid by any such party arising out of or resulting from:

> (a) any breach of any representation, warranty, covenant or agreement of any Selling Party contained in this Agreement or in any Ancillary Agreement (other than any such breach in existence as of the Closing Date which was disclosed in writing by Sellers to Buyer at or prior to the Closing Date and was waived in writing by Buyer);

> \*       \*       \*

> (f) the enforcement by any Buyer Indemnified Party of any of its rights under this <u>Section 9.2</u> or any other indemnification covenant contained in this Agreement.

Pursuant to Section 9.5, there is no limitation on The Institutes' right to recovery. In provides as follows (emphasis added):

> Notwithstanding anything in this Agreement to the contrary, no Party will be entitled to assert any claim for indemnification (for the Selling Parties, under Section 9.1, and for Buyer, under Section 9.2) unless the amount of such Loss exceeds US$50,000 (the "Basket") in the aggregate, in which event the Indemnified Party may assert its right to the full extent of its Loss in excess of the Basket; provided, however, that the maximum aggregate amount of Losses payable by the Selling Parties shall be limited to the Purchase Price (the "Cap"); and provided further, *that the Basket and the Cap shall not apply in the event of fraud, or intentional misrepresentation relating to Sections 4.1, 4.3 4.5, 4.6, 4.7, 4.15, 4.18, 5.1, 5.4 and 5.5, or any indemnification claimed under Sections 9.1(b), 9.1(c), 9.2(b), 9.2(c) and 9.2(d), or for any breaches of covenants in Article VI* [i.e., the Non-compete] . . . .

Section 9.7 defines "Losses" as follows:

> For purposes of this Article IX, "Losses" shall mean all Liabilities, losses, damages (other than consequential, special, incidental or punitive damages), awards, judgments, assessments, fines, penalties, charges, fees, costs, expenses and other payments however suffered or characterized, all interest thereon, all reasonable costs and expenses or investigation any claim, lawsuit or arbitration and any appeal therefrom, all reasonable attorneys', accountants', investment bankers', and expert witness' fees incurred in connection therewith, whether or not such claim, lawsuit or arbitration is ultimately defeated and, subject to this Article IX, all amounts paid incident to any compromise or settlement of any such claim, lawsuit or arbitration.

It is clear from the language of the APA that the Institutes are entitled to their

attorneys' fees and expert witness fees due to the Defendants' breaches of the non-

compete and non-solicitation covenants set forth in Article VI of the APA. Delaware courts will award attorneys' fees where the contract specifically provides that they are recoverable in the event of a breach. "When construing a contract, and unless a contrary intent appears, [Delaware courts] will give words their ordinary meaning." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 924 (Del. 1992). "Delaware courts have upheld provisions that purport to award fees and costs to the prevailing party." *L&W Ins. Inc., v. Harrington*, 2007 WL 1756540 (Del. Ch. June 6, 2007). For example, in *Faw, Casson & Co., LLP v. Halpen*, the court awarded plaintiff attorneys' fees because the employment agreement provided that the employee, in the event of breach, would "pay an amount or amounts equal to one hundred percent (100%) of the gross fees billing by the company…." 2001 WL 985104, at *2 (Del. Super. Aug. 7, 2001). Further, in *Aveta Inc. v. Cavallieri*, 23 A.3d 157 (Del. Ch. Sept. 20 2010), the Chancery Court stated that "[w]here a contract places the responsibility for payment of attorneys' fees on any party who either breaches the contract or fails to perform in accordance with the terms of the contract, courts will enforce the bargained-for provision absent evidence of an ambiguity or contrary intent . . . . The prevailing party's contractual right to the payment of money … cannot be forgiven in whole or in part by a court out of compassion for the non-prevailing party." *Id*. at 183 (quoting *L&W Ins. Inc. v. Harrington*, 2007 WL 1756540, at *3 (Del. Ch. June 6, 2007)).

Here, Section 9.2 provides that Selling Parties shall pay any and all "Losses" arising out of or resulting from any breach of any covenant contained in the APA (9.2(a)) and the enforcement by any Buyer Indemnified Party of its rights (9.2(f)), and "Losses" are specifically defined to include attorneys' fees and expert witness fees. Accordingly, The Institutes are entitled to an award of such fees pursuant to Delaware law and the express terms of the APA, in an amount to be determined in a separate fee petition following trial. *See Greenstar, LLC v. Heller, 934 F. Supp. 2d 672 (D. Del. 2013); Cove on Herring Creek Homeowners' Ass'n v. Riggs, 2005 Del. Ch. LEXIS 71, *2 (Del. Ch. Ct. May 19, 2005).*

### D. <u>The Institutes Are Entitled to Pre-judgment Interest on Its Claims and Post-Judgment Interest if it is Successful on Its Claims.</u>

An award of pre-judgment interest generally relates back to the date of the loss or injury. *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.,* 996 A.2d 1254, 1262 (Del. 2010); *Hercules, Inc. v. AIU Ins. Co.,* 784 A.2d 481, 508 (Del. 2001). In a breach of contract action, interest accrues from the date of the breach. *Mobile Diagnostics, Inc. v. Lindell Radiology, P.A., C.A.* No. 83C-AU-66, slip op. at 2, Stiftel, J. (Del Super. Aug. 9, 1985). If there is any confusion as to the date that pre-judgment interest begins to run, the court, in its discretion, may choose the date. *Raymond v. Board of Public Works, C.A.* No. 84C-DE-8, slip op. at 2 n.2, Gebelein, J. (Del. Super. May 8, 1990).

The rate of interest allowed in actions at law generally is equated to the "legal rate" of interest described in 6 Del. C. § 2301(a).[8]  In equity, setting the rate of interest is a matter of discretion.  *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 226 (Del. 2005); *Summa Corp. v. Trans World Airlines, Inc.,* 540 A.2d 403, 409 (Del. 1988).

## IX.    DEFENSES

**BIH:** Several of BIH's defenses to claims asserted by the Plaintiffs are recited in Section IV above, including Plaintiffs' incorrect claims that they are entitled to either injunctive relief or attorney's fees upon a showing of any technical violation of the non-compete provisions of the APA without an accompanying showing of past or future harm.  BIH will also argue that the Plaintiffs have failed to mitigate their damages[9], and have incurred no damages. In addition, BIH denies that the factual evidence will establish that it has violated the APA, and denies that the factual evidence will establish that The Institutes did not receive the benefit of the bargain.

---

[8] It is important to note that Section 2301(a) does not distinguish between pre-and-post-judgment interest.  The same interest rates applies to both. Therefore, if The Institutes have a judgment entered in their favor, they will be requesting post-judgment interest as well at the rate specified in Section 2301(a). *See TranSched Systems Ltd. v. Versyss Transit Solutions, LLC*, 2012 WL 1415466 (Del. Super. Ct. Mar. 29, 2012).

[9] BIH is aware that the Court has ruled that the plaintiffs' failure to seek a preliminary injunction is not evidence of failure to mitigate damages, and will not present evidence on the failure to seek a preliminary injunction.

LEGAL\58072003\1

**Potter:** *See supra* Section IV(C) for a brief statement of what Potter intends to prove as defenses at trial.

## X.   CROSSCLAIMS

BIH will be pursuing cross-claims against Mr. Potter for Negligent Misrepresentation and Fraud.   Both of these claims will be based upon representations that Mr. Potter made to induce BIH to continue with the C&H conference, and representations that Mr. Potter made to induce the Acuntos to have involvement with the entity ClaimsX founded by Mr. Potter's sister.   BIH maintains that its involvement with the C&H Conference and the Acuntos' brief participation with ClaimsX did not violate the APA, but to the extent that they did, Mr. Potter is responsible for any damages that BIH might incur as a result of the false representations he made.

## XI.   AMENDMENTS TO PLEADINGS

## XII.   SETTLEMENT

The parties participated in a settlement conference with Magistrate Judge Jennifer L. Hall on December 9, 2020 in an attempt to resolve this matter. Therefore, the parties certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement.

## XIII.   ADDITIONAL MATTERS

Not applicable.

## XIV.   MOTIONS *IN LIMINE*

41

**BIH:** BIH has listed its two motions *in limine* in Section IV above.

**Potter:** Motion *in Limine* No. 1 to preclude Plaintiffs from introducing or eliciting evidence at trial concerning non-party Waggy Group, Inc. *See* Attached as **Exhibit K.**

COZEN O'CONNOR

/s/ Barry M. Klayman
Barry M. Klayman (#3676)
1201 N. Market St., Suite 1001
Wilmington, DE 19801
(302) 295-2035
bklayman@cozen.com

OF COUNSEL:

Robert W. Hayes
Matthew J. Siegel
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
rhayes@cozen.com
msiegel@cozen.com

*Attorneys for Plaintiffs, The
American Institute for Chartered
Property Casualty Underwriters and
The Institutes, LLC*

FOX ROTHSCHILD LLP

/s/ Seth Niederman
Seth Niederman (#4588)
Katelyn M. Crawford (#6591)
Citizens Bank Center
919 N. Market St., Suite 300
Wilmington, DE 19899-2323
(302) 622-4238
SNiederman@foxrothschild.com
KCrawford@foxrothschild.com

OF COUNSEL:

Robert S. Tintner
Nathan M. Buchter
FOX ROTHSCHILD LLP
2000 Market St., 20th Floor
Philadelphia, PA, 19103-3222
rtintner@foxrothschild.com
nbuchter@foxrothschild.com

*Attorneys for Defendant, Adam Potter*

43

DLA PIPER LLP (US)

*/s/ Matthew P. Denn*
Matthew P. Denn (#2985)
1201 N. Market St., Suite 2100
Wilmington, Delaware 19801
(302) 468-5700
(302) 394-2341 (Fax)
matthew.denn@us.dlapiper.com

OF COUNSEL:

Christopher G. Oprison
DLA PIPER LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131
chris.oprison@dlapiper.com

*Attorneys for Defendant, Business Insurance Holdings, Inc.*


SO ORDERED this _____ day of _____, 2022.


                              _____
                              U.S. District Judge