IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE AMERICAN INSTITUTE FOR
CHARTERED PROPERTY CASUALTY
UNDERWRITERS and THE INSTITUTES,
LLC,

    Plaintiffs,

v.

ADAM POTTER and BUSINESS
INSURANCE HOLDINGS, INC.,

    Defendants.

Civil Action No. 19-1600-RGA

ORDER AFTER PRETRIAL CONFERENCE

    BIH's Motion in Limine No. 1 (D.I. 308 at 13–17) is **GRANTED-IN-PART**. BIH attempted to determine which acts Plaintiffs alleged to be violations of the APA. (*See, e.g.*, D.I. 309-1, Ex. 4, at 80:12–18; Ex. 6, Interrogatory 4). Based on the exhibits provided to the Court, it appears that the only time Plaintiffs provided a specific response was in Anne Blume's deposition. Ms. Blume stated that BIH's long-term care webinar, long-term care virtual conference, and cyber webinar also violated the APA. (*Id.*, Ex. 4, at 84:11–17). Plaintiffs have a duty to supplement their responses, and they have not shown the Court they have done so. Thus, Plaintiffs may only present evidence relating to the events they specifically disclosed to BIH—the "BI Conferences" identified in the Amended and Supplemental Complaint (D.I. 48 at ¶ 47), and the long-term care webinar, the long-term care conference, and the cyber webinar identified by Ms. Blume.

    BIH's Motion in Limine No. 2 (D.I. 308 at 17–18) is **DENIED**. Although the relevant paragraphs in the Amended and Supplemental Complaint recite specific actions taken by Potter,

1

it is clear that these actions—i.e., obtaining a sponsor for BIH's C&H Conference—were taken on behalf of BIH. (D.I. 48 at ¶¶ 93–96). Further, the Amended and Supplemental Complaint refers to "Defendants' Breach of the Non-Solicitation Provision," not just Potter's breach. (*Id.* at 24; *see also id.* at ¶ 41 ("Defendants have violated the Non-Solicitation . . . .")).

Potter's Motion in Limine (D.I. 308-11, Ex. K) is **DENIED**. At the pretrial conference, Plaintiffs' counsel indicated that they intend to introduce evidence of Waggy's actions only to show Potter's attempts to recreate CLM's business model. (Tr. at 48:20–49:9). Presumably, proof of the business model supports the conclusion that the complained-of conferences are violative of the non-compete clause. I find that evidence of Waggy's actions is relevant for this limited purpose. I do not think that BIH will suffer any unfair prejudice from the introduction of this evidence for this limited purpose, and I do not think it will take much trial time.

At the pretrial conference, the parties requested clarification as to whether this Court's interpretation of the contract in its summary judgment opinion was final. (Tr. at 12:23–13:14; 66:12–17). In the summary judgment opinion, I stated, "The plain language . . . makes clear that CLM's business is limited to the claims and litigation management industries, not the insurance industry generally. The APA therefore prohibits Defendants from offering a specialty conference that provides content related to claims and litigation management or that targets claims and litigation management professionals." (D.I. 304 at 5 (internal citation omitted)). While I could perhaps have been clearer, I determined that the APA's non-compete provisions were unambiguous. The plain language of the non-compete "prohibits Defendants from offering a specialty conference that provides content related to claims and litigation management or that targets claims and litigation management professionals." Therefore, parol evidence offered to change this plain meaning is not permitted.

That is not to say, however, that background information on how the industry works would not be helpful in determining whether certain events offered "claims and litigation management" content or targeted "claims and litigation management professionals." My contract interpretation in the summary judgment opinion was limited to the term "Sellers' Businesses"—more specifically, "CLM Business." (*See id.* at 4–5). I did not provide an interpretation of "claims and litigation management" or "claims and litigation management professionals." The parties therefore may present evidence as is necessary to assist the Court in interpreting these phrases. *See U.S. Legal Support, Inc. v. Lucido*, 2021 WL 4940823, at *5 (Del. Ch. Oct. 22, 2021) ("When a contract's plain meaning, in the context of the overall structure of the contract, is susceptible to more than one reasonable interpretation, courts may consider extrinsic evidence . . . includ[ing] 'overt statements and acts of the parties, the business context, prior dealings between the parties, business custom and usage in the industry.'" (footnote omitted)).

At the pretrial conference, Mr. Hayes stated (somewhat vaguely so far as I am concerned) that Plaintiffs intended to put on testimony in order to preserve an issue related to the denial of their summary judgment motion. (Tr. at 26:9–24). Plaintiffs are not to put on evidence at trial solely for the purpose of preserving an issue relating to the denial of their summary judgment motion. But they may present this evidence by proffer no later than June 13, 2022, in such detail as they think necessary to preserve whatever issue they are trying to preserve.

Entered this  6  day of June, 2022.

/s/ Richard G. Andrews<br>
United States District Judge